UNITED STATES DISTRICT COURT
                   EASTERN DISTRICT OF MICHIGAN
                         SOUTHERN DIVISION

**Kimberly Smith,**

                         Plaintiff,

-v-                                        Case No. **24-12213**

**Danielle Robertson,**

                         Defendant.
    _____/

                       **MOTION HEARING**
                       April 14, 2026

          **BEFORE THE HONORABLE LAURIE J. MICHELSON**
                United States District Judge

     Theodore Levin United States District Courthouse
             231 West Lafayette Boulevard
                   Detroit, Michigan

APPEARANCES:

FOR THE PLAINTIFF      **KIMBERLY SMITH**
Appearing Pro Se:      13745 Thornton Street
                       Detroit, Michigan  48227


FOR THE DEFENDANT:     **NO APPEARANCE**

          **To Obtain a Certified Transcript Contact:**
        **Rene L. Twedt, CSR-2907, RDR, CRR, CRC**
               **www.transcriptorders.com**

<u>TABLE OF CONTENTS</u>

MATTER _____ ____ PAGE

**MOTION HEARING**

 Argument Presented by Plaintiff......................... 4

Ruling by the Court.................................... 35

**EXHIBIT**                    **DESCRIPTION**                    **OFFERED**  **RECEIVED**

**NONE OFFERED**

**CERTIFICATE OF COURT REPORTER**........................... 56

Detroit, Michigan

April 14, 2026

3:00 p.m.

* * *

THE CLERK:  All rise.  United States District Court for the Eastern District of Michigan is now in session, the Honorable Laurie J. Michelson, United States District Judge, presiding.

The Court calls the case of Smith versus Robertson, Case Number 24-12213.

Will plaintiff please state her appearance for the record.

MS. SMITH:  Good afternoon, your Honor.  Kimberly Smith, Plaintiff, appearing pro se.

THE COURT:  All right.  Very good.  Good afternoon, Ms. Smith.  You may be seated.

MS. SMITH:  Thank you.

THE COURT:  After the Clerk's Office entered a default against Defendant Danielle Robertson for failing to timely respond to the complaint, Plaintiff Kimberly Smith filed a motion for default judgment, but this is not automatic.

Before entering a default judgment the Court has to ensure that it has both subject matter jurisdiction over the claims and personal jurisdiction over the defendant,

that the defendant was properly served, and that plaintiff is entitled to the relief sought.  See C.A.T. Global Inc. versus OTT Transport Services, 737 F.Supp. 3d 620, Eastern District of Michigan 2024.

As to the last point the Court must determine whether the plaintiff's allegations, even taken as admitted as a result of the default, establish liability for the cause of action raised.  See, for example, Jones versus Portfolio Recovery Associates LLC, 2017 U.S. Dist Lexis 184093 at *3, Eastern District of Michigan, November 7, 2017, stating:  "Defendant's default notwithstanding a plaintiff is entitled to default judgment only if the complaint states a claim for relief. In other words, a default judgment cannot stand on a complaint that fails to state a claim."

If all of these prerequisites are met then the plaintiff still needs to establish damages.  So the Court requested information from Ms. Smith addressing these issues, which she did provide some additional information at ECF Number 53.  And I scheduled this hearing to address same.

I did give Ms. Robertson an opportunity to attend if she wished, but after providing a few different reasons she submitted a filing yesterday indicating that travel was too costly.  And it's now 3:05, so I don't anticipate

that she will be attending this hearing.

So with all of that, Ms. Smith, I understand that you have been involved in some prior litigation, but I also understand these can be challenging issues for people trained in the law, let alone people who are not trained in the law.

In addition to the issues I just laid out, the focus is going to be primary on damages.  But in order for me to make that determination I do need to get some additional information from you.  And rather than put you in the witness box, I'm just going to have you remain at counsel table.  But because I'm going to get some information from you and you're representing yourself, I'm going to put you under oath.

If you would raise your right hand for me, please.

(Oath administered at 3:05 p.m.)

THE COURT:  All right.  Thank you.  You may have a seat.

MS. SMITH:  Thank you.  Okay.

THE COURT:  So Ms. Smith, with respect to your copyright claim, do you have valid copyright registrations for the photos that are the subject of the claim?

MS. SMITH:  No, your Honor.

THE COURT:  All right.  So that's going to be an issue on the copyright claim.

MS. SMITH:  Yes, your Honor.

THE COURT:  It's not jurisdictional; meaning, I don't dismiss the case for lack of jurisdiction because you don't have registrations, but it is a prerequisite to bringing a copyright infringement claim.

So what I'm going to have to do is dismiss that claim without prejudice.  If you were to get copyright registration at some later date --

MS. SMITH:  Yes, your Honor.

THE COURT:  -- those could form the basis of a future claim.

So I'm going to focus, then, on your second count --

MS. SMITH:  Yes, your Honor.

THE COURT:  -- which is a lumped-together count, not uncommon.  It's a defamation count and an invasion of privacy Count 1.

Under Michigan law, invasion of privacy is actually four separate torts.  It's not its own stand-alone claim.

MS. SMITH:  Okay.

THE COURT:  And there is a claim called false light, which is very similar to defamation, that somebody has portrayed you in a way that is inaccurate, misleading, untrue.  That's why it's similar to a defamation claim.

And there is a different invasion of privacy tort

called intrusion upon seclusion, and that could be what you're trying to allege. I think it's more based on a false light claim. But I'm going to focus on that claim.

When I look at your complaint, which is ECF Number 1, a defamation claim has different components of damages.

A plaintiff can recover economic damages.

A plaintiff can recover what we often refer to as non-economic damages. That's, in a defamation case, injury to feelings and reputation.

And in a defamation case a plaintiff can recover exemplary. We don't have punitive, but there is a version of that called exemplary damages.

But under the Michigan defamation statute, you have to seek a retraction in order to get exemplary damages. And it doesn't -- there is nothing in the complaint that indicates that you requested a retraction from Ms. Robertson.

Do you think you have pled anything about a retraction?

MS. SMITH: Well, when I did a live video, I did it on air. But as far as a written -- something wrote to her, no, I didn't do that, your Honor.

THE COURT: Okay. And then, so really we're going to kind of be focused here on the damages that you claimed

to have suffered as a result of the defamatory statements.

MS. SMITH:  Yes, your Honor.

THE COURT:  And that can be the economic or the non-economic.

My understanding of defamation law is in order to recover non-economic injury to reputation a plaintiff has to plead what's called actual malice.  And actual malice in the realm of defamation means knowledge of falsity or reckless disregard for the truth.

I see a reference to that in your motion for default judgment, but I'm struggling to find a reference to that in your complaint.  And I don't know if you're able to help me find any reference to that in your complaint, something where you allege that Ms. Robertson knew that what she was posting about you was false or posted it in reckless disregard for the truth.

MS. SMITH:  Okay.  She just did it to be malicious.  She didn't care.  She just did it just -- just for the sake of doing it.  She -- she not only -- well, we going to stay on this case.

She does it to everyone.  She just goes with it.  She recruits information from her subscribers that have government jobs and government entities and things like that and they give her information and she just go on a live and she just does it.  She do it to everyone that

she is upset with, that she has a problem with, your Honor.

It's reckless. I mean, well, I -- I don't want to just say that she is just a person that does things like that, you know, without -- your Honor, it's just -- I been through a lot with this defendant. And I know we're going to stay focused on what's going on, but, yeah, she just -- she just did it and --

THE COURT: Well, maybe then we can focus on actual damages, your economic damages.

MS. SMITH: I'm sorry, your Honor.

THE COURT: What sort of lost income or loss of revenue, if any, you suffered or endured as a result of the defamatory statements that are alleged in your complaint.

MS. SMITH: Okay. I lost all three of my YouTube monetizations.

THE COURT: And tell me what that means.

MS. SMITH: That means that I'm no longer monetized. I was mass reported.

If your Honor allows me, I have supplemental proof of her other content creators stating that she -- that they all got together and mass reported me and reported my YouTube channel over 200 times just to be malicious, to get me demonetized, and it worked. It worked.

THE COURT:  Okay.  Well, what I -- what I have to do --

MS. SMITH:  I'm sorry, your Honor.

THE COURT:  No, no, that's all right.

MS. SMITH:  I'm just a little nervous.

THE COURT:  No, no, that's all right.  And maybe I'll back up and I'll do this when I ultimately rule here.

You filed a lawsuit.

MS. SMITH:  Yes, your Honor.

THE COURT:  And when Ms. Robertson did not timely respond to the lawsuit, either by way of an answer or a motion, you were able to get a default against her.

MS. SMITH:  Yes, your Honor.

THE COURT:  And that default means that the well-pled facts in the complaint are accepted as admitted.

MS. SMITH:  Okay.

THE COURT:  Then for someone to then get a default judgment from that, as I stated, I have to make sure that I have jurisdiction, that the defendant was properly served, and that even with those well-pled facts admitted you still state a claim.

MS. SMITH:  Okay.

THE COURT:  And that's why it's an issue on the copyright infringement, for example.

Even taking what you pled and taking the admissions

that come from the default, because you don't have a copyright registration, it still does not plead an adequate claim. So that's why I have to set that claim aside.

Then I go to defamation.

MS. SMITH: Okay. Okay.

THE COURT: And --

MS. SMITH: Well --

THE COURT: -- what you have pled in a pleading is the complaint. The complaint is the pleading.

MS. SMITH: Okay.

THE COURT: That's how we refer to things in Federal Court. When I refer to a pleading that means the complaint.

MS. SMITH: Okay.

THE COURT: A default judgment is only dealing with the complaint. A default judgment, a default arises when somebody fails to respond to the complaint.

MS. SMITH: Okay.

THE COURT: That's when the default gets entered. Then somebody can go get a default judgment if you establish damages by a preponderance of the evidence that were caused by the things that you allege in the complaint.

So it's very focused. It's very narrow.

MS. SMITH:  Got you.  Got you.

THE COURT:  Because that's all the defendant had notice of in making a decision whether to defend or to not defend against the case is what is in the complaint.

So now I have to decide, based on what is in your complaint, does it adequately state a claim, do I have jurisdiction, did you properly serve.

I think we're going to get past those hurdles on the defamation claim.

MS. SMITH:  Okay.

THE COURT:  So then I have got to then say, okay, based on what Ms. Smith has put in her complaint, what are the damages she can prove from that?

MS. SMITH:  Okay.

THE COURT:  And that's why I indicated defamation doesn't just lump all the damages together.  Defamation, a claim for defamation says you may be able to get exemplary damages if you sought a retraction, but we don't have that here, so I can't award exemplary damages.

MS. SMITH:  Got you.

THE COURT:  Emotional distress, injury to your reputation, that requires you to plead actual malice, and I don't know if you have adequately pled actual malice.

So that's why then we get to, okay, but you have pled that she at least posted these things negligently,

and that entitles you to economic damages.

So that's why I am focusing you a little bit on what, what are the economic damages you suffered as a result of the defamatory statements.

It's not as a result of other things that she has done to you since or before.  It's what are your economic damages from what is alleged in your complaint.

MS. SMITH:  Okay.  I was severely harassed.  The Detroit Housing Commission came out to my home and I was -- to where they don't usually -- I'm sorry, your Honor, I am so nervous.

THE COURT:  That's all right.  Take your time.

MS. SMITH:  They don't usually --

THE COURT:  You're not alone.  It's not uncommon that --

MS. SMITH:  They don't usually come out to your home, but they told me that they had been called by several people stating that I had people living in my home that wasn't supposed to be there.

I had the Michigan Humane Society come out because she said that my dog was skinny in the backyard.

You know, I had other -- I was harassed constantly.  And to that effect, I lost my channels again.  I lost my channels.

I had to keep reporting to the Detroit Housing

Commission. I had the Department of Agriculture reaching out to me about the allegations that she made about food stamps.

And, you know, just -- it was just intentional to where it just -- they wouldn't have never been bothering me if she didn't do the things that she did.

And then by her calling me a criminal, you have people start calling me "Crimmy" and stuff like that. And I'm trying to do a live video, and then I have people jumping in my chat repeating the same behavior, repeating the same things that she said, you know, that kind of stuff.

But as far as damages, she defamed me. And -- and --

THE COURT: So when you said you lost your channels, what does that mean?

MS. SMITH: That means -- well, I didn't totally lose the channels, I just got demonetized. And when you get demonetized, that means you can't earn from YouTube.

THE COURT: Okay. And I don't know how to frame this. Is there any way to monetize being demonetized, if that makes sense?

MS. SMITH: You could. It's extremely hard, but you could -- you would have to go in, you would have to, like, do a sweep of thousands of videos and that kind of

stuff.  I mean, it's just really tedious.  You'll be better off starting another channel, you know, to do something.

THE COURT:  Are you able to quantify monetary loss to you from being demonetized?

MS. SMITH:  Yeah.  That's -- like, I had got to the point where I was making a couple of thousand a month, and I had three channels, and she just totally took that, you know.  I -- if your Honor would allow, you know, I have the evidence.

THE COURT:  Okay.  Yeah.  If you want -- why don't you approach.  If you could bring that forth.

So this is -- what you have is what you were making per month?

MS. SMITH:  Oh, oh, I didn't make a copy of that.  Should I have made a copy?

THE COURT:  Well, let's see what you currently have.

MS. SMITH:  Oh, I'm just bringing this to show proof that other content creators, then they monetized off of it, and then those are the YouTube strikes that -- the hundreds of YouTubes.  I couldn't even print them all out.

But if you can -- that's just an example.  When I say constant harassment, I mean, constant harassment.  And it's still ongoing.

I brought the -- the defendant goes as far as to -- I mean, the harassment is severe.

Should I go back?

THE COURT: Yes. You can have a seat.

MS. SMITH: To where I have recordings of her -- that's why I brought my laptop -- of her trying to set up surveillance outside of another YouTuber's home just, you know, to set up surveillance. And I have a -- I have threats that she is saying -- I would love for you to listen, your Honor.

THE COURT: Well, no, I understand that, Ms. Smith, but I don't know -- it's hard for me to try to explain to you how narrow, how narrow this is.

And Federal Court, we are courts of limited jurisdiction. And that means we only have jurisdiction over certain claims. We have jurisdiction over federal claims and we have jurisdiction over claims between people who are citizens of different states and the amount in controversy exceeds $75,000.

MS. SMITH: Okay.

THE COURT: Assuming you have got a claim to bring. And you did. You brought a defamation -- a specific defamation claim. That's the claim for which you received the default.

MS. SMITH: Okay.

THE COURT: That's the only claim right now for which I can award you damages.

MS. SMITH: Okay. So if -- I thought that -- from my understanding, the photo, as far as the copyright, the photo that she used to defame me came from me. It was -- the photo belonged to me. Even though I don't have copyright registration, the photo itself belongs to me.

THE COURT: And that may be, but it doesn't give you a copyright infringement claim --

MS. SMITH: Okay. Okay.

THE COURT: -- until you have a copyright registration.

MS. SMITH: Okay.

THE COURT: It doesn't give you a copyright infringement claim in Federal Court --

MS. SMITH: Okay.

THE COURT: -- until you --

MS. SMITH: I get it. Okay. I understand.

THE COURT: -- you get the copyright registration. So that's why the only other claim you brought was the invasion of privacy and defamation.

MS. SMITH: Okay.

THE COURT: And it's, again, what you received a default for --

MS. SMITH: Okay.

THE COURT:  -- is the claim that's alleged.

MS. SMITH:  Okay.

THE COURT:  And that's primarily for me to be able to find that you have adequately pled a defamation claim and taking these facts as admitted by the defendant as a result of the default.

MS. SMITH:  Okay.

THE COURT:  The essence of that claim is the letter that she posted to the Detroit Housing Commission where she accuses you of criminal conduct, she accuses you of fraud, she accuses you of some violations of housing codes.

MS. SMITH:  Yes.

THE COURT:  I can see that.  I see that you have pled that.

MS. SMITH:  Okay.

THE COURT:  Based on the defendant admitting that, I -- I can probably get over all the hurdles I need to get over to find liability on this particular defamation claim.

MS. SMITH:  Okay.

THE COURT:  So then the issue for me on what's been pled is, what are your money damages from this claim, from the fact that she posted these statements about you, that she wrote to the Housing Commission?  Because that's what

your complaint gives me sufficient information about.

You do reference some other entities, but you don't give a lot of information about the type of statements that she made, how those were published, how they were false, but I see it with the statement with the Housing Commission.

So if you want to stick with this complaint, the complaint that is ECF Number 1, if you want to stick with this complaint, the purpose of this hearing is to determine if you have suffered money damages from this.

MS. SMITH:  Okay.

THE COURT:  If you wanted to expand on this and amend the complaint, that would allow -- if the defendant wants to, that would allow the defendant to defend the case.

MS. SMITH:  Okay.

THE COURT:  So that's why, right now, I'm just focused on what's in ECF Number 1.

MS. SMITH:  Okay.

THE COURT:  The complaint that you filed for which you got a default.

MS. SMITH:  Okay.

THE COURT:  That's all that I can award money damages on.

MS. SMITH:  Okay.  I wish I brought a copy of that

one. I brought a copy of everything else except for that.

THE COURT: Except for what your damages are for this?

MS. SMITH: Yeah. Except for the main complaint. If I had a copy --

THE COURT: Oh, we have a copy. Daniel will give you a copy.

MS. SMITH: Okay. Thank you. Because I didn't get any sleep and I'm just trying to -- thank you.

THE COURT: And it's Claim 2, which, if you look at the headers on the top, which is the way we refer to things that have been filed in this court, ECF Number 1 at Page ID 4 sets forth your invasion of privacy and defamation claim.

MS. SMITH: Okay. Invasion of privacy and --

(Plaintiff reading sotto voce.)

MS. SMITH: I'm sorry, what was your question again, your Honor?

THE COURT: What is on this page is what I can award damages for. And so I'm trying to get a sense from what you allege in this particular claim, what money damages do you think you suffered as a result of what you have alleged here, which, again, is primarily the false statements in the letter to the Detroit Housing Commission.

MS. SMITH: Yes. The false statements to them and also the false statements to the Department of Agriculture.

I mean, I was able to speak to those people and let them know that it was just YouTube and that she was lying and that sort of thing, but they had me to prove my income and prove certain things because of the allegations that she alleged.

So it was just an inconvenience of going through having to redo everything because of what she did, you know. And --

THE COURT: Are you able to quantify that in any way?

MS. SMITH: Do you mean as far as monetarily?

THE COURT: Yes.

MS. SMITH: Well, I didn't lose anything as far as the food stamps or anything like that. So yeah, I guess -- I didn't lose anything. It was just the fact of her doing it and me going through it. It was like an inconvenience that didn't have to happen.

And from that other people start, you know, just knowing my personal business, you know. She just really went in deep, you know, and into her thousands of subscribers, to where they start using those terms against me. And just knowing my personal business,

ridiculing me because I was on food stamps and that sort of thing.  And -- yeah, and --

THE COURT:  Is there -- are there any money damages that you think you suffered as a result of the defamation that is set forth in Claim 2 of your complaint?

MS. SMITH:  In Claim 2?  No, it was -- no, it was no money damages.  No, your Honor, it wasn't any money, financial.  It was just, I lost some subscribers because of that, you know, people who -- I just lost subscribers, and they could have potentially been donators to my channel, that sort of thing, you know.  But I can't put a cap on how much I would have -- you know, no, I didn't, your Honor.

THE COURT:  Okay.  So if I was to ask a similar question about the -- any damage you claim to have suffered for injury to your reputation or to your feelings --

MS. SMITH:  Yes.

THE COURT:  -- how would you go about establishing that for me in terms of monetarily?

MS. SMITH:  Okay.  When you're dealing with YouTube, it's all reputation, you know.  You want to come off as the best you that you can be.  That's why you don't speak about your personal life and that sort of thing, because you're trying to build up your reputation.  And

just as I was getting there, she totally humiliated me.

And it was more so emotional.  And it was intentional and emotional, you know, what she did to me.  And I can't say that because -- well, I did lose some subscribers.  I lost about maybe 400 or 500 subscribers because of that.

THE COURT:  And what does that mean monetarily?

MS. SMITH:  That could have been potential investors in my channel, you know.  You get CashApps, you go by commission and things like that.  So memberships to the --

THE COURT:  Any people who told you they would have invested, they would have given you money, but once they saw these statements they said, "I can't do that"?

MS. SMITH:  Actually, how -- actually, they were members of my channel, and at memberships, 4.99 a membership, and her doing this and then everybody just leaving, then it was damages that way.

But no, to answer your question directly, no, no -- they just started calling me out my name, jumping in my chat, trolling my chat, that sort of thing.  But as far as -- I mean, nothing that I could prove today, no.

THE COURT:  Okay.  So most directly, if you took what you have alleged here on page ECF Number 1, Page ID 4, what would you be able to prove to me are the

damages you suffered as a result of these allegations?

MS. SMITH:  I'm sorry.  I'm sorry.  Where did you --

THE COURT:  On this ECF Number -- the complaint, so Claim 2, invasion of privacy and defamation, what are the damages you would be able to prove to me that you suffered or that she caused to you from these defamatory statements that are part of Claim 2 of your complaint?

MS. SMITH:  Basically I'm not able to prove right now -- I can't prove any damages.  All I can say is just reputational harm, your Honor, and emotional harm.

I can't prove the damages as far as the monetary -- you know, monetarily.  I can't prove that, your Honor.  But it's more so emotional damages.

THE COURT:  And on emotional, how would you prove that?  If you -- same question.

MS. SMITH:  Well, I was going to my psychiatrist.

THE COURT:  Okay.

MS. SMITH:  I started seeing my psychiatrist.  And my blood pressure was high.  That sort of thing.  It messed with my health.  I couldn't sleep.  It was -- I mean, yeah, it affected my health a lot.

THE COURT:  And since this posting, which was around August of 2024, it looks like it was August 12th of 2024 is when she posted the Housing Commission letter

that has probably the most actionable statements in it.

MS. SMITH:  Okay.

THE COURT:  Do you have any idea of how much you have paid a therapist since then?

MS. SMITH:  Well, to be honest, my insurance covered it.

THE COURT:  Okay.

MS. SMITH:  Nothing out of pocket, your Honor.

THE COURT:  So when you gave me -- when you gave me the proposed order for default -- and do you have a copy of that?

MS. SMITH:  Yes, your Honor, I do.

THE COURT:  I don't know if yours has the headings. When you docketed that it got a heading in our computer system, ECF Number 53, meaning that's the 53rd document filed in this case.

MS. SMITH:  Oh, I don't have -- actually, I have --

THE COURT:  That's okay.  On page 2, it's a short -- but this is what you submitted.

And if we just go to Section 5 is damages, 5C is defamation.  And you have 50,000.  What is that based on?

MS. SMITH:  I'm sorry, your Honor.  I'm so ill-prepared, your Honor.  I thought that I had that too. I don't have that.  I'm sorry, your Honor.

THE COURT:  We have nothing but copies.

MS. SMITH: Okay. I'm so ill-prepared.

THE COURT: We have no shortage.

MS. SMITH: Thank you. I thought I was printing out everything and printed out just everything that I didn't need.

Can you repeat your question?

THE COURT: Well, I think the sense that I have, and it's the reason I'm pushing on you a bit here and narrowing it, Ms. Smith, is because I have to.

I recognize that you and Ms. Robertson have a broader history than just what is in the complaint that's before me. All I can deal with, though, is the complaint that's before me.

MS. SMITH: Yes, your Honor.

THE COURT: I can only award damages to you based on what has been alleged in this particular complaint. And I think a lot of perhaps what has been given to me prior to today about your damages deals much more with your broader history with Ms. Robertson than just what is set forth in Claim 2.

So when you put on here defamation, 50,000, and you come into Federal Court, the judge says to you, "Okay. How do you prove that? What are those damages for?"

MS. SMITH: Right. I understand. I mean, I completely understand what you're saying and I -- I'm

not able to prove a -- as far as what monetary loss that I have with that.  All I can say is that I was starting to earn an income with YouTube, but, you know.

THE COURT:  And you did.  You said that you -- that there were subscribers who you believed may have left your channel.  And that's why I was -- I think I was starting to ask you, do you know or did any of these subscribers indicate to you that they were leaving because of the statements that were made about you?

MS. SMITH:  Well, they won't say that directly, your Honor.  What they will do, they will start trolling, saying things like, "You get this a month?  Ha-ha."  That sort of -- YouTube can be kind of cruel.  It can be a cruel place when you -- you know, when you have subscribers, that they find out things about you that they didn't know.

And so when she was saying things like, "Ah, you get 850 a month," that sort of thing, the subscribers start repeating that and mocking my chat.  And then it look -- it gets contagious.  Other subscribers will do the same thing.  So it's kind of -- you're unable to have, like, a peaceful show when other people keep jumping in your chat repeating the things that she said.

And then what she will do, because she has this reputation, she will get other content creators to do the

same thing.  Like, as an example, the police footage, what she will do, she will say, "Ah, you have a criminal record."

And then she will buy your cam footage, she will purchase it, and she will show it behind a pay wall, and then she will pass it on to other content creators who have a large subscriber base.  And once it's repeated and repeated, she did it a couple of times, then you have hundreds of people that's jumping in your chat and they are harassing you, because she is sharing it with other content creators and other sectors, if that makes sense.

It's like, say, for instance, for an example, you don't know, you know, that content creator, but they have their -- they have their own people.  It's like once you pass it on to them, then it goes on.  It, like, grows like a cancer.  And I'm sorry.

THE COURT:  No, go ahead.

MS. SMITH:  Oh.  And then pretty soon you're harassed by thousands of people.  And especially that what I showed you before, that person has almost 200,000 subscribers.

So then you'll get that person, once they -- you know, we heard you get this or we heard you this or -- and then the -- what I showed you, he was saying "Crimmy," because he is calling me a criminal.  So Kimmy, criminal,

so he call me "Crimmy," "Crimmy the Raccoon," that sort of thing.  And then it's just ongoing to where I can't even peacefully do a live without being harassed.

THE COURT:  Okay.  So -- and that, that example like "Crimmy," was that because of what she posted about you from this letter?

MS. SMITH:  Yes.  Yes.  Calling me a criminal.

THE COURT:  Okay.  So give -- if you could, give me, then, your best bullet points of the damages that things like that caused you.

MS. SMITH:  Well, I have to see my -- I had to see a psychiatrist.

THE COURT:  Okay.

MS. SMITH:  I spoke to a therapist every -- once a week.  It was hard for me to sleep.  I was humiliated. People was calling my phone, playing on my phone, waking me up in the middle of the night.  And it just -- it was just overwhelming and unnecessary.

THE COURT:  And that's because of what got posted in this --

MS. SMITH:  Because of what got posted.

THE COURT:  From Claim 2 here in your complaint?

MS. SMITH:  In the main complaint?

THE COURT:  Yes.

MS. SMITH:  Yes.  Yes, your Honor.

THE COURT: Okay. Anything else you want to add to that list?

MS. SMITH: Again, it was -- she passed it on to other content creators, as I showed you in my -- in EC-40 where, if you refer to the plaintiffs's motion for default judgment, at where she had -- where she purchased the body camera footage and then she had her watermark over it and then shared it with other content creators to where they were sharing it and getting paid behind pay walls, you know, charging people ten bucks a piece and having thousands of people in a room, in a VIP room, which I showed you proof of that, all watching the video, and then they jump and they come and harass me.

And it's just -- it's just overwhelming, your Honor. Yeah. It's just overwhelming.

THE COURT: And did you miss any work? Is this your full-time employment?

MS. SMITH: Yeah, I -- yes, it is. Yeah. I disappeared for a while because I was humiliated. I tried to stand firm. It was -- I couldn't do a live, because once I hit live, then that's when you get a whole bunch of people jumping in my chat harassing me.

They still do to this day, your Honor. They still do to this day because of what she did. She has people that she calls avengers, and you have never seen anything

like it.

Your Honor, if you -- she will say herself -- I have a recording herself saying that -- if you just actually hear her voice, your Honor, and we can possibly put a voice to this person that I'm speaking of, I know that it might sound frivolous and it just seems that sort of thing, but what I'm telling you, that this is diabolical.

THE COURT:  Well, that, that part is not before me.

MS. SMITH:  Okay.

THE COURT:  I just have, as I said before me, what's in the complaint.  You all have a broader history --

MS. SMITH:  Yeah.  That's why I --

THE COURT:  -- that is not going to be able to be resolved from this, this one lawsuit.

But let me just take a short recess and then we will reconvene.  We're just going to recess for about ten minutes.  You're -- feel free to stay right there.

MS. SMITH:  Okay, your Honor.

THE COURT:  And we will be back.

THE CLERK:  All rise.  Court is now in recess.

(Pause in the proceedings at 3:48 p.m.)

THE CLERK:  All rise.  United States District Court for the Eastern District of Michigan is back in session.

The Court calls the case of Smith versus Robertson, Case Number 24-12213.

Would the plaintiff please state her appearance for the record.

MS. SMITH:  Kimberly Smith.

THE CLERK:  Thank you.

MS. SMITH:  Pro se.  Thank you.

THE COURT:  All right.  Thank you, Ms. Smith, for your patience.  You may be seated.

And I just have one final question.  Tell me again how -- well, first tell me, what is your job title?

Do you have a job title?

MS. SMITH:  Yes.  It's called a content creator.

THE COURT:  Content creator.  And how do you earn money?

MS. SMITH:  Through YouTube.  Through content creating.  Well, I did.

And, your Honor, I found some things when I was trying to -- when I was telling you about how the people jump in the chat and they repeat the same behavior, I can show you better than I can tell you, you know.

THE COURT:  That's -- that's okay.  I -- I understand.  So they are jumping in and repeating some of the things from that letter that were posted.

MS. SMITH:  Yeah.  And sending emails and that sort

of thing.

And I found my psychiatric record from the psychiatrist if you -- you know, just to -- just in case wanted to see any of that.  That's all, your Honor.

THE COURT:  And do you have psychiatric records from after this August 12, 2024, date?

MS. SMITH:  August 12th.  Okay.  This is from 2025. It was just stating, because of her posting my address, where my grandkids are, and that sort of thing, I couldn't sleep or -- you know, that I'm just telling you, I couldn't sleep or anything like that, so I had to see my psychiatrist, you know, for sleeping and for stress and for PTSD and I was -- I be kind of nervous about that sort of thing, because my son was shot in the head before.

And when you put that kind of unwanted attention to my home, you know, it makes me extremely paranoid, you know.  I have people -- like yesterday, somebody shot a gun, and the neighbor called me and said, "Did you hear that gun shot," type of thing.

And the first thing I'm thinking is, did she send somebody to do that to me?  You know, it's -- it's scary when somebody put up your full address on a social media like that, when they have thousands of followers who, who, you know, say things the way that these people say things.

I mean, they call me all kinds of Bs and all kinds

of stuff.  I mean, worse than that, your Honor.  I have --

THE COURT:  And that's all from the posting on August 12th of 2024.

MS. SMITH:  Yes, your Honor, it is.  And I have emails of her saying -- of other people calling me pitiful.  "If Dani Robinson is anonymous, why would she use her real name?"  "You're a moron."  And that sort of thing.  "Your husband is not an attorney."  "You have a lawsuit filed by" -- just crazy stuff.  "You only get 850 a month living in Section 8 crib."  "Not mad."  "Why lie."  "You lied about being married too."  "You're phony."  "You been lying to us."  Just all kind of stuff.  "Scamming AB."  You know, called me out my name.  "You hypocrite."  "How are you suing Dani?"  "You're nuts."  "You should be embarrassed." "Get a job, you lazy H."  "Remember you used to sell P," which I never did.  "We got receipts."  "Please deny it."  "I'm begging you to."  "Did you tell the FBI that, you F'ing prostitute."

These are the things that -- this is what her people is doing to me, you know.

THE COURT:  Well, that's why I -- again, I have to be very careful here, since I do -- I need to make sure that I'm focused on --

MS. SMITH:  Okay.  Your Honor.  I'm sorry.

THE COURT:  -- what resulted from the defamatory

statements that are at issue in this case vis-à-vis the broader history that the two of you have.

MS. SMITH: Okay, your Honor. It's -- it's just --

THE COURT: You have indicated, though, that some of this is a direct connection to --

MS. SMITH: It all is, your Honor.

THE COURT: It all is.

MS. SMITH: It all is, your Honor. It all is. It's -- because of -- I presented my evidence with the characters and putting my face on different bodies, that sort of thing, that -- all that is her doing. Posting my address on line, your Honor. All that is her doing. People start harassing me because of her, your Honor. She did all of this.

Meanwhile, hiding behind an avatar, directing other people to harass as well. And it's just -- I'm just tired, your Honor. I just would like injunctive relief, you know.

THE COURT: Well, it's very hard in a speech case. It's very hard to enjoin speech. We have First Amendment protections. So it's -- this is challenging.

MS. SMITH: I just trust in your discretion, your Honor. Just -- I'm at the Court's mercy.

THE COURT: Well, I do appreciate you being here and answering all of my questions. Let me see if I

can lay this out in a manner that hopefully you can understand.

On August 23, 2024, Plaintiff Kimberly Smith filed this pro se lawsuit against defendant Danielle Robertson for copyright infringement and a combined invasion of privacy/defamation claim.  ECF Number 1.

It appears that defendant's name is a pseudonym. Both parties have consistently used that name throughout, so the Court will do so as well for purposes of this hearing.

The Court first provides an overview of the proceedings that led to the present motion for default judgment.

On November 4, 2025, the Court granted Smith's motion for alternate service.  ECF Number 31.  The Court allowed Smith to effectuate service of process on defendant by, one, emailing a copy of the summons, complaint, and this order to defendant's known email addresses, including those used for YouTube counter-notifications and prior communications; two, posting notice on plaintiff's YouTube community page tagging defendant's known channel handle, which defendant actively monitors; and, three, mailing a copy of the summons, complaint, and this order by registered or certified mail to the defendant's registered agent or

last known mailing address. And that's id. at Page ID 30 to 31.

The Court informed Smith that she "must use all three of the listed methods to serve Roberts. One alone is not sufficient, especially given the uncertainty surrounding the identity or address of Roberts or her registered agent, if any. Id. at Page ID 31.

Smith thereafter docketed proof of service confirming service by the alternate means ordered by the Court. ECF Numbers 32 and 34.

That service indeed appeared to work, because Robertson subsequently filed a "notice of service of proposed Rule 11 motion for sanctions." ECF Number 33.

But it was not clear to the Court that Smith actually served the summons and complaint, so on December 9, 2025, the Court ordered Smith to supplement proof of service and ordered Robertson to respond to the complaint. ECF Number 35.

Smith did so. ECF Number 37. But Robinson did not. So on January 22nd, 2026, Smith moved for a Clerk's entry of default, ECF Number 38, which was entered the next day, ECF Number 39.

Smith then moved for default judgment. ECF Number 40.

Robertson, clearly having notice of the complaint,

moved to dismiss it and/or for joinder.  ECF Number 42.

But the Court denied that motion as procedurally improper, explaining that if Robertson "wishes to defend against the action her only recourse is to seek to set aside the entry of default."  ECF Number 45 at Page ID 390, quoting Gastelum versus Pinnacle Solana, 2026 Westlaw 149827, Southern District of California, January 20, 2026.

Robertson, again, clearly having notice next moved to set aside the Clerk's entry of default, and in the same filing moved to dismiss ECF Number 46.  Lack of service of process was the only issue she raised.  Id.

Finding service was proper the Court denied Robertson's motion to set aside the Clerk's entry of default and struck her motion to dismiss for violating this Court's local rules.  ECF Number 47.

Robertson then filed a second motion to set aside the Clerk's entry of default.  ECF Number 48.

The Court ordered Smith to respond to that motion. ECF Number 49, which she did, ECF Number 50.

The Court denied Robertson's motion to set aside the Clerk's entry of default, explaining that "Smith adequately refutes Robertson's contention that she failed to comply with the Court's order granting alternate service."  ECF Number 51 at Page ID 456.

Moreover, the Court explained that "there is no doubt Robertson received notice of the lawsuit," since she has filed "two motions to dismiss, ECF Numbers 20 and 42; three motions to set aside default, or alternatively to vacate as void, ECF Numbers 20, 46, 48; one motion to strike the waiver, ECF Number 20; one motion for joinder, ECF Number 42; one motion for a request for protective measures, ECF Number 20; and one motion for sanctions, ECF Number 44."  Id.

Having received no timely opposition, the Court thereafter directed Smith to submit a proposed default judgment.  Id. at Page ID 457 to 458, which she did. ECF Number 53.

Robertson then filed a response to the motion for default judgment.  ECF Number 54.

Smith filed a reply to that motion, ECF Number 55.

And Robertson filed a corrected response to that motion.  ECF Number 56.

Meanwhile, the same day as denying Robertson's second motion to set aside the Clerk's entry of default, the Court noticed an "in-person hearing" set nearly a month away on April 14, 2026, on Smith's motion for default judgment.  ECF Number 52.

Robertson moved "to appear telephonically or by audio only remote means." ECF Number 57.

The Court denied that motion.  ECF Number 58.

The Court explained, among other reasons, that "the Court wants to assess their credibility in person," especially if the parties "intend to make arguments about the important issue of damages."  ECF Number 58 at Page ID 585.

The Court also noted that it would allow Robinson to continue using a pseudonym during this hearing, as it appears she has throughout the case.  Id.

The Court denied Robertson's motion for reconsideration.  ECF Number 60.

And Robertson thereafter filed a notice of inability to appear and supplemental clarification of record.  ECF Number 61.

That brings the Court to today's hearing on Smith's motion for default judgment, which is governed by Federal Rule of Civil Procedure 55.

As mentioned, to enter a default judgment the Court must:  One, have subject matter jurisdiction; two, have personal jurisdiction over the defendant; three, ensure service was proper; four, determine that the complaint states a claim upon which relief may be granted; and five, substantiate the amount of damages sought.

The Court analyzes each element in turn.

First, subject matter jurisdiction.  The Court is

satisfied that it has subject matter jurisdiction in this case.

First, Smith's complaint asserted a cause of action arising under federal law, so the Court has federal question jurisdiction.  See Miller versus Bruenger, 949 F.3d 986 at 990, Sixth Circuit, 2020.  See also R.S. Scott Associates versus Timm Construction Company, 2014 Westlaw 7184448 at *2, Eastern District of Michigan, December 16, 2014, stating, "Because plaintiff pleaded a copyright claim pursuant to the Copyright Act there is exclusive federal jurisdiction and, therefore, subject matter jurisdiction."

Diversity jurisdiction over the state law defamation invasion of privacy claim is less clear. The parties appear to be citizens of different states. Smith is from Michigan.  The complaint lists addresses for Robertson in several states other than Michigan.

But the complaint is not as specific on pleading an amount in controversy exceeding $75,000, although it does allege emotional distress.

In any event, the Court may exercise supplemental jurisdiction over these state claims because they arise out of the same "case or controversy" as Smith's Federal claim.  See 28 United States Code Section 1367 and Packard v. Farmer's Insurance Company of Columbus, 423 F.Appx 580

at 583, Sixth Circuit, 2011, stating, "Courts may exercise supplemental jurisdiction over any state law claim that forms part of the same case or controversy as matters arising under original jurisdiction."

The Court is thus satisfied that the first element of its default judgment analysis is met.  See Ayers versus Receivables Performance Management 2016 Westlaw 5402962 at *1 to *2, Eastern District of Michigan, September 28, 2016, granting default judgment after concluding that plaintiff made a prima facie showing of jurisdiction.

Second is the issue of personal jurisdiction.  As a threshold matter, as explained by the Sixth Circuit Court of Appeals, a defendant may waive a personal jurisdiction defense if the District Court, after "considering all of the relevant circumstances" determines that the defendant's litigation conduct gave the plaintiff a "reasonable expectation" that the defendant intended to "defend the suit on the merits" or the conduct "caused the Court to go to some effort that would be wasted if personal jurisdiction is later found lacking." Blessing v Chandrasekhar, 988 F.3d 889 at 899, Sixth Circuit, 2021.

Robertson seems aware that her conduct crosses this line as she repeatedly announces at the outset of her filings that she is only making a "special appearance," but one which is not permitted by this District's local

rules.  See Eastern District of Michigan Local Rule 83.25(c).

Since the entry of the default, Robertson has caused the Court to expend extreme effort based on her attempts to have the case dismissed for many reasons, not just lack of jurisdiction, and the plaintiff sanctioned.

Personal jurisdiction is proper for this reason alone, but there are other reasons as well.  As this Court has previously held, "merely posting a defamatory statement about the plaintiff on line is not enough to hale the poster into the state where the plaintiff resides.  Instead, the poster's conduct must have involved the plaintiff's state in some additional way."  And that's Vangheluwe versus Got News LLC, 365 F.Supp. 3d 850 at 857, Eastern District of Michigan, 2019.

One of those examples, the Court explained, occurs when a "poster makes special effort to publicize the post " in that state.  Id.

Here Smith pleads that Robertson's posts and actions surrounding Smith involved attempts to get Michigan governmental officials to take specific adverse actions against her based on providing them with false information.  See, for example, ECF Number 1 at Page ID 14, which is Robertson appearing to contact the Detroit Housing Commission to seek an investigation into Smith's

housing status based on, among other things, her fraudulent revenue stream, criminal record, and housing violations.

So Robertson's actions "involved Michigan in some way other than" her "allegedly defamatory remarks about someone residing in Michigan."  Vangheluwe 365 F.Supp. 3d at 857.

The Court next examines two additional requirements that would allow it to exercise specific jurisdiction over Robertson.  See Magias Holdings versus Schmuckle, 854 F.3d 894 at 899 and 903, Sixth Circuit, 2017.

The first asks whether Smith's claims "arise from" Robertson's contact with Michigan, id. at 903, which involves a "proximate result" inquiry.  See Beydoun versus Wataniya Restaurant Holdings QSC, 768 F.3d 499 at 508, Sixth Circuit, 2014.

Robertson's request for the Detroit Housing Commission to investigate Smith would only work by Robertson identifying Smith as a Detroit resident and, again, part of the defamation claim arises directly out of statements made to the Detroit Housing Commission.

In addition, the Court considers whether requiring Robertson to defend in Michigan is in accord with "traditional conceptions of fair play and substantial justice."  See Burger King Corp versus Rudzewicz, 471 U.S.

462 at 464, 1985.

It is, because "Michigan does have an interest in seeing that its citizens are not defamed."  Vangheluwe 365 F.Supp. 3d at 861.

Moreover, Smith has "considerable interest in obtaining relief, an interest that would be burdened by having to pursue" Robertson in some other state.  See id.

The Court thus concludes that it has personal jurisdiction over Robertson.  See Ayers 2016 Westlaw 5402962 at *1 to "2.

The Court next reiterates its previous findings that service was proper in this case.  The Court granted Smith's motion for alternate service given Robertson's evasion of service.  ECF Number 31.

Smith complied with that order and docketed proof of service confirming service by the alternate means ordered by the Court.  ECF Numbers 32 and 34.

That service appeared to work, since Robertson has filed, at the very least: two motions to dismiss, ECF Numbers 20 and 42; three motions to set aside default or alternatively to vacate as void, ECF Numbers 20, 46, and 48; one motion to strike the waiver, ECF Number 20; one motion for joinder, ECF Number 42; one motion for a request for protective measures, ECF Number 20; and one motion for sanctions, ECF Number 44, in addition to the

request to appear at this hearing by remote means.

And on at least two different occasions the Court informed Robertson that it will deem her as properly served if she filed additional substantive motions addressing matters other than service. See ECF Number 28 at Page ID 248 and ECF Number 47 at Page ID 428, stating "if, for example, the defendant continues to bring substantive motions that address anything other than service the Court will deem her to have been properly served." Robertson's motions continued. The service element is satisfied.

The Court next examines whether Smith's complaint states plausible claims for relief. See General Conference Corp of Seventh Day Adventists versus McGill, 617 F.3d 402 at 407, Sixth Circuit, 2010, explaining that a plaintiff seeking a default judgment has the burden of establishing that the allegations in the complaint taken as true are sufficient to state a claim for relief.

Smith asserts two claims in this case. ECF Number 1 at Page ID 3 to 4.

First, she brings a claim for "copyright infringement and unauthorized alteration." Id. at Page ID 3.

Smith alleges that Robertson "altered her copyrighted photos without her permission or

authorization."  Id.

And she alleges that the "unauthorized use" and "alteration of her photographs constitutes copyright infringement under 17 United States Code Section 501" and a "violation of her moral rights as the original creator." Id.

Smith brings her second claim as invasion of privacy and defamation together.  ECF Number 1 at Page ID 4.

This is understandable, as false light invasion of privacy and defamation claims are often treated together.

Smith alleges that Robertson "willfully and maliciously invaded her privacy by publicly disclosing her personal and sensitive information without her consent," including details of her housing situation.  Id. at Page ID 4.

She alleges that Robertson "falsely accused her of having a felony by posting her mug shots on line and publicly disclosed untrue and defamatory statements regarding her criminal record."  Id. at Page ID 4 and 14.

Smith also alleges that "the public dissemination of her private information and the spread of false statements about her criminal record constitutes an egregious violation of her right to privacy and have defamed her character." Id.

Starting there, "in Michigan the four basic elements of a defamation claim are as follows: One, a false and defamatory statement concerning the plaintiff; two, an unprivileged communication to a third party; three, fault amounting to at least negligence on the part of the publisher; and four, either actionability of the statement irrespective of special harm, defamation per se, or the existence of special harm caused by publication." Ghanam versus Does, 845 N.W.2d 128 at 142, 2014, citation omitted.

By virtue of the default Robertson has admitted the well-pled allegations against her. See Ford Motor Company versus Cross, 441 F.Supp.2d 837 at 845, Eastern District of Michigan, 2006, stating, "Once a default is entered against a defendant that party is deemed to have admitted all of the well-pleaded allegations in the complaint, including jurisdictional averments," quotation omitted.

With these admissions Smith plausibly states a claim for defamation. The admissions include that false and defamatory statements were communicated on line and without privilege; that Robertson did so at least negligently; and that they caused Smith certain harm. See generally ECF Number 1.

Indeed, any false allegations about Smith having a felony constitute defamation per se under Michigan law.

See Martz versus Bower, 2012 Westlaw, 11919376 at *2, Michigan Court of Appeals, November 27, 2012, stating, "Plaintiffs brought their actions on a theory of defamation per se based on defendant's accusations of criminal conduct.  Words charging the commission of a crime are defamatory per se."

As to her invasion of privacy claim, "Michigan has long recognized the common law tort of invasion of privacy, Mays versus International Marketplace, 2021, Westlaw, 4932057 at *9, Michigan Court of Appeals, 2021. "There are four distinct theories for an invasion of privacy tort."  Id.

Smith does not articulate a specific theory, but the Court construes her complaint to primarily be asserting a claim for false light.  "In order to maintain an action for false light invasion of privacy a plaintiff must show that the defendant broadcast to the public in general or to a large number of people information that was unreasonable and highly objectionable by attributing to the plaintiff characteristics, conduct, or beliefs that were false and placed the plaintiff in a false position. Further, the defendant must have known of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the plaintiff would be placed."  And that's Puetz versus Spectrum Health

Hospitals, 919 N.W.2d 439 at 448 to 449, Michigan Court of Appeals, 2018.  Citations and internal quotations omitted.

The Court is focused on false light because, while I indicated that there may be some underpinnings of an intrusion upon seclusion claim, that would not state a claim on the facts alleged and even as admitted.

In Doe versus Peterson, 784 F.Supp. 2d 831 at 842, Eastern District of Michigan, 2011, the Court explained that the tort of intrusion upon seclusion under Michigan law "focuses on the manner in which information is obtained, not its publication, and thus does not exist where the only aspect of the contemplated disclosure offensive to the plaintiffs is the fact of disclosure, not the method by which it was obtained."

As already discussed, Robertson's admission of the well-pled facts based on the default, that Robertson knowing the information not to be true disclosed false information about Smith, including about her housing and legal matters, establishes a false light claim.  See generally ECF Number 1.

The same is not true, though, for Smith's copyright infringement claim, as we have discussed.  Even with the well-pled facts admitted due to the default, Smith's complaint fails to allege a claim for copyright infringement.  This is because Smith does not allege that

she has a copyright registration for the works infringed which "is a prerequisite to filing a civil action for copyright infringement.  See Freeplay Music LLC versus Dave Arbogast Buick GMC, 2019 Westlaw 4647305 at *3, Southern District of Ohio, September 24, 2019, citing 17 United States Code Section 411(a).

Indeed, claims for copyright infringement under the Copyright Act require the copyright holder to register their work before suing in order to obtain 17 USC Section 501's remedies.  See Reed Elsevier versus Muchnick, 559 U.S. 154 at 157 to 158, 2010.

The Court thus dismisses without prejudice Smith's copyright claims but concludes that Smith has stated a plausible claim for defamation and false light.

Even where the well-pleaded allegations admitted by virtue of the default establish liability a plaintiff must still prove the amount of damages.  See Antoine versus Atlas Turner Inc., 66 F.3d 105 at 110 to 111, Sixth Circuit, 1995.

In other words, a default does not automatically entitle a plaintiff to damages.  Smith's motion for default judgment sought 400,000 in actual damages. ECF Number 40 at Page ID 292.

In directing Smith to file a proposed default judgment, the Court indicated that she "must provide

sufficient detail about the basis for the 400,000 specific amount sought in actual damages." ECF Number 51 at Page ID 457.

The Court further explained that "Smith must establish the connection between that amount and the injury and claims at issue." Id. at Page ID 457 to 458. Citation omitted.

Explaining that "allegations in the complaint with respect to the amount of damages are not deemed true" on a motion for default judgment and that the Court must "conduct an inquiry in order to ascertain the amount of damages with reasonable certainty."

The Court begins with an overview of damages that may be available in a defamation/invasion of privacy claim.

First, "Under Michigan law a party may bring an action for both false light invasion of privacy and defamation, but may have but one recovery for a single instance of publicity." Armstrong v. Shirvell, 596 F.Appx 433 at 450, Sixth Circuit, 2015. Quotation omitted. And as mentioned, the damages for both are similar.

A defamation plaintiff is entitled to economic damages for the defamatory statements that defendant made negligently and for those statements made with actual malice is entitled to "the actual damages which she has

suffered in respect to her property, business, trade, profession, occupation, or feelings." Shirvell, 596 F.Appx at 448 to 449, citing Michigan Compiled Laws Section 60.2911 (2)(a). See also Ogle v. Hocker, 430 F.Appx 373 at 375, Sixth Circuit, 2011.

Actual malice means the defendant made the statement with knowledge that it was false or with reckless disregard of the truth." Ogle 430 F.Appx 376, quoting Glazer v. Lamkin, 506 N.W.2d 570 at 572 to 73, Michigan Court of Appeals, 1993. Ill will, spite, and hatred do not constitute actual malice. Id.

Additionally, exemplary or punitive damages are only recoverable where the plaintiff sought a retraction from the defendant. See Michigan Compiled Laws Section 600.2911 (2)(b).

Smith does not allege in the complaint that she requested a retraction and acknowledged at this hearing that she did not do so. She also acknowledged that she is not able to prove economic damages, so we are in the realm of non-economic or emotional distress or what the statute refers to as actual damage suffered in respect to, relevant here, business, trade, profession, occupation, or feelings, as well as injury to reputation.

The law requires me to give a liberal construction to Ms. Smith's pleading as a pro se litigant and not to

engage in formulaic recitations.  And she does allege that things were posted willfully and maliciously in her motion for default judgment when she is referring to primarily the false statements, false and defamatory statements made to the Detroit Housing Commission and other government entities.

Ms. Smith does indicate that defendant's actions demonstrate reckless disregard for the truth.  And I think, giving a liberal construction to the complaint, that is a fair inference of what Ms. Smith was seeking to allege here, and so I will focus on damages for injury to her feelings and reputation.

She indicated that she has had issues with sleeping.  She has been humiliated and missed work as a result.  She has been harassed and called in the middle of the night.  She has felt overwhelmed to the point that she has sought psychiatric care and treatment and has suffered emotional distress.

And so I am going to award Ms. Smith -- I am going to award Ms. Smith $10,000 in monetary damages for Count 2 of her complaint.

I do note that Smith also requested injunctive relief in the form of an order for Robertson to "remove all content referencing plaintiff from any platform within her control, cease using plaintiff's name, image or

license, cease all harassment or communication directed toward plaintiff, and refrain from distributing any content related to plaintiff."  ECF Number 53 at Page ID 461.

That is a very broad request and the motion does not, unfortunately, adequately address the complicated and significant constitutional issues implicated when speech is enjoined or sought to be enjoined.  And without such briefing the Court is unable to undertake "principled line-drawing between protected and unprotected portions of Robertson's communications.  Under these circumstances, the issuance of injunctive relief on such an unsound footing would be an exercise fraught with constitutional peril."  Crown Equipment Corp versus Gleeson, 2025 Westlaw 618863 at *4, Eastern District of Michigan, February 26, 2025.

So, Ms. Smith, I am going to grant in part and deny in part your motion for a default judgment.  I will enter a default judgment against Ms. Robertson in the amount of $10,000.  And I will enter just a short order to the effect of this oral ruling.

All right.  Anything further, then, from you that we need to do before we adjourn today?

MS. SMITH:  No, your Honor.  Thank you for everything.

THE COURT:  All right.  Thank you, Ms. Smith.
Take care.  Good luck to you.

MS. SMITH:  Thank you.

THE CLERK:   All rise.  Court is adjourned.

(Proceedings adjourned at 4:50 p.m.)

*       *       *

**CERTIFICATE OF COURT REPORTER**

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

_____*s/ Rene L. Twedt*_____     **April 16, 2026**
RENE L. TWEDT, CSR-2907, RDR, CRR, CRC     Date
     Federal Official Court Reporter