UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KIMBERLY SMITH.,
          Plaintiff,

vs.

DANIELLE ROBERTSON.,
          Defendant,

Case No.24-cv-12213
Honorable Laurie J. Michelson
Magistrate Kimberly G. Altman

**DEFENDANT'S MOTION FOR RELIEF FROM JUDGMENT
PURSUANT TO FED. R. CIV. P. 60(b)(1), (3), (4), AND (6)**

Defendant submits this corrected motion following the Court's April 24, 2026 Order and has

addressed the procedural deficiencies identified. Defendant appreciates the Court's time and

consideration of this matter.

## I. INTRODUCTION

This motion seeks limited relief from judgment under Rule 60(b) based on issues that were not

fully developed in the default posture, including jurisdiction, service, and the sufficiency of the

underlying claims. Although the Court entered a limited default judgment, the resulting award

carries significant consequences, and Defendant respectfully submits that the record, as it stands,

reflects matters that may not have been fully explored without adversarial presentation.

The Court narrowed the case to a single communication (ECF No. 64, PageID.629–631). Within

that framework, however, the record reflects unresolved issues as to jurisdiction, falsity,

causation, and damages. The present record includes reliance on conclusory allegations,

contradictions between testimony and exhibits, and omissions bearing directly on causation and

damages, including changes in Plaintiff's claimed damages without a clear evidentiary basis.

In a default posture, the Court necessarily relied on untested representations. This motion does

not seek to relitigate matters previously addressed, but to present issues affecting whether the

judgment rests on a complete and reliable factual record. Where material omissions,

1

inconsistencies, or jurisdictional defects affect the integrity of that record, relief may be appropriate under Rule 60(b).

Defendant has acted to preserve her rights and now presents meritorious defenses that were not subject to adversarial testing, including lack of jurisdiction, insufficient service, failure to establish required elements, and absence of compensable damages. Addressing these issues would promote resolution on a complete record consistent with the preference for adjudication on the merits.

**Statement of Concurrence**

Pursuant to Local Rule 7.1(a), Defendant sought concurrence from Plaintiff by email on April 24, 2026. Plaintiff responded, "I do not concur in the relief requested" (quoted as written). Accordingly, this motion is submitted for the Court's consideration.

**II. STANDARD FOR RELIEF UNDER RULE 60(b)**

Rule 60(b) permits relief from a final judgment based on mistake or legal error, fraud or misrepresentation, a void judgment, or other reasons justifying relief. Defendant presents meritorious defenses that would defeat the claims if adjudicated on the merits. Relief under Rule 60(b)(4) is mandatory where a judgment is void: "If a judgment is void, it must be vacated." *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 271.

A default judgment does not relieve the Court of its obligation to ensure that the complaint states a legally sufficient claim. As the Court recognized, "A default judgment cannot stand on a complaint that fails to state a claim." (ECF No. 64, PageID.616). See also *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (a default admits only well-pleaded factual allegations, not legal conclusions). Rule 60(b)(1) permits relief based on mistake or legal error, Rule 60(b)(3) applies where misrepresentation prevented a full and fair presentation, and Rule 60(b)(6) applies

in extraordinary circumstances. A default admits only well-pleaded facts, not legal conclusions or jurisdictional sufficiency. Entry of judgment without establishing the required elements may therefore constitute error under Rule 60(b)(1) and (4). The Sixth Circuit strongly favors resolving cases on the merits rather than by default. See *United Coin Meter Co. v. Seaboard Coastline R.R.*, 705 F.2d 839, 845 (6th Cir. 1983).

## III. VOID JUDGMENT – NO JURISDICTION

Plaintiff failed to establish diversity jurisdiction, as the Complaint provides no factual basis for the amount in controversy, and Plaintiff repeatedly admitted under oath that she suffered no financial loss, stated there were "no money damages," and confirmed she could not prove damages monetarily (ECF No. 64, PageID.633–636).

Supplemental jurisdiction likewise does not apply where state-law claims do not arise from the same case or controversy as the federal claim, particularly where the federal claim has been dismissed in the same proceeding. Here, the copyright claim—the only asserted basis for federal question jurisdiction—was dismissed at the same hearing for failure to meet a statutory prerequisite (ECF No. 64, PageID.618). The housing communication occurred on August 6, 2024, while the alleged copyright dispute arose later, on or about August 18, 2024, demonstrating that the claims do not arise from a common nucleus of operative fact.

Personal jurisdiction is also lacking. The only alleged contact is a single report submitted through a government reporting system, which does not, without more, establish purposeful availment or minimum contacts. As explained in *Walden v. Fiore*, 571 U.S. 277 (2014), a defendant's conduct must create contacts with the forum itself, not merely with a plaintiff who resides there. See also *Beydoun v. Wataniya Rests. Holding, Q.S.C.*, 762 F.3d 499, 505 (6th Cir. 2014).

3

Additionally, Plaintiff failed to effectuate service in compliance with Rule 4 and the Court's alternative service order (Exs. 8–10). "Proper service of process is a prerequisite to personal jurisdiction." *O.J. Distrib., Inc. v. Hornell Brewing Co.*, 340 F.3d 345, 353 (6th Cir. 2003). Because service was not effectuated in compliance with the Court's order, the record does not establish that the Court had personal jurisdiction over Defendant.

## IV. ANALYSIS OF PLAINTIFF'S SHIFTING AND INCONSISTENT LEGAL THEORIES

The procedural record reflects evolving and inconsistent legal theories across Plaintiff's filings. In the Complaint (ECF No. 1), Plaintiff separated invasion of privacy and defamation. In the First Motion for Default Judgment (ECF No. 18), Plaintiff reclassified claims and treated agency reports as harassment rather than defamation. In the Second Motion (ECF No. 40), the same conduct was again recharacterized, with the housing letter newly labeled as defamation. In the Proposed Default Judgment (ECF No. 53), Plaintiff merged all claims into a generalized "pattern of conduct," contrary to the Court's directive (ECF No. 51).

The Court's March 17, 2026 Order required Plaintiff to: (1) establish subject matter jurisdiction, (2) establish personal jurisdiction, (3) demonstrate proper service, (4) show that each element of the claims was plausibly supported, and (5) substantiate damages with a clear evidentiary basis (ECF No. 51, PageID.457), including explaining how specific allegations supported each element and how the damages amount related to the alleged injury. Plaintiff's submission did not satisfy these requirements: jurisdiction was not established, the elements were not supported, and damages were not substantiated with competent evidence. This failure to comply underscores the inadequacy of the record supporting the default judgment.

At the April 14, 2026 hearing, the Court rejected this framework and narrowed the case to a single alleged act: "The essence of that claim is the letter… to the Detroit Housing Commission."

4

(ECF No. 64, PageID.630–631). The Court further clarified that this was the only basis for damages: "That's the only claim right now for which I can award you damages." (ECF No. 64, PageID.629–631); "That's all that I can award money damages on." (ECF No. 64, PageID.630–631). Any reliance on conduct outside that single communication is therefore improper. Yet even under this narrowed theory, the required elements were not established, and judgment was entered, which may constitute legal error warranting relief under Rule 60(b)(1).

This shifting of legal theories, combined with Plaintiff's failure to comply with the Court's March 17, 2026 Order (ECF No. 51, PageID.457), reflects a materially incomplete and inconsistent record, warranting relief under Rule 60(b)(3) and Rule 60(b)(1).

## V. SERVICE DEFECTS AND DUE PROCESS

Service was not properly effectuated. Defendant's first notice arose through unauthorized subpoenas used to identify and unmask Defendant without judicial review, a prima facie showing, or First Amendment balancing (Exs. 8–10). Plaintiff failed to comply with the Court's alternative service order (ECF No. 31), as none of the required methods were completed: email was ineffective due to known blocking, YouTube tagging was not performed, and certified mail failed as confirmed by the undated and unsigned return receipt noted by the Clerk on the docket (ECF No. 37).

Proper service is a prerequisite to personal jurisdiction, and actual knowledge does not cure defective service. See LSJ Inv. Co. v. O.L.D., Inc., 167 F.3d 320, 322 (6th Cir. 1999); Friedman v. Estate of Presser, 929 F.2d 1151, 1156 (6th Cir. 1991); King v. Taylor, 694 F.3d 650, 659 (6th Cir. 2012).

Defendant acted promptly upon discovering the case and preserving evidence, filing responsive motions within days and demonstrating diligence. The Court mischaracterized a brief notice as

5

substantive participation, and Plaintiff failed to serve subsequent filings, including the Motion for Default Judgment (ECF No. 40), depriving Defendant of a fair opportunity to respond. Defendant's failure to appear at the scheduled hearing was not willful or in bad faith, but the result of financial constraints that made travel infeasible, despite prior good-faith efforts to participate in the proceedings, including filing substantive motions, requesting permission to appear remotely, and providing notice of inability to attend. Defendant has consistently demonstrated an intent to defend this case on the merits and presents meritorious defenses, including lack of causation, absence of damages, and reliance on disclosed sources. Vacatur would not prejudice Plaintiff and would serve the strong preference for resolving cases on the merits.

Because none of the Court-ordered methods of service were successfully completed, service was not effectuated in compliance with the Court's order. Without proper service, the record reflects that personal jurisdiction may not have been established, and the resulting judgment appears void under Rule 60(b)(4). These defects support vacatur.

## VI. FAILURE TO STATE A CLAIM

A default does not admit legal conclusions. See Ashcroft v. Iqbal, 556 U.S. 662 (2009). A plaintiff must plead specific, actionable facts establishing each element.

## VI(A). STANDARD

Under applicable law, defamation requires: (1) a false statement of fact, (2) about the plaintiff, (3) published to a third party, and (4) resulting in harm. A defamation claim requires a false statement "of and concerning" the plaintiff.  Even in a default posture, the Court must independently determine whether the complaint states a legally sufficient claim. See General Conf. Corp. of Seventh-Day Adventists v. McGill, 617 F.3d 402, 407 (6th Cir. 2010).

Under Sixth Circuit authority, a plaintiff must establish falsity and unprivileged publication. See Lothschuetz v. Carpenter, 898 F.2d 1200 (6th Cir. 1990). Plaintiff does not appear to identify a specific actionable statement, does not establish falsity, and does not show any statement was "of and concerning" her (ECF No. 1; Ex. 14). Plaintiff's allegations regarding being labeled a "felon" are likewise unsupported. The evidence shows no statement by Defendant asserting that Plaintiff was convicted of a felony. At most, the referenced materials concern an arrest reflected in police records. Referencing an arrest derived from disclosed law enforcement materials is not equivalent to asserting a criminal conviction and, without more, does not constitute a provably false statement of fact.

Plaintiff also publicly acknowledged the underlying conduct referenced in the reporting, stating: "That's my mug shot… it is for shooting at a [__]" (Ex. A, 1:24–1:39)

and: "She posted my mug shot and then bringing up the other time that I shot at somebody" (Ex. A, 2:52–3:03)

These admissions further confirm that the underlying facts were not fabricated and were derived from Plaintiff's own public statements. Conflating an arrest with a felony conviction reflects a characterization not supported by the record and does not establish falsity. The distinction is legally critical: an arrest is not proof of guilt, and accurately referencing an arrest derived from official records cannot be transformed into a false statement of conviction. A defamation claim requires a statement of fact that is capable of being proven true or false. See Milkovich v. Lorain Journal Co., 497 U.S. 1, 20 (1990). Where no specific false statement is identified, a defamation claim is insufficient even in a default posture.

**VI(E). HOUSING LETTER**

The Court identified the housing letter as the sole communication at issue. (ECF No. 64, PageID.630–631). That communication, however, does not satisfy the elements of defamation or any related claim. Plaintiff's assertion that Defendant "posted [her] address" was central to her claim of harm. However, the record distinguishes between a public property record reflecting Detroit Housing Commission ownership and the housing communication itself. The letter contains no personal address or phone number and instead references only a government office address. By conflating these separate documents, Plaintiff's account of the alleged disclosure was materially incomplete or inaccurate. Because the Court relied on this narrative in evaluating harm and causation, this misrepresentation directly affected the Court's evaluation of harm and the resulting damages determination.

First, the letter contains no false statement of fact. Statements not reasonably understood as asserting verifiable facts are not actionable. See Milkovich, 497 U.S. at 20. Second, the version of the letter that was published was redacted and contained only limited, non-identifying information, insufficient to identify Plaintiff or disclose private facts. Third, the letter does not carry a defamatory meaning. It is non-specific, investigatory in nature, and based on information relevant to agency review.

Fourth, the record reflects that Plaintiff has conflated this housing letter with separate materials, including a Detroit Housing Commission property record (ECF No. 1, PageID.13). The record separates into two distinct exhibits: a public property record at ECF No. 1, PageID.13 and a separate housing communication at ECF No. 1, PageID.14. The deed is a public record reflecting Detroit Housing Commission ownership and contains no statement authored by Defendant. The letter, by contrast, is the only communication the Court identified as actionable, stating that "The essence of that claim is the letter… to the Detroit Housing Commission." (ECF No. 64,

PageID.630–631). Plaintiff's allegation that Defendant "posted [her] home address" appears to merge these separate documents, even though the deed is not Defendant's statement and the letter itself uses the Detroit Housing Commission office address and no phone number. Accordingly, the deed cannot support an invasion of privacy claim by Plaintiff, as it reflects publicly available information belonging to a third-party governmental entity, not private facts of Plaintiff. The letter's wording is also not defamatory on its face. It is framed in conditional and investigatory terms, raising "concerns" that "may represent violations" and asking the agency to investigate, rather than asserting adjudicated facts. It relies on disclosed source material, including a police report, and does not state that Plaintiff was convicted of a felony. In this posture, the communication is administrative and investigative, not a provably false assertion of criminal guilt. When the deed and letter are properly separated, the deed contains no statement by Defendant, and the letter does not disclose Plaintiff's address, phone number, or other identifying contact information.

This conflation of distinct documents and mischaracterization of the letter's content constitutes a material misrepresentation affecting the Court's analysis of falsity and damages, supporting relief under Rule 60(b)(3).

As the Court recognized, invasion of privacy is not a single claim but a set of separate torts with distinct elements (ECF No. 64, PageID.618). The housing communication, directed to a governmental agency and based on disclosed materials, does not satisfy the elements of either defamation or any recognized invasion of privacy claim.

## VI(G). SELF-PUBLICATION

Plaintiff voluntarily disclosed the same categories of information at issue, eliminating any reasonable expectation of privacy. Plaintiff acknowledged that she publicly displayed her

residence:

"I showed my house, but not my address… get it right" (Ex. AB, Clip 8, 16:13–16:20).

Ultimately, Plaintiff publicly referenced and compared her residence using mapping tools, including Google Maps imagery, in connection with her broadcasts (Ex. A; Ex. V). These actions placed location-related identifying information into the public domain. These admissions confirm that Plaintiff herself in 2023 disclosed the relevant information, undermining any claim that Defendant was the source of such disclosure.

## VII. FIRST AMENDMENT AND PROTECTED PETITIONING

The First Amendment protects speech and, in some circumstances, communications relating to matters of public concern, absent a showing of falsity and actual malice. See *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964).

Here, the communication was directed to a governmental agency and based on disclosed source material, including public records and a police report. Plaintiff did not allege facts establishing falsity or actual malice, nor make the required prima facie showing.

Defendant's identity was nevertheless pursued through subpoenas issued prior to proper service (Exs. 8–10) and without the required prima facie showing or First Amendment balancing. This failure supports relief under Rule 60(b)(1), (3), and (4).

## VIII. NO DIVERSITY OR SUPPLEMENTAL JURISDICTION

The Court expressly acknowledged that diversity jurisdiction over Plaintiff's state-law claims was deficient: "Diversity jurisdiction… is less clear." "The complaint is not as specific on pleading an amount in controversy exceeding $75,000…" (ECF No. 64, PageID.653). Rather than resolve that defect, the Court relied on supplemental jurisdiction under 28 U.S.C. § 1367.

At the April 14 hearing, Plaintiff admitted under oath that "I didn't lose anything" (ECF No. 64, PageID.633), that there were "no money damages" (ECF No. 64, PageID.634), and that she "can't prove any damages… monetarily" (ECF No. 64, PageID.636). Plaintiff's prior January 2024 lawsuit—dismissed for lack of jurisdiction—confirms she was already on notice of these deficiencies (Ex. 14). Despite that dismissal, Plaintiff reasserted similar claims here without any new factual basis supporting damages, reinforcing that the jurisdictional amount was not pleaded in good faith. The Court relied on supplemental jurisdiction based on a federal copyright claim that it simultaneously dismissed: "I'm going to have to dismiss that claim without prejudice." (ECF No. 64, PageID.618). Because the copyright claim lacked a required registration, it was defective from inception and could not serve as a valid basis for federal jurisdiction. The record further shows that the alleged copyright dispute is temporally and factually distinct from the August 6, 2024 housing communication identified by the Court and does not share a common nucleus of operative fact. Plaintiff's continued use of Defendant's content during the litigation—including conduct leading to a September 15, 2024 copyright complaint (Docket No. 24-CCB-0276) and removal of the video that same day—undermines both the credibility of her claims and any assertion of harm. Continued engagement with the same source of alleged injury is inconsistent with claims of damages and breaks the causal link to Defendant.

Accordingly, the record does not support the exercise of supplemental jurisdiction and may constitute legal error warranting relief under Rule 60(b)(1). Because jurisdiction depended on a unified factual narrative, and the record shows the alleged conduct was temporally distinct and previously litigated, the resulting judgment rests on a materially inaccurate jurisdictional framework and may not be sustainable.

**IX. DAMAGES FAIL FOR LACK OF CAUSATION AND PROOF**

The record establishes multiple independent causes of the alleged harm, none attributable to Defendant's conduct as a matter of law, and fails to provide a non-speculative evidentiary basis for either economic or non-economic damages. First, Plaintiff's own statements confirm that the outcome of the housing communication was financially beneficial, not harmful. Plaintiff stated:

"they owed me money… they owed me so much back money… they offering to sell me the house… they sent me a check" (Ex. AB, Clip 2, 0:30–2:28) and: "they not only did I not owe them money… it all turned around in my favor" (Ex. AB, Clip 2).

These admissions directly contradict any claim of financial harm and instead reflect a net financial benefit, precluding compensable damages. Second, the record confirms that the alleged harm predates the August 2024 communication and arose from independent third-party conduct. During a September 24, 2023 discussion, Plaintiff stated: "I was doxxed… yes I did… I had that number for over 20 years… it don't matter" (Ex. AB, Clip 3, 7:04–7:27). This establishes that the alleged disclosure of contact information occurred in 2023, prior to the communication at issue. Plaintiff also testified that the Detroit Housing Commission "had been called by several people" (ECF No. 64, PageID.625), confirming that any alleged harm arose from multiple independent actors rather than a single communication attributable to Defendant.

The Court expressly limited damages to the housing letter alone, stating: "That's the only claim right now for which I can award you damages" and "That's all that I can award money damages on." (ECF No. 64, PageID.629–631). Even in a default posture, the Court must independently determine damages and ensure a factual basis exists; damages must be supported by a factual basis and cannot be speculative. See *Vesligaj v. Peterson*, 331 F. App'x 351, 355 (6th Cir. 2009). Here, Plaintiff admitted under oath that she suffered no monetary loss and could not prove damages, stating that she "didn't lose anything," that there were "no money damages," and that

she "can't prove any damages… monetarily" (ECF No. 64, PageID.633–636). On this record, the damages award cannot be sustained as a matter of law.

Third, the record shows that any alleged harm arose within a broader context of Plaintiff's own conduct and public dissemination of the dispute. Plaintiff made both this action and her prior January 2024 lawsuit public content, repeatedly discussing them on YouTube, displaying filings, and directing viewers to review court documents through PACER (Ex. 10; Ex. V). These actions increased public awareness and enabled third parties to independently review filings—including financial disclosures—and form their own conclusions, thereby contributing to the alleged harm.

Fourth, Plaintiff failed to provide a non-speculative basis for non-economic damages. Although she described stress and inconvenience, she identified no method to assign monetary value or distinguish those experiences from unrelated circumstances reflected in the record. Her testimony referenced broader events—including food stamp inquiries, interactions with other agencies, and ongoing disputes—without isolating the effect of the single communication identified by the Court (ECF No. 64, PageID.629–631). The record further shows that agencies had been contacted by multiple individuals (ECF No. 64, PageID.625) and that similar issues predated the August 2024 communication, undermining any reliable causal connection.

Plaintiff also presented no objective evidence establishing the severity, duration, or source of the alleged distress. References to stress and sleep issues are not tied to the specific communication and may reflect other acknowledged factors, including prior events and ongoing disputes. Taken together, the record reflects generalized and overlapping assertions rather than a clear, evidence-based showing of compensable harm attributable to the single communication at issue.

Damages cannot be based on speculation. Intervening causes may break the chain of proximate causation. Accordingly, Plaintiff's attribution of harm to Defendant—while omitting

independent causes, preexisting events, and her own role in amplifying the dispute—fails to establish causation or damages and reflects material omissions affecting the record, supporting relief under Rule 60(b)(3). At most, the record supports nominal damages.

## X. RULE 60(b)(1): LEGAL ERROR

Rule 60(b)(1) permits relief where the judgment rests on legal error. See Pierce v. United Mine Workers of Am. Welfare & Ret. Fund, 770 F.2d 449, 451 (6th Cir. 1985).

## X(A). MALICE STANDARD

The Court's analysis reflects a distinction between the legal standard of "actual malice" and Plaintiff's use of the term "maliciously" in a descriptive sense. As a matter of law, actual malice requires knowledge of falsity or reckless disregard for the truth. *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964). Plaintiff's Complaint uses the term "maliciously" but does not plead facts demonstrating knowledge of falsity or reckless disregard. (ECF No. 1, PageID.4) .

During the hearing, the Court noted this issue, stating: "I'm struggling to find a reference to [actual malice] in your complaint" and "I don't know if you have adequately pled actual malice." (ECF No. 64, PageID.620, 624) . These observations reflect the absence of specific factual allegations supporting that element.

The record also reflects circumstances that weigh against an inference of actual malice. The operative communication identified underlying source material, including reference to a police report, indicating reliance on disclosed and verifiable information rather than unsupported assertion. Reliance on identified sources is generally inconsistent with a finding of reckless disregard for the truth.

Plaintiff's own statements further reflect awareness of the underlying conduct, including: "was arrested again for a whole nother gun charge… two different me shooting twice at people" (Ex.

A, 4:04–4:26). These statements provide context for the information referenced and are not consistent with a claim that Defendant acted with knowledge of falsity or serious doubt as to truth.

In addition, the communication was framed in conditional and investigatory terms, expressing "concerns" and that conduct "may represent violations," rather than asserting adjudicated facts. Such language is generally inconsistent with the level of certainty required to establish actual malice.

The transcript further reflects that the Court focused its analysis on the allegations contained in the Complaint and the scope of the pleaded claim (ECF No. 64, PageID.630–632) . Within that framework, the absence of factual allegations supporting actual malice remains significant to the viability of the claim.

To the extent the claim required a showing of actual malice, the absence of pleaded facts supporting that element may present a basis for relief under Rule 60(b)(1).

Additionally, Plaintiff's public conduct, including repeated broadcasts and engagement in ongoing public disputes, may be relevant to whether she qualifies as a limited-purpose public figure under *Gertz v. Robert Welch, Inc.*, which would require proof of actual malice.

## XI. MATERIAL OMISSIONS AND INCONSISTENCIES THAT DIRECTLY AFFECTED JURISDICTION, LIABILITY, AND DAMAGES

The record reflects not isolated discrepancies but repeated material omissions and inconsistencies. In a default posture—where the Court relied on Plaintiff's untested representations—these omissions shaped the factual framework underlying jurisdiction, liability, and damages and were not subject to adversarial testing. Plaintiff did not disclose that she had previously identified and discussed her residence using publicly available mapping tools,

including Google Maps, undermining any claim that Defendant disclosed private location information. She also relied on conduct outside the Court's limitation to a single communication. The record reflects that key allegations—including the "Crimmy" characterization—originated from third-party creators, not Defendant (ECF No. 64, PageID.640; Ex. AB; Ex. V). Plaintiff did not disclose these sources or her own role in amplifying the dispute. She instead attributed harm to Defendant while incorporating unrelated third-party conduct and broader disputes.

Plaintiff also failed to disclose that third-party reporting activity was independent and ongoing. She admitted that the Detroit Housing Commission "had been called by several people" (ECF No. 64, PageID.625), confirming that any alleged harm arose from multiple actors rather than a single communication.

The record further reflects that Plaintiff publicly disseminated the dispute, including directing viewers to court filings through PACER (Ex. 10; Ex. V), thereby increasing public awareness and third-party engagement. She did not disclose that such public activity contributed to the attention and scrutiny she now attributes to Defendant.

Plaintiff also omitted that her channel was subject to enforcement action for harassment content, resulting in suspension and demonetization (Ex. 3). That action occurred on November 17, 2025—over a year after the August 2024 communication—precluding any causal connection, yet Plaintiff attributed that outcome to Defendant while omitting the timing and independent basis for the platform's decision.

These omissions are reinforced by Plaintiff's prior conduct and disputes beginning in 2023, including public conflicts with multiple individuals and third-party commentary arising from her own content. Plaintiff's attribution of all harm to the August 2024 communication reflects a recharacterization of preexisting events rather than a discrete causal event.

Taken together, the record shows that (1) third-party conduct, (2) Plaintiff's own public dissemination, and (3) preexisting disputes were not disclosed or were reattributed in a manner that distorted causation and damages. Because the Court limited the case to a single communication and relied on Plaintiff's presentation of that communication and its effects, these omissions directly affected the outcome and prevented a full and fair presentation, supporting relief under Rule 60(b)(3).

## XI(A). THIRD-PARTY CAUSATION

As reflected in the record and incorporated above, Plaintiff's attribution of harm to Defendant is directly contradicted by third-party admissions. In a recorded April 19, 2026 conversation, TJ admitted that she publicly posted Plaintiff's phone number in 2023 (Ex. AB, Clip 6; April 19, 2026). Plaintiff's prior statements likewise attribute the same harassment and exposure to third parties (Ex. AB), yet those facts were not disclosed to the Court. These omissions materially distort causation and demonstrate that the alleged harm did not originate solely from Defendant, preventing a full and fair presentation of the case under Rule 60(b)(3).

The omission of these independent sources of publication and harm prevented a full and fair presentation of causation and constitutes a material misrepresentation under Rule 60(b)(3).

## XI(B). MISREPRESENTATIONS REGARDING THE UNDERLYING INCIDENT AND SOURCE MATERIAL

The record also reflects inconsistencies in Plaintiff's own statements regarding the very incident underlying the housing communication. The police report attached to the letter (Ex. XX; Ex. 4) documents the arrest referenced in that communication.

Law enforcement records show that Plaintiff initially denied discharging a firearm, but later admitted to firing the weapon into the ground during the same incident (Ex. XX at 5). This inconsistency is further corroborated by Plaintiff's own recorded statements. In police footage,

17

Plaintiff admits: "So I fired it in the ground…" and immediately thereafter asks whether her account "sound[s] like [___]," seeking confirmation of how the explanation would be perceived (Ex. AB, clip 7, Ex. 4; Ex. XX at 5). Because this incident is the same event referenced in the housing letter and supported by attached records, Plaintiff's shifting statements directly bear on the truth and characterization of the communication at issue. The sequence of denial, subsequent admission, and immediate reframing reflects evolving accounts of the underlying event itself. When considered alongside Plaintiff's other inconsistent allegations, omissions, and contradictory statements, this further demonstrates that the record relied upon in default was internally inconsistent. These circumstances support relief under Rule 60(b)(1) and Rule 60(b)(3).

## XI(C). PRIOR LAWSUIT

Plaintiff's current claims are directly contradicted by her prior federal lawsuit filed on January 3, 2024, styled *Smith v. Robertson*, Case No. 2:24-cv-10009-LJM-KGA. See Ex. 14 (asserting identical allegations before August 2024). In that complaint, Plaintiff alleged that Defendant "perpetuat[ed] a lie that [Plaintiff is] a felon" and contacted law enforcement agencies (Ex. 14 at PageID.5). These are the same categories of allegations asserted here, but now reassigned to a later timeframe (August 2024 and beyond). This is a direct inconsistency: the same alleged conduct cannot both predate January 2024 (as required to file that lawsuit) and newly arise in mid-to-late 2024. The repeated "felon" allegation—asserted in January 2024 and now reattributed to later events without new underlying conduct—reflects a shifting narrative rather than a specific actionable statement. The absence of any identified statement by Defendant asserting a criminal conviction further shows the claim rests on characterization, not a provably false statement.

18

The Court dismissed the January 2024 case for lack of jurisdiction after Plaintiff failed to cure deficiencies (Ex. 14). Instead of correcting those defects, Plaintiff refiled substantively similar allegations while altering the timeline, reattributing preexisting conduct to later dates. Because the Court's exercise of supplemental jurisdiction depended on a common nucleus of operative fact tied to August 2024, this temporal reattribution materially affected the jurisdictional analysis. Courts have recognized that inconsistent positions across proceedings may undermine the integrity of the judicial process. See *New Hampshire v. Maine*, 532 U.S. 742 (2001). Plaintiff cannot simultaneously claim that the same conduct justified federal litigation in January 2024 while also asserting that it newly arose months later. This contradiction goes directly to the integrity of the pleadings and the validity of the judgment.

Plaintiff's causation theory is contradicted by the record timeline. The housing communication occurred in August 2024, yet Plaintiff had already filed a lawsuit in January 2024 alleging reputational harm from the same "felon" accusation. Those allegations necessarily predate the August 2024 communication and cannot be caused by it. Plaintiff's testimony further reflects that third-party commentary—including the term "crimmy"—originated from other creators and dates back to 2023. These statements were not made by Defendant and predate the housing communication. During the April 14, 2026 hearing, the Court distinguished between the August 2024 communication and the broader history of disputes. Plaintiff responded under oath: "It all is, your Honor. It all is." (ECF No. 64, PageID.647). This collapses preexisting events, third-party conduct, and prior litigation into a single narrative directly contradicted by the record. It is therefore temporally impossible for all alleged harm to have been caused by a later communication. Because the Court limited the case to a single communication and relied on this

attribution in awarding damages, this misrepresentation directly affected the Court's causation and damages analysis, supporting relief under Rule 60(b)(3).

The record further reflects that the underlying conflict began in 2023 as part of broader disputes involving third parties. Plaintiff acknowledged prior doxxing during a September 24, 2023 panel discussion: "I was doxxed… yes I did… I had that number for over 20 years… it don't matter" (Ex. AB, Clip 3, 7:04–7:27). This confirms that the alleged disclosure of contact information occurred in 2023, well before the August 2024 communication, and resulted from independent third-party conduct. Following the 2023 disputes and dismissal of the January 2024 lawsuit, the record reflects a period of non-adversarial interaction through at least June 2024 (Ex. 17), followed by the August 2024 communication. This sequence shows the dispute did not arise from a single communication but from broader, evolving interactions.

Plaintiff did not disclose this sequence. Instead, the August 2024 communication was presented as the origin of harm. The omission of prior conflict, reconciliation, and intervening events created a materially incomplete account of causation. Because the Court limited the case to a single communication, this omission directly affected the analysis of causation and damages and prevented a full and fair presentation, supporting relief under Rule 60(b)(3).

### XI(D). PLAINTIFF STATEMENTS

Plaintiff's own statements confirm that her alleged distress arose from her own investigative conduct and ongoing disputes, rather than any act attributable to Defendant (Ex. A; Ex. 13; recordings dated 2023–2024). As reflected in Exhibit A, Plaintiff attributed her inability to sleep to prolonged investigative activity, stating she "couldn't sleep" due to hours spent reviewing videos and repeatedly conducting voice analysis to identify Defendant (Ex. A, 28:00–28:32; Ex. 13).

These efforts were sustained and central to her content, consisting of repeated voice comparisons across multiple videos attempting to identify Defendant as another individual. The record further shows that this misidentification had independent real-world consequences. As a result, Defendant contacted that individual's employer; in a December 19, 2023 communication to SoulCycle management, Defendant explained the employee had been "mistakenly identified," resulting in "unwarranted attention and harassment." This is inconsistent with Plaintiff's later testimony. At the April 14, 2026 hearing, Plaintiff stated she sought psychiatric care and could not sleep, attributing those conditions to the August 2024 housing communication (ECF No. 64, PageID.636, 645), and referenced 2025 treatment records (ECF No. 64, PageID.644–645). In the same hearing, she also attributed distress to prior trauma, stating her son had been "shot in the head" years earlier (ECF No. 64, PageID.645).

These statements conflict with Plaintiff's 2023–2024 admissions attributing the same symptoms to her own investigative conduct (Ex. A; Ex. 13), reflecting shifting explanations that undermine causation. This is further reinforced by Plaintiff's acknowledgment of preexisting conditions predating any interaction with Defendant, including: "I'm a little bipolar. PTSD… That's what I'm diagnosed with" (Ex. A, 3:03–3:16). Plaintiff also stated she receives a disability check, including in a live broadcast and in ECF No. 2, without identifying the basis.

Taken together, the record reflects (1) post hoc attribution of symptoms to the August 2024 communication, (2) prior admissions attributing the same symptoms to Plaintiff's own conduct, and (3) acknowledgment of preexisting conditions. These competing explanations preclude any reliable determination that Defendant's conduct caused Plaintiff's alleged harm.

**XI(E). RELIABILITY OF CLAIMS**

The record reflects statements by Plaintiff raising serious concerns regarding the reliability of her claims. In a recorded broadcast dated June 19, 2025, Plaintiff stated: "I will file criminal charges for harassment… cyberstalking… extortion… blackmail… fraud… cyber crimes… trademark… I will look I will make up some [__]… did you say defamation as well… girl everything." (Ex. AB, Clip 9, 20:53–21:32). This statement raises concerns regarding the reliability of the claims presented without clear evidentiary grounding and bears directly on the reliability of the claims presented. It is not offered to attack Plaintiff's character, but to illustrate the unreliability of the factual assertions underlying the default judgment.

The record further reflects that Plaintiff publicly discussed and, at times, minimized or reframed aspects of her own criminal history and related incidents in online broadcasts, while simultaneously claiming reputational harm and humiliation arising from those same events in her filings. This inconsistency undermines any claim that the alleged harm was caused by Defendant, as Plaintiff's own statements contributed to the dissemination and characterization of that information.

When considered alongside Plaintiff's failure to substantiate damages, omission of material facts, and re-attribution of prior events, this evidence supports relief under Rule 60(b)(3). Because the Court limited the case to a single communication and relied on Plaintiff's description of that communication and its effects, any material inaccuracies directly affected the outcome. In the absence of adversarial testing, the judgment rests on a materially unreliable factual record.

## XI(F). FEE WAIVER ISSUES

To the extent the Court determines that these material misrepresentations rise beyond ordinary error and support an inference of distortion of the judicial process, such conduct may implicate

the Court's inherent authority to set aside a judgment obtained through fundamentally unreliable representations.

Financial affidavits submitted to obtain in forma pauperis status must be truthful and complete. See *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339 (1948).

The record reflects material inconsistencies between Plaintiff's representations of financial hardship and her own statements and income activity. In January 2024, Plaintiff submitted a fee waiver application asserting financial hardship (Ex. 14), yet the record reflects ongoing monetized activity both before and after that filing. At the April 14, 2026 hearing, Plaintiff testified under oath that she was earning "a couple of thousand a month" from YouTube (ECF No. 64, PageID.626) and claimed she lost income at that level.

This evidence also addresses the Court's inquiry regarding Plaintiff's ability to generate income while demonetized. When asked whether monetization remained possible (ECF No. 64, PageID.626), Plaintiff gave a non-definitive response. However, in an April 20, 2026 broadcast, Plaintiff acknowledged receiving funds through a third-party payment platform, stating, "I got my first cash app of the day… Thank you very very much" (Ex. V-13, 48:10–48:26), demonstrating continued ability to receive financial support notwithstanding demonetization and undermining any claimed loss of income attributable to Defendant.

This discrepancy reflects inconsistent representations regarding income and a shifting narrative used to support both fee waiver eligibility and later claims of damages. The record further shows that Plaintiff attributed income loss to events in 2024 while acknowledging that similar disputes, reporting, and public scrutiny were already occurring from 2023 into early 2024, indicating that the alleged harm predated the conduct at issue.

23

Additionally, Plaintiff admitted under oath that she suffered "no money damages" and could not prove damages monetarily (ECF No. 64, PageID.633–636), further undermining any claim that income loss resulted from Defendant's conduct. The combination of (a) income inconsistent with fee waiver status, (b) inability to prove monetary damages, and (c) a preexisting timeline of similar events directly impacts credibility, causation, and the reliability of the damages theory presented to the Court.

These inconsistencies are not newly raised. Defendant previously brought similar deficiencies to the Court's attention through an earlier Rule 11 motion, identifying the lack of evidentiary support and reasonable pre-filing inquiry underlying Plaintiff's claims. While those issues were not resolved on the merits, the present record demonstrates that the same deficiencies materially affected the factual framework upon which the default judgment was entered, supporting relief under Rule 60(b)(3).

## XII. CONCLUSION (RELIEF REQUESTED)

This case does not involve competing evidence but rather an incomplete record. The judgment rests on an internally inconsistent record that was not subject to adversarial testing, affecting jurisdiction, liability, and damages. Plaintiff attributed all harm to an August 2024 communication, yet alleged the same reputational injury in January 2024, undermining causation. Plaintiff also admitted under oath that she "didn't lose anything," that there were "no money damages," and that she could not prove damages, yet a $10,000 award was entered without evidentiary support. Where a judgment rests on such inconsistencies and an untested record, relief under Rule 60(b) is warranted.

Defendant respectfully requests:

24

1. **Vacatur of the Judgment (Rule 60(b)(4))**

   Because the record reflects defects in service and the absence of personal jurisdiction, the judgment may be void.

2. **Alternatively, Vacatur of the Damages Award**

   The award rests on sworn testimony negating financial loss and lacks evidentiary support.

3. **Alternatively, Reduction to Nominal Damages**

   In the absence of proof of compensable harm, any award should be limited to nominal damages.

4. **Alternatively, Limited Reopening on the Narrowed Claim**

   If the Court declines to vacate the judgment in full, Defendant requests limited reopening consistent with the Court's prior ruling narrowing the case to a single communication. Reopening solely to address that communication would permit adversarial testing of falsity, causation, and damages on a complete record without expanding the scope of the case.

Even if the judgment remains, the record does not support attributing compensable harm to Defendant, given independent third-party conduct and Plaintiff's own public dissemination of the dispute. Accordingly, Defendant respectfully requests relief under Rule 60(b), including vacatur of the judgment or, at minimum, vacatur or reduction of the damages award, or limited reopening narrowly tailored to the communication identified by the Court.

Respectfully Submitted,
**Danielle Robertson,**
April 23, 2026
4539 N 22ND ST, Phoenix, AZ 85016-4639
DaniRobertson@proton.me

**CERTIFICATE OF SERVICE:**  I hereby certify that on April 24, 2026, a true and correct copy of this Motion was served upon Plaintiff Kimberly Smith via ECF

25

**EXHIBITS LIST**

Exhibit No. | Title | Description | Citation Anchor
------------------------------------------------------------------------------------------

Ex. 1 | Sworn Declaration (28 U.S.C. § 1746)
Declaration of Danielle Robertson authenticating screenshots, public records, platform
notices, and preserved video evidence referenced throughout Exhibit V.
Sections IV, IX, XI

Ex. 2 | Municipal Quit Claim Deed
Wayne County property records showing 13745 Thornton is owned by the Detroit
Housing Commission / HUD, not Plaintiff individually.
Sections VI, VIII

Ex. 3 | YouTube Harassment / Demonetization Notice
YouTube determination that Plaintiff's channel engaged in harassment and abusive
conduct, resulting in demonetization.
Sections IX, XI

Ex. 4 | Detroit Police Department Narrative (OCA 230530-0223)
Police narratives (2017 & 2023) reflecting arrest-related reports labeled "Aggravated /
Felonious Assault," demonstrating arrest—not conviction.
Sections VI, XI

Ex. 5 | Michigan Concealed Pistol License (Self-Published)
Plaintiff's publicly posted CPL displaying full legal name and address, evidencing waiver
of privacy.
Sections VI, XI

Ex. 6 | 36th District Court Payment Receipt
Plaintiff's self-posted receipt showing payment of Ticket No. SP14341311 ($288.00),
contradicting representations regarding unresolved tickets.
Sections IV, XI

Ex. 7 | Public Challenge to Contact Court
Social media post inviting the public to contact 36th District Court, evidencing self-
publication and waiver.
Sections IV, XI

Ex. 8 | Improper "Criminal Case" Subpoena Set
Subpoenas to Google LLC falsely labeled as issued "In a Criminal Case," demonstrating
misuse of process.
Sections V, VII

26

Ex. 9 | Civil Subpoena (Unauthorized Discovery)
Subpoenas issued without discovery authorization, demonstrating improper use of subpoena power.
Sections V, VII

Ex. 10 | Subpoena & PACER / Social Media Postings
Clerk-stamped subpoena and Plaintiff's social media directing public to PACER filings, contributing to public dissemination.
Sections IX, XI

Ex. 11 | Self-Publication of Mugshot
Screenshots of Plaintiff's public posts displaying her mugshot.
Sections VI, XI

Ex. 12 | Proof of Monetization at Time of Filing
Records showing Plaintiff's YouTube channel was monetized at the time of filing and evidence of continued financial intake (including third-party payments).
Sections IX, XI

Ex. 13 | Forensic Voice Analysis Screenshot (Public Claim Only)
Evidence of Plaintiff's inconsistent identification of Defendant and lack of reasonable pre-filing inquiry.
Sections XI

Ex. 14 | Prior Lawsuit (Smith v. Robertson, Jan. 2024)
Complaint and dismissal establishing prior litigation, timeline contradiction, and notice of jurisdictional defects.
Sections VIII, XI

Ex. 17 | Communications and Misidentification
Evidence showing Plaintiff's misidentification of Defendant and resulting third-party consequences.
Sections XI

Ex. A | Plaintiff Statements (Recordings / Admissions)
Recorded statements reflecting Plaintiff's admissions regarding conduct, distress, and investigative activity.
Sections VI, IX, XI

Ex. AB | Video & Audio Clip Index (Clips 1–10)
Indexed clips with timestamps documenting admissions, third-party conduct, lack of damages, and causation issues.
Sections IX, XI

Ex. V | Video Statements & Public Content Index

27

Master index of Plaintiff's video statements, including dates, URLs, timestamps, and quotations showing amplification and inconsistencies.
Sections IV, VI, IX, XI

Ex. XX | Police Reports (2017 & 2023)
Supporting documentation of underlying incident referenced in the housing communication.
Sections VI, XI

**EXHIBIT 1**

**DECLARATION OF DEFENDANT**

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

1.  I am the Defendant in the above-captioned action, appearing specially and without waiving any objections to personal jurisdiction, service of process, subject-matter jurisdiction, or any other defenses, and I submit this declaration in support of Defendant's Motion for Relief from Judgment pursuant to Federal Rule of Civil Procedure 60(b).

2.  I have personal knowledge sufficient to authenticate the exhibits and materials referenced in the Motion, including Plaintiff's filings, Plaintiff's publicly available statements, and public records cited therein.

3.  The exhibits referenced consist of screenshots, public records, platform notices, and preserved video excerpts that were created, published, or relied upon by Plaintiff, or that constitute matters of public record.

4.  The factual assertions set forth in the Motion are based on Plaintiff's filings, Plaintiff's public statements, and publicly available records, and are presented for the purpose of demonstrating material omissions, inconsistencies, and factual inaccuracies that affected the record upon which the default judgment was entered.

5.  Nothing in this declaration is intended to waive Defendant's special appearance, concede jurisdiction, or waive any defenses, including objections to personal jurisdiction, service of process, or subject-matter jurisdiction. Defendant maintains a limited appearance solely for the purpose of seeking relief from judgment.

6.  The referenced exhibits have been preserved in their original form and are available for inspection upon request of the Court.

    I declare under penalty of perjury that the foregoing is true and correct.

    Executed on: **April 23, 2026**

    /s/ Danielle Robertson

    Danielle Robertson

    Defendant, appearing specially

29

**EXHIBIT 2**



**EXHIBIT 3**



**Kimberly Smith** ✔   @313kimmieluv   Ø  ···

@TeamYouTube Hi, my channel was demonetized for "harassment," but I've taken immediate corrective action.
I've set ALL of my videos to private so my channel is fully compliant with YPP policies.
I was mass-reported during a harassment situation, and the decision seems to be automated.
Can I please get a manual re-review? My family depends on this income.
Thank you for your help.youtube.com/channel/UC7cQg...

9:45 AM · Nov 17, 2025 · **378** Views



24

# Your channel is not currently able to earn



# What happened?

After reviewing your channel using a combination of automated systems and human reviewers, we found that it does not follow YouTube's channel monetization policies

25

 **Kimberly Smith** ✔ @313kimmieluv · Nov 17

@TeamYouTube Hi, my channel was demonetized for "harassment," but I'v taken immediate corrective action.
I've set ALL of my videos to private so my channel is fully compliant with YPP policies.
I was mass-reported during a harassment situation, and the decision seems to be automated.
Can I please get a manual re-review? My family depends on this income. Thank you for your help. youtube.com/channel/UC7cQg...



**not currently able to earn**

**What happened?**

After reviewing your channel using a combination of automated systems and human reviewers, we found that it does not

26

## EXHIBIT 4

### REPORTING OFFICER NARRATIVE

| | | OCA |
| --- | --- | --- |
| *Detroit Police Department* | | *230530-0223* |
| Victim | Offense | Date / Time Reported |
| *RHODMAN, MYA MYKEA* | *AGGRAVATED / FELONIOUS ASSAULT* | *Tue 05/30/2023 14:44* |

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

[05/30/2023 14:43, HAMPTON[ ] 27724]

Scout 2-10  Platoon 2  Shift: 7am-3pm

Officers:

PO Hampton, Lorenzo Badge# 1111

PO Dorsette, Bernard Badge# 636
******* NO FORCE USED*******

My partner and I was dispatched to [ ] for a shotspotter police run, upon our arrival to the location my partner and I was approached by Mya Rhodman B/F who stated her neighbor Kimberly Smith B/F across the street occupying [ ] came outside of her residence and got into a verbal altercation with Ms. Rhodman about being at the location.

Ms. Rhodman stated Ms. Smith came to the front door of the location pushing Ms. Rhodman away from the house telling her, " She does not belong here." after Ms. Smith pushed Ms. Rhodman she stated Ms. Smith was armed with her revolver  waved it at Ms. Rhodman before she discharged her firearm in the sky and returned to her location.

My partner and I made contact with Ms. Smith at her address and asked if she had a firearm she admitted to owning a pistol and it was a revolver, Ms. Smith was placed under arrest for felonious assault and I placed her in handcuffs with no forced used. Ms. Smith was transported to the Detroit Detention Center successfully, during the transport Ms. Smith admitted to firing her gun into the ground after previously stating she did not fire her firearm.

## REPORTING OFFICER NARRATIVE

*Detroit Police Department*

| OCA |
| --- |
| *170630-0387* |

| Victim | Offense | Date / Time Reported |
| --- | --- | --- |
| *GOLSON, JENICE EUNICE-FAYE* | *AGGRAVATED / FELONIOUS ASSAULT* | *Fri 06/30/2017 22:28* |

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

[06/30/2017 22:47, TAYLORS542, 3453]

P.O S.TAYLOR 3728
P.O J. BROWNING 4136

TALKED TO VICTIM WHO STATED SHE WAS DROPPING OFF HER DAUGHTERS FRIEND AT HER GRANDMOTHERS HOME, LOCATED AT ████████ , WHEN A DARK GRAY DODGE CHARGER PULLED UP AND A BLACK FEMALE JUMPED OUT THE CAR. A UNKNOW B/F WALKED UP TO THE VICTIMS VEHICLE AS THE FRIEND GOT OUT OF THE VICTIMS VEHICLE AND STARTED FIGHTING WITH THE DAUGHTERS FRIEND.THE VICTIM STATED THAT SHE TOLD THE UNK B/F SHE DIDNT WANT ANY PROBLEMS, AND SHE DIDNT KNOW WHAT WAS GOING ON. THE VICTIM STATED THAT AS SHE STARTED TO PULL OFF FROM THE LOCATION, 2 UNK B/M STOOD IN FRONT OF HER VEHICLE, AND THE UNK B/F WAS IN THE REAR OF THE VEHICLE FUMBLING IN HER PURSE AND PULLED OUT A CHROME 38 REVOLVER BLACK HANDLE, AND BEGAN FIRING SHOTS INTO THE VEHICLE, THERE WAS EIGHT SHOTS INTO THE VEHICLE. THE VICTIM DROVE TO MOTOR CITY CASINO LOCATION OF BROOKLYN ST AND TEMPLE ST WHERE SHE CALLED THE POLICE. 371 MADE LOCATION NOTIFIED SGT. BREUENTON FROM NOTIFICATIONS AND CONTROL.371 ALSO NOTIFIED EVIDENCE TECH CODE 4711. THE OFFENDERS NAME IS POSSIBLY KIMBERLY E. SMITH

28

**EXHIBIT 5**



**EXHIBIT 6**



**EXHIBIT 7**



**EXHIBIT 8**



**Exhibit 8.2 – Google Email about Criminal Subpoena**

31



**Exhibit 8.3 Sybrena Evans is sharing Plaintiffs Criminal Subpoena**



**EXHIBIT 9 -Civil Subpoena**

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

## UNITED STATES DISTRICT COURT
for the
Eastern District of Michigan

KIMBERLY SMITH
_____
Plaintiff

v.

DANIELLE ROBERTSON
_____
Defendant

)
)
)
)
)
)
)

Civil Action No. 24:-CV- 12213

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
### OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: GOOGLE LLC Custodian of Records 1600 Amphitheatre Parkway Mountain View, CA 94043, USA legal- support
(Name of person to whom this subpoena is directed)

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:
Record logs, and identifying information associated with the YouTube acoount linked to the following URLs: https://www.youtube.com/@DaniRobertson https://www.youtube.com/@DANIMONTANATV https://www.youtube.com/@TRUTHTELLERDANI Please see Addendum Attatched

| Place: kimberlyesmith313@gmail.com | Date and Time: November . 5:00 PM |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: November

KINIKIA D. ESSIX, CLERK OF COURT

_____
Signature of Clerk or Deputy Clerk

OR

_____
Attorney's signature

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*
Kimberly Smith 13745 Thornton St. Detroit, MI 48227 (313)982-2844
_____ , who issues or requests this subpoena, are:
kimberlyesmith313@gmail.com pro se

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before

**EXHIBIT 10**





**EXHIBIT 11**



**EXHIBIT 12**



37



**EXHIBIT 13**



## Liar Exposed
○ Members only

See perks    Subscribe          ☍ 143   �👎 0   ⤳ Share   •••

Streamed live on Jul 13, 2025 Jul 13, 2025 #jaguarwright #tashak #kattwilliams
#jaguarwright #tashak #kattwilliams

# EXHIBIT A

Compilation video with timestamps:
https://drive.google.com/file/d/1pAP1HYc5fgVzG97NwByErWzOcenJIq7f/view?usp=sharing

| Timestamp | Transcript Quote | Related Section | Motion Summary |
|---|---|---|---|
| 0:00-0:05 | Go and watch Dani's video on my police record | Invasion of Privacy (Count II) | Plaintiff invited others to view and discuss her police record, thereby waiving any expectation of privacy. |
| 1:24-1:39 | That's my mug shot. It is for shooting at a [__] | Defamation (Count III) | Plaintiff confirmed the existence of the charge, stating 'That's my mugshot for shooting at a [__]' and invited others to view Dani's video. |
| 3:03-3:16 | I'm a little bipolar. PTSD all kinds of [__] | Exhibit A: Harassment and Threats | Plaintiff states 'I'm a little bipolar' in conjunction with violent speech, showing volatility. |
| 3:38-3:50 | King World get her... get that [__] | March 15, 2025 Threats | Plaintiff encouraged a known cyberstalker to 'get Dani' in a livestream. |
| 6:00-6:24 | Addresses are right next door to each other... Powder Springs | Exhibit A - Misidentification | Plaintiff speculates about Defendant's identity using public address data. |
| 7:17-7:28 | I'm suing her ass... so I got to be kind of [__] about what I do | Improper Purpose and Coordination | Plaintiff admits active lawsuit and concealing tactics publicly. |
| 13:40-14:07 | Once this case is won, I'm going to know everything about her. | Protective Order - Threats to Discover Identity | Plaintiff states that identity discovery is the intent, reinforcing doxxing behavior. |
| 14:31-14:43 | What you gonna do to Dani... expose that [__] | Retaliatory Purpose | Intent to harm and expose Defendant is clearly stated. |
| 29:01-30:12 | She shouldn't have messed with a girl from Detroit... hope someone slaps the dog [__] out of her | Pattern of Violent Statements | Plaintiff repeatedly makes violent threats toward the Defendant. |
| 31:04-33:39 | If you're so hurt... you should be concentrating on the damages not trying to | May 24 and May 27 Advice to Evans | Plaintiff advises a co-litigant to pursue damages rather than identity exposure, proving improper purpose. |

| | find out who this person is | | |
|---|---|---|---|
| 2:52-3:03 | She posted my mug shot and then bringing up the other time that I shot at somebody | Defamation (Count III) + Violent Statements | Plaintiff acknowledges shooting incidents and confirms sharing her own mugshot, defeating defamation and privacy claims. |
| 4:04-4:26 | was arrested again for a whole nother gun charge... two different me shooting twice at people | Exhibit A: Violent Criminal History | Repeated reference to her own shooting charges used for intimidation; demonstrates misuse of past conduct as a threat. |
| 29:01-29:07 | She shouldn't have messed with a girl from Detroit cuz I'm gonna mangle her into the light | Pattern of Violent Statements | Plaintiff makes physical threats using metaphorical and direct violent language, 'mangle her', in a campaign of intimidation. |
| 30:05-30:12 | Hope someone slaps the dog [__] out of her so hard their hand burns | Protective Order Justification | Statement exemplifies why protective measures are necessary to prevent physical incitement and threats. |
| 13:59-14:07 | Once this case is won I'm going to know everything and it's going to be accurate | Efforts to Doxx Dani | Reveals lawsuit's true intent is identity exposure; admits doxxing is the end goal of the litigation. |
| 38:05-38:11 | You keep trying to go after compelled to show who you are... you're going to come off as obsessed | Advice to Evans + Collusion | Shows that identity exposure is seen as inappropriate by Plaintiff herself and used to advise a co-litigant to shift strategy. |

26

EXHIBIT AB: GOOGLE DRIVE:

https://drive.google.com/file/d/1trYNSjQe5U0MENOnsuTl5GF0e9dBtAud/view?usp=sharing

| Clip No. | Date | Source / Platform | Timestamp | Description | Key Admission / Relevance |
|---|---|---|---|---|---|
| 1 | 2025 | YouTube (Plaintiff Broadcast) | 0:07–0:18 | Allegation of Housing Commission report | Plaintiff claims someone contacted the Detroit Housing Commission. |
| 2 | 2025 | YouTube (Plaintiff Broadcast) | 0:30–2:28 | Favorable outcome of Housing Commission interaction | Plaintiff admits the agency "owed me money," provided back pay, and offered purchase of the home. Demonstrates no harm and defeats damages. |
| 3 | Sept. 24, 2023 | YouTube (Panel w/ Plaintiff, Jaguar Wright, Queen Tulsa) | 7:04–7:27 | Admission of prior doxxing | Plaintiff admits: "I was doxxed... yes I did... people are sending me messages." Establishes preexisting harm caused by third parties. |
| 4 | Sept. 24, 2023 | YouTube (Panel discussion) | 5:44–6:01 | Discussion of phone number disclosure | Confirms TJ posted Plaintiff's phone number; Defendant did not repost it. |
| 5 | Sept. 24, 2023 | YouTube (Defendant Commentary) | 6:43–6:51 | Refusal to republish doxxed content | Defendant states she did not post the video containing Plaintiff's phone number. |
| 6 | Apr. 19, 2026 | YouTube Live (Call with TJ) | 14:43–15:12 | Direct admission by third party | TJ states: "I did dox... yes I did," confirming she posted Plaintiff's number in 2023. Establishes independent source of harm. |

| Clip No. | Date | Source / Platform | Timestamp | Description | Key Admission / Relevance |
|---|---|---|---|---|---|
| 7 | Oct. 2024 | Police Bodycam Footage | 17:21–19:00 | Statement regarding firearm incident | Plaintiff describes discharging a firearm and interaction with police; reflects prior public disclosure of conduct referenced in reporting. |
| 8 | 2023 (conduct); admission Apr. 19, 2026 | YouTube Live (Plaintiff statement) | 16:13–16:20 | Admission of public display of residence | Plaintiff states: "I showed my house, but not my address... get it right." Establishes self-publication of location-related information. |
| 9 | June 19, 2025 | YouTube (Plaintiff Broadcast) | 20:53–21:32 | Statement regarding litigation claims | Plaintiff states: "I will file criminal charges... I will make up some [__]... defamation... everything." Demonstrates willingness to assert claims without evidentiary basis; supports Rule 60(b)(3). |
| 10 | 2023 (referenced) | YouTube (Panel / Commentary) | 11:29–11:53 | Prior third-party doxxing pattern | Discussion confirms TJ previously doxxed another individual in 2023, reinforcing third-party conduct unrelated to Defendant. |

**Exhibit V — Video Statements and Public Admissions**

*(Plaintiff's Own Public Statements Demonstrating Improper Purpose, Lack of Reasonable Inquiry, Waiver of Privacy, and Abuse of Process)*

All statements below are Plaintiff's own words, drawn from publicly available videos and posts. Each entry is cited solely to demonstrate **procedural misconduct under Rule 11** and **not** for adjudication of the merits.

**V-1. Admission of Fabrication and Intent to File False Claims**

- **Date:** June 19, 2025
- **Video Title:** *Happy Juneteenth Lions Denmates*
- **URL:** https://www.youtube.com/watch?v=qPbdz0jZNQc&t=3141s •       **Timestamp:** 51:00–52:21
- **Direct Quote:**

    "I will file criminal charges for harassment cyber cyberstalking criminal cyberstalking extortion blackmail criminal everything fraud cyber crimes trademark… I will look I will make up some shit… did you say defamation as well… girl everything."

- **Rule 11 Relevance:**
  Direct admission of intent to fabricate claims and weaponize the court process, establishing filing for an **improper purpose** in violation of **Rule 11(b)(1)**.

**V-2. Litigation Framed as Planned 'Winter Content'**

- **Date:** October 27, 2025
- **Video Title:** *Happy Monday DenMates*
- **URL:** https://www.youtube.com/watch?v=wGjNJcetH9g • **Timestamp:** 00:23:12
- **Direct Quote:**

    "Yes the win… Yeah this gonna be the expose of that bitch. That's gonna be the whole winter content."

- **Rule 11 Relevance:**
  Shows advance planning to use litigation as monetized harassment, supporting **Rule 11(b)(1)** improper purpose.

**V-3. Intentional 'Slow Walk' of Defendant's Alleged Downfall**

- **Date:** October 27, 2025
- **Video Title:** *Happy Monday DenMates*

- 

  - **URL:** https://www.youtube.com/watch?v=wGjNJcetH9g
    **Timestamp:** 00:28:03
  - **Direct Quote:**

    "Slow walk this bitch… it's not quick… it's going to be a little walk but just bear with us."

  - **Rule 11 Relevance:**
    Demonstrates intent to prolong litigation for harassment rather than resolution (**Rule 11(b)(1)**).

## V-4. Countdown to Court Proceedings as Entertainment

- **Date:** October 27, 2025
- **Video Title:** *Happy Monday DenMates*
- **URL:** https://www.youtube.com/watch?v=wGjNJcetH9g • **Timestamp:** 00:31:04
- **Direct Quote:**

  "November the 3rd… it's going down… did she fuck around and find out or what y'all."

- **Rule 11 Relevance:**
  Treats court proceedings as spectacle, reinforcing abuse of process.

## V-5. Repeated Statement That Defendant's Situation 'Should Be Content'

- **Date:** October 25, 2025
- **Video Title:** *Happy Saturday DenMates*
- **URL:** https://www.youtube.com/watch?v=o8OojBZXjXI • **Timestamp:** 24:49; 25:59
- **Direct Quote:**

  "Why is that not content? Why is people sadstepping her motherfucking feelings? I don't get it."

- **Rule 11 Relevance:**
  Confirms motive of exploitation rather than good-faith litigation (**Rule 11(b)(1)**).

## V-6. Admission That Harassment Drives Channel Growth

- **Date:** October 25, 2025
- **Video Title:** *Happy Saturday DenMates*
- **URL:** https://www.youtube.com/watch?v=o8OojBZXjXI

- 

- **Timestamp:** 56:09

  **Direct Quote:**

  > "You want to know why my views is motherfucking growing? Because I'm exposing your bitch ass."

- **Rule 11 Relevance:**
  Links alleged harassment directly to profit motive.

### V-7. Anticipation of Defendant's 'Countdown Clock'

- **Date:** October 24, 2025
- **Video Title:** *Happy Friday DenMates* •     **Timestamp:** 14:55
- **Direct Quote:**

  > "You talking about the countdown clock from Dani… yeah, I can't wait."

- **Rule 11 Relevance:**
  Demonstrates celebratory anticipation of litigation harm.

### V-8. Promotion of Criminal Subpoenas in Civil Case

- **Date:** October 21, 2024
- **Video Title:** *Open Panel: Let's Talk About It*
- **URL:** https://www.youtube.com/watch?v=_dLcHcIn6WE&t=5092s •     **Key Timestamps:** 35:34; 01:24:34; 01:34:14
- **Direct Quotes (Representative):**

  > "Subpoenas are the ultimate checkmate…"
  > "I'm filing criminal charges in your state."

- **Rule 11 Relevance:**
  Shows misuse of criminal process language in a civil matter, supporting **abuse of process** under **Rule 11(b)(1)**.

### V-9. Claim That Google Was Subpoenaed / Platform Coercion

- **Date:** November 1, 2024
- **Video Title:** *What Up Doe Den*
- **URL:** https://www.youtube.com/watch?v=8T_a43iG280&t=5092s •     **Timestamps:** 10:48–12:21
- **Direct Quote:**

•

> "Google has reached out to me… call me a liar now… I want to show y'all so bad."

> **Rule 11 Relevance:**
> Supports the pattern of misuse of judicial process representations.

### V-10. False Identification and Crowd-Sourced Doxxing

- **Date:** October 28, 2025
- **Video Title:** *EXPOSED! CHRISEAN ROCK AIRS OUT EVERYBODY*
- **URL:** https://www.youtube.com/live/uTnsXd6Na68 •    **Timestamps:** 45:07; 53:35; 01:04:33
- **Direct Quote:**

> "Put a one in the chat if you think that it's her…"

- **Rule 11 Relevance:**
  Demonstrates reckless identification without verification, relevant to Rule 11(b)(3).

### V-11. Admission of Showing Her House on Live / Google Maps

- **Date:** September 24, 2025
- **Video Title:** *You wanna mess with Cheryl? You minus well 8040 that!!*
- **URL:** https://www.youtube.com/watch?v=UEZ75Kco_dA&t=3316s •    **Timestamp:** 55:16–55:44
- **Direct Quote:**

> "I showed my house but not my address… get it right."

- **Rule 11 Relevance:**
  Establishes **self-publication** and waiver of privacy, undermining contrary pleadings (**Rule 11(b)(3)**).

### V-12. Statement of Using Courts to 'Dog Walk' Defendant

- **Date:** November 24, 2025 •   **Video Title:** *Happy Tuesday*
- **Direct Quote:**

> "I'm going to expose her through the courts and dog walk this bitch."

- **Rule 11 Relevance:**
  Explicit intent to use judicial filings as harassment tools.

- 

**V-13**  April 20, 2026 **Title: Happy Monday Denmates/ Case against YN Mootie timestamp** 48:10–48:26),

https://www.youtube.com/watch?v=sxCkvEppwnc

MIED ProSe 1 (Rev 5/16) Complaint for a Civil Case        EXHIBIT 14

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

Kimberly E. Smith

*(Write the full name of each plaintiff who is filing this complaint.
If the names of all the plaintiffs cannot fit in the space above,
please write "see attached" in the space and attach an additional
page with the full list of names.)*

v. Danielle Robertson

*(Write the full name of each defendant who is being sued. If the
names of all the defendants cannot fit in the space above, please
write "see attached" in the space and attach an additional page
with the full list of names.)*

Case: 2:24-cv-10009
Assigned To : Michelson, Laurie J.
Referral Judge: Altman, Kimberly G.
Assign. Date : 1/3/2024
Description: CMP SMITH V.
ROBERTSON (DJ)

*(to be filled in by the Clerk's Office)*

Jury Trial:     ☐ Yes   ☐ No
*(check one)*

# Complaint for a Civil Case

MIED ProSe 1 (Rev 5/16) Complaint for a Civil Case

## I. The Parties to This Complaint

### A. The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

Name _Kimberly E. Smith_

Street Address _692 East St._

City and County _Detroit Wayne_

State and Zip Code _Michigan 48201_

Telephone Number _(313) 982-2844_

E-mail Address _Kimmieluvme729@icloud.com_

### B. The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title (if known). Attach additional pages if needed.

Defendant No. 1

Name _Danielle Robertson_

Job or Title (if known) _content creator_

Street Address _8 The Green STE A_

City and County _Dover Delaware_

State and Zip Code _Delaware 9901_

Telephone Number _(577) 571 5748067_

E-mail Address (if known) _wilsonlana158@gmail.com_

Defendant No. 2

Name _____

Job or Title (if known) _____

Street Address _____

City and County _____

State and Zip Code _____

Telephone Number _____

E-mail Address (if known) _____

2

MIED ProSe 1 (Rev 5/16) Complaint for a Civil Case

Defendant No. 3

Name _____

Job or Title
(if known) _____

Street Address _____

City and County _____

State and Zip Code _____

Telephone Number _____

E-mail Address
(if known) _____

Defendant No. 4

Name _____

Job or Title
(if known) _____

Street Address _____

City and County _____

State and Zip Code _____

Telephone Number _____

E-mail Address
(if known) _____

## II.    Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power).  Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties.  Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case.  Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case.  In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction?  *(check all that apply)*

☐  Federal question                    ☐  Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

3

MIED ProSe 1 (Rev 5/16) Complaint for a Civil Case

**A.    If the Basis for Jurisdiction Is a Federal Question**

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

**B.    If the Basis for Jurisdiction Is Diversity of Citizenship**

1.    The Plaintiff(s)

   a.    If the plaintiff is an individual
   The plaintiff, *(name)* Kimberly Smith ,
   is a citizen of the State of *(name)* Michigan .

   b.    If the plaintiff is a corporation
   The plaintiff, *(name)* Ð ,
   is incorporated under the laws of the State of *(name)*
   _____, and has its principal place of business in the
   State of *(name)* _____.

*(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2.    The Defendant(s)

   a.    If the defendant is an individual
   The defendant, *(name)* Danielle Robertson, is a citizen of the
   State of *(name)* Delaware . *Or* is a citizen of *(foreign nation)* _____.

   b.    If the defendant is a corporation
   The defendant, *(name)* _____, is incorporated
   under the laws of the State of *(name)* _____, and
   has its principal place of business in the State of *(name)*
   _____. *Or* is incorporated under the laws of
   *(foreign nation)* _____, and has its principal place
   of business in *(name)* _____.

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

4

MIED ProSe 1 (Rev 5/16) Complaint for a Civil Case

3.    The Amount in Controversy

The amount in controversy—the amount the plaintiff claims the defendant owes or the amount at stake—is more than $75,000, not counting interest and costs of court, because *(explain)*:

## III.    Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

The defendant, Danielle Robertson,

The defendant, Danielle Robertson, has harrassed me by replaying and using several of my youtube videos resulting in me losing money from my partnership with youtube and google. She's also called various law enforcement agencies and perpetuate a lie that I am a felon while on youtube live, at my expense. This further resulted in monies lost. I would like to restrain Danielle Robertson from ever using my material now and in the future due to it being my copywritten work. To prohibit her from further using my likeness and/or image.

5

MIED ProSe 1 (Rev 5/16) Complaint for a Civil Case

## IV. Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

1.) Infringing video https://www.youtube.com/watch?v=6hfKl4cgA
* my original video https://www.youtube.com/watch?v=1tLS99P-yFo

2.) Infringing video https://www.youtube.com/watch?v=fy63bOOooMY
* my original video https://www.youtube.com/watch?v=4h2lEZonjn4

3.) Infringing video https://www.youtube.com/watch?v=3FTtib6b7DQ
* my original video https://www.youtube.com/watch?v=XwNuCPIVz68

4.) Infringing video https://www.youtube.com/watch?v=_X3CIRAZJc
* my original video https://www.youtube.com/watch?v=LjFVGuS8hA

## V. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A. For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: 1/3/24 , 20 24.

Signature of Plaintiff

Printed Name of Plaintiff Kimberly Smith

6

# JS 44 (Rev. 10/20)     CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS**

Kimberly E. Smith

**(b)** County of Residence of First Listed Plaintiff   Wayne
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

**DEFENDANTS**

Danielle Robertson

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

- [X] 1   U.S. Government Plaintiff
- [ ] 2   U.S. Government Defendant
- [ ] 3   Federal Question *(U.S. Government Not a Party)*
- [ ] 4   Diversity *(Indicate Citizenship of Parties in Item III)*

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*     *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [X] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [X] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [X] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [X] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*     Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [X] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 367 Health Care/ | | | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | Product Liability | | [X] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | [ ] 368 Asbestos Personal Injury Product | | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | Liability | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 460 Deportation |
| | | **PERSONAL PROPERTY** | | [ ] 840 Trademark | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 370 Other Fraud | **LABOR** | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 371 Truth in Lending | [ ] 710 Fair Labor Standards Act | | [ ] 485 Telephone Consumer Protection Act |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 380 Other Personal Property Damage | [ ] 720 Labor/Management Relations | **SOCIAL SECURITY** | [ ] 490 Cable/Sat TV |
| [ ] 195 Contract Product Liability | [ ] 362 Personal Injury - Medical Malpractice | [ ] 385 Property Damage Product Liability | [ ] 740 Railway Labor Act | [ ] 861 HIA (1395ff) | [ ] 850 Securities/Commodities/ Exchange |
| [ ] 196 Franchise | | | [ ] 751 Family and Medical Leave Act | [ ] 862 Black Lung (923) | [ ] 890 Other Statutory Actions |
| | | | [ ] 790 Other Labor Litigation | [ ] 863 DIWC/DIWW (405(g)) | [ ] 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 791 Employee Retirement Income Security Act | [ ] 864 SSID Title XVI | [ ] 893 Environmental Matters |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | | [ ] 865 RSI (405(g)) | [ ] 895 Freedom of Information Act |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | | **FEDERAL TAX SUITS** | [ ] 896 Arbitration |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment | [ ] 510 Motions to Vacate Sentence | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 950 Constitutionality of State Statutes |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | **IMMIGRATION** | | |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other:** | [ ] 462 Naturalization Application | | |
| | [ ] 448 Education | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration Actions | | |
| | | [ ] 550 Civil Rights | | | |
| | | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

820

**V. ORIGIN** *(Place an "X" in One Box Only)*

- [ ] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:

Brief description of cause:   $1 200

**VII. REQUESTED IN COMPLAINT:**

- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $ _____

CHECK YES only if demanded in complaint:
**JURY DEMAND:** [ ] Yes [X] No

**VIII. RELATED CASE(S) IF ANY**

*(See instructions):*   JUDGE _____   DOCKET NUMBER _____

DATE _____     SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

EXHIBIT 14

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KIMBERLY E. SMITH,

    Plaintiff,

v.

DANIELLE ROBERTSON,

    Defendant.

Case No. 24-10009
Honorable Laurie J. Michelson

---

## ORDER DISMISSING COMPLAINT [1]

---

On January 3, 2024, Kimberly Smith filed suit against Danielle Robertson using this Court's general civil complaint form. (ECF No. 1.) Smith alleged that Robertson was reusing her YouTube videos, "perpetuat[ing] a lie that [Smith is] a felon while on YouTube Live," and had "called various law enforcement agencies" on her. (*Id.* at PageID.5.) But Smith's answers to the questions on the form complaint left the Court uncertain that it has subject matter jurisdiction over Smith's claims.

So on January 16, 2024, the Court issued an order instructing Smith to show cause, by January 23, 2024, that the Court has diversity jurisdiction and/or federal question jurisdiction over her case. (ECF No. 6.) Recognizing that Smith is a pro se litigant, the Court outlined what a plaintiff must show to establish subject matter jurisdiction and described why Smith's complaint was insufficient. The Court also detailed the specific information that Smith needed to provide by January 23, 2024. Finally, the Court warned Smith that her failure to timely or adequately respond "will result in this case being dismissed."

That deadline has passed, and the Court has yet to receive a response from Smith. In turn, Smith has failed to show the Court that it has subject matter jurisdiction over Smith's claims.

Accordingly, for the foregoing reasons and for the reasons stated in ECF No. 6, Smith's case is DISMISSED.

SO ORDERED.

Dated: February 7, 2024

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE

2

Case 2:24-cv-12213-LJM-KGA   ECF No. 75, PageID.846   Filed 04/24/26   Page 64 of 78

 **Gmail**

EXHIBIT 17

Lori Davis <danimontana2022@gmail.com>

---

## Soul Cycle HR

1 message

---

**DANIELLE ROBERTSON** <danimontana2022@gmail.com>      Tue, Dec 19, 2023 at 3:57 AM
To: "celeste.thompson@soul-cycle.com" <celeste.thompson@soul-cycle.com>

Dear Soul Cycle Management,

I am writing to address a matter of utmost importance concerning one of your employees, who unfortunately has been mistakenly identified as myself due to our shared name. Recently, a misunderstanding has arisen, predominantly fueled by some YouTubers, leading to an erroneous assumption that I am the same individual as your employee.

I wish to categorically state that I am a completely separate individual and any association between me and your employee is purely coincidental and based on our common name. The implications of this mistake have escalated, resulting in unwarranted attention and harassment towards her, including the creation of inappropriate videos. This is deeply concerning, and I empathize with the distress it may have caused her.

Previously, I attempted to reach out to her personally to resolve this misunderstanding, but unfortunately, I did not receive a response. Through this letter, I want to formally clarify that any allegations or claims associating me with your employee are entirely baseless and untrue.

It is not my intention for her to suffer any professional or personal consequences due to these false accusations and misidentification. I value privacy and respect, and it pains me to see someone else being troubled due to a case of mistaken identity.

I kindly request that you disregard any previous communication that may have implicated your employee as being me. I am taking steps to rectify this situation from my end, but your understanding and cooperation in ensuring that she does not face any negative repercussions at her workplace would be greatly appreciated.

Thank you for your attention to this matter. I hope for a swift resolution and the restoration of peace and privacy for your employee.

Sincerely,

 Gmail

**Lori Davis <danimontana2022@gmail.com>**



9 messages

---

**Kimberly Smith** <kimmieluvme729@icloud.com>　　　　　　　Tue, Feb 27, 2024 at 11:53 PM
To: Danielle Robertson <danimontana2022@gmail.com>

Sent from my iPhone

　**image0.jpeg**
612K

---

**DANIELLE ROBERTSON** <danimontana2022@gmail.com>　　　　Wed, Feb 28, 2024 at 12:03 AM
To: Kimberly Smith <kimmieluvme729@icloud.com>

Is this for Rah?

On Tue, Feb 27, 2024 at 11:54 PM Kimberly Smith <kimmieluvme729@icloud.com> wrote:

　Sent from my iPhone

---

**Kimberly Smith** <kimmieluvme729@icloud.com>　　　　　　　Wed, Feb 28, 2024 at 12:47 AM
To: DANIELLE ROBERTSON <danimontana2022@gmail.com>

No Jag
Sent from my iPhone

　　　On Feb 28, 2024, at 12:03 AM, DANIELLE ROBERTSON <danimontana2022@gmail.com> wrote:

　　　[Quoted text hidden]

---

**Kimberly Smith** <kimmieluvme729@icloud.com>　　　　　　　Wed, Feb 28, 2024 at 12:47 AM
To: DANIELLE ROBERTSON <danimontana2022@gmail.com>

Raheem number didn't work when I tried to call him

Sent from my iPhone

　　　On Feb 28, 2024, at 12:03 AM, DANIELLE ROBERTSON <danimontana2022@gmail.com> wrote:

---

**DANIELLE ROBERTSON** <danimontana2022@gmail.com>                    Wed, Feb 28, 2024 at 7:48 AM
To: Kimberly Smith <kimmieluvme729@icloud.com>

Okay, and thanks.

[Quoted text hidden]

---

**Kimberly Smith** <kimmieluvme729@icloud.com>                    Wed, Feb 28, 2024 at 1:53 PM
To: DANIELLE ROBERTSON <danimontana2022@gmail.com>

No Problem
Sent from my iPhone

> On Feb 28, 2024, at 7:49 AM, DANIELLE ROBERTSON <danimontana2022@gmail.com> wrote:

[Quoted text hidden]

---

**DANIELLE ROBERTSON** <danimontana2022@gmail.com>                    Sat, Mar 9, 2024 at 4:02 AM
To: Kimberly Smith <kimmieluvme729@icloud.com>

I like you, Kimmie, and I see a lot of potential in your platform. However, I'm going to be honest about the feedback I'm getting. People are upset that you have not publicly admitted to false doxing, and you haven't contacted the wrong Dani's job to state that they should disregard your previous email. So, it appears that you STILL believe that you're right when you're wrong.

Also, you haven't apologized to others like Pam, who you attacked first. So, Pam had every right to react. I think the issue is that you don't like to be wrong or corrected; however, online, it's best to admit when you're wrong and retract and take full accountability for things. If you don't then people will think that you're no different from other people who don't take full accountability and get angry when called out. I can see that you're trying to move on, but the proper way to move on is to apologize to all the people you attacked while with Jag and take full accountability. Otherwise, you'll be viewed as another TJ, etc.

[Quoted text hidden]

---

**Kimberly Smith** <kimmieluvme729@icloud.com>                    Sat, Mar 9, 2024 at 1:58 PM
To: DANIELLE ROBERTSON <danimontana2022@gmail.com>

I actually did apologize several times for things I did, and said about CC's on YT. Now I won't grovel. For those that can't, or refuse to get pass it  that's on them. Either way I'm moving on. If I'm constantly looking backwards, I can't progress forward 💯 why retract something that's not true? Why would I email that young lady's job again  if they haven't reached out to me? I didn't reach out to (soulcyle) Dani personally, so me contacting or clearing it up with her job would be weird. Fuck Pam, she's not important in my life IJS
Sent from my iPhone

> On Mar 9, 2024, at 4:02 AM, DANIELLE ROBERTSON <danimontana2022@gmail.com> wrote:

[Quoted text hidden]

---

**Kimberly Smith** <kimmieluvme729@icloud.com>                    Sat, Mar 9, 2024 at 1:58 PM

Gmail

To: DANIELLE ROBERTSON <danimontana2022@gmail.com>

And for the record I always liked you 💯
Sent from my iPhone

On Mar 9, 2024, at 4:02 AM, DANIELLE ROBERTSON <danimontana2022@gmail.com> wrote:

[Quoted text hidden]

 Gmail

**Lori Davis <danimontana2022@gmail.com>**

## Slingshot
2 messages

**Kimberly Smith** <kimmieluvme729@icloud.com>                    Fri, Mar 29, 2024 at 10:11 PM
To: danimontana2022@gmail.com

    That is John's red slingshot
    Sent from my iPhone

**DANIELLE ROBERTSON** <danimontana2022@gmail.com>              Sat, Mar 30, 2024 at 4:30 AM
To: Kimberly Smith <kimmieluvme729@icloud.com>

    Thanks
    [Quoted text hidden]

 Gmail

Lori Davis <danimontana2022@gmail.com>

## Kah's wig pic

**Kimberly Smith** <kimmieluvme729@icloud.com>
To: DANIELLE ROBERTSON <danimontana2022@gmail.com>

Thu, May 9, 2024 at 5:26 PM

Could you send me that pic of Kah with the wig for my thumbnail? Thanks in advance
Sent from my iPhone

4/18/26, 5:43 AM
Case 2:24-cv-12213-LJM-KGA   ECF No. 75, PageID.852   Filed 04/24/26   Page 70 of 78
Gmail - Kah's wig pic

 Gmail

Lori Davis <danimontana2022@gmail.com>

## Kah's wig pic

**Kimberly Smith** <kimmieluvme729@icloud.com>                    Fri, May 10, 2024 at 8:54 PM
To: DANIELLE ROBERTSON <danimontana2022@gmail.com>

❤️ 🙏 thank you
Sent from my iPhone

> On May 10, 2024, at 8:13 PM, DANIELLE ROBERTSON <danimontana2022@gmail.com> wrote:
>
>
>
> I can't remember a picture like that. Someone must have edited a wig on his head or something. Dk but here are the pictures that I have.
> <12491066_109572306088428_1596207604_n.mp4>
> <OUTSIDE.jpg>
> <13087499_1619405418385666_5642171712833454501_n (1) (2).jpg>
> <13087499_1619405418385666_5642171712833454501_n (1) (1).jpg>
> <184033934_2808917572755619_7500981266920761440_n (1).jpg>
> <16836083_178794442618188_5932319730053002257_o.jpg>
> <RTF (2).jpg>
> <17353640_10155036492720561_8221324603320657328_n.jpg>
> <13466413_1650398705286337_587817775320144764_n (1).jpg>
> <13087499_1619405418385666_5642171712833454501_n (1).jpg>
> <13331076_136631090078760_1003677888207781084_n.jpg>
> <184033934_2808917572755619_7500981266920761440_n.jpg>
> <14591659_187395675002301_5412768940939729523_n.jpg>
> <16388442_1883259321917084_7580189357412193372_n.jpg>
> <326273397_641571804325527_7488675679467897558_n.jpg>
> <14542570_1823680247874992_1469103327181825303_o.jpg>
> <328117921_733787151439275_8012589204132606617_n.jpg>
> <271466331_5001539936563078_8800306967146655567_n.jpg>
> <13095832_1619405498385658_8191925523115735851_n.jpg>
> <12986955_1612802642379277_3668624286536797022_n.jpg>
> <15622713_1762462804079926_8367265439597752235_n.jpg>
> <13087499_1619405418385666_5642171712833454501_n.jpg>
> <13466413_1650398705286337_587817775320144764_n.jpg>
> <13962533_1679828235676717_1157181301261915338_n.jpg>
> <19748748_1962128650696817_710706528176613127_n.jpg>
> <13482938_1184531604930616_7623243857534760486_o.jpg>
> <368481346_3547660138847763_7136908488732585194_n.jpg>
> <34880168_116039405959191_3029552527667363840_n.jpg>
> <36533486_136140703949061_8858174983470317568_n.jpg>
> <49779907_244505069779290_3750506867550322688_n.jpg>
> <48275110_228194014743729_6548516329605824512_n.jpg>
> <34985014_116039199292545_1502163566235484160_n.jpg>
> <36527014_136140513949080_859867412030291968_n.jpg>
> <MLL.jpg>
> <LAST ONE.jpg>
> <OUTSIDE (1).jpg>

 Gmail

**Lori Davis <danimontana2022@gmail.com>**

## Jag info
1 message

**Kimberly Smith** <kimmieluvme729@icloud.com>                                           Thu, Jun 6, 2024 at 1:59 PM
To: DANIELLE ROBERTSON <danimontana2022@gmail.com>

Could you please let me know where Jag is being held so I can get her held over for a 5150
Sent from my iPhone

 **Gmail**

Lori Davis <danimontana2022@gmail.com>

## 911
4 messages

---

**Kimberly Smith** <kimmieluvme729@icloud.com>                          Thu, Jun 6, 2024 at 2:00 PM
To: DANIELLE ROBERTSON <danimontana2022@gmail.com>

I need it quick before they let her go
Sent from my iPhone

---

**DANIELLE ROBERTSON** <danimontana2022@gmail.com>                     Thu, Jun 6, 2024 at 3:20 PM
To: Kimberly Smith <kimmieluvme729@icloud.com>

Dallas county jail
[Quoted text hidden]

---

**DANIELLE ROBERTSON** <danimontana2022@gmail.com>                     Fri, Jun 14, 2024 at 12:16 PM
To: Kimberly Smith <kimmieluvme729@icloud.com>

Can I use your interview with BB films? If so, 'll send a cash app.
[Quoted text hidden]

---

**Kimberly Smith** <kimmieluvme729@icloud.com>                          Fri, Jun 14, 2024 at 6:36 PM
To: DANIELLE ROBERTSON <danimontana2022@gmail.com>

Yes
Sent from my iPhone

> On Jun 14, 2024, at 12:16 PM, DANIELLE ROBERTSON <danimontana2022@gmail.com> wrote:


[Quoted text hidden]

 Gmail

**Lori Davis <danimontana2022@gmail.com>**

---

## Wrong person
1 message

---

**DANIELLE ROBERTSON** <danimontana2022@gmail.com>                    Wed, Jun 19, 2024 at 5:47 PM
To: Kimberly Smith <kimmieluvme729@icloud.com>

Just letting you know that isn't the right person that RR dated.

## INCIDENT/INVESTIGATION
### Internal Copy

| | |
|---|---|
| **Agency Name** | *Detroit Police Department* |
| **ORI** | *MI 8234900* |

**Case#** *230530-0223*

**Date / Time Reported** *05/30/2023  14:44  Tue*

**Last Known Secure** *05/30/2023  14:34  Tue*

**At Found** *05/30/2023  14:34  Tue*

| Location of Incident | Premise Type | Zone/SCA |
|---|---|---|
| *13750 Thornton St, Detroit MI 48227-* | *Highway/road/alley* | *204* |

**INCIDENT DATA**

| #1 | Crime Incident(s) (Com) | Weapon / Tools | Activity |
|---|---|---|---|
| | *Aggravated / Felonious Assault 13002* | *Handgun* | *N* |

| Entry | Exit | Security |
|---|---|---|
| | | |

| #2 | Crime Incident (Com) | Weapon / Tools | Activity |
|---|---|---|---|
| | *Warrant Arrest Civil 99021* | | |

| Entry | Exit | Security |
|---|---|---|
| | | |

| #3 | Crime Incident ( ) | Weapon / Tools | Activity |
|---|---|---|---|
| | | | |

| Entry | Exit | Security |
|---|---|---|
| | | |

**MO**

**VICTIM**

| # of Victims | 1 | Type: INDIVIDUAL/ NOT LAW | Injury: None/none Apparent | Domestic: NO |
|---|---|---|---|---|

| | Victim/Business Name (Last, First, Middle) | Victim of Crime # | DOB | Race | Sex | Relationship To Offender | Resident Status | Military Branch/Status |
|---|---|---|---|---|---|---|---|---|
| **V1** | *RHODMAN, MYA MYKEA* | *1,2* | Age *23* | *B* | *F* | *122* | *Resident* | |

| Home Address | Home Phone |
|---|---|
| *Detroit, MI 48224-* | |

| Employer Name/Address | Business Phone | Mobile Phone |
|---|---|---|
| | | |

| VYR | Make | Model | Style | Color | Lic/Lis | VIN |
|---|---|---|---|---|---|---|
| | | | | | | |

**OTHERS INVOLVED**

CODES:  V- Victim (Denote V2, V3)   O = Owner (if other than victim)   R = Reporting Person (if other than victim)

| Type: | | | | Injury: | | | | |
|---|---|---|---|---|---|---|---|---|
| Code | Name (Last, First, Middle) | Victim of Crime # | DOB / Age | Race | Sex | Relationship To Offender | Resident Status | Military Branch/Status |
| | | | | | | | | |

| Home Address | Home Phone |
|---|---|
| | |

| Employer Name/Address | Business Phone | Mobile Phone |
|---|---|---|
| | | |

| Type: | | | | Injury: | | | | |
|---|---|---|---|---|---|---|---|---|
| Code | Name (Last, First, Middle) | Victim of Crime # | DOB / Age | Race | Sex | Relationship To Offender | Resident Status | Military Branch/Status |
| | | | | | | | | |

| Home Address | Home Phone |
|---|---|
| | |

| Employer Name/Address | Business Phone | Mobile Phone |
|---|---|---|
| | | |

**PROPERTY**

1 = None   2 = Burned   3 = Counterfeit / Forged   4 = Damaged / Vandalized   5 = Recovered   6 = Seized   7 = Stolen   8 = Unknown
("OJ" = Recovered for Other Jurisdiction)

| VI # | Code | Status Frm/To | Value | OJ | QTY | Property Description | Make/Model | Serial Number |
|---|---|---|---|---|---|---|---|---|
| *1* | *13* | *EVID* | *$600.00* | | *1* | *FIREARMS* | | |

| Officer/ID# | *Hampton, Lorenzo E   (WES, 2ND)* |
|---|---|
| Invest ID# | *Belli, Brian E   (WES, 2PDU)* |

| Supervisor | *Schulz, Carrie L   (WES, 2ND)* |
|---|---|

| Status | Complainant Signature | Case Status *Cleared By Arrest* *06/05/2023* | Case Disposition: | Page 1 |
|---|---|---|---|---|

# INCIDENT/INVESTIGATION REPORT

*Detroit Police Department*

Case # *230530-0223*

| Status Codes | 1 = None | 2 = Burned | 3 = Counterfeit / Forged | 4 = Damaged / Vandalized | 5 = Recovered | 6 = Seized | 7 = Stolen | 8 = Unknown |
|---|---|---|---|---|---|---|---|---|

| | IBR | Status | Quantity | Type Measure | Suspected Type | |
|---|---|---|---|---|---|---|
| D R U G S | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

Assisting Officers

Suspect Hate / Bias Motivated:   *NONE*

# INCIDENT/INVESTIGATION REPORT

Narr. (cont.)  OCA: 230530-0223          *Detroit Police Department*

N A R R A T I V E
The victim stated that at the date, time and location listed on the report they were the victim of an aggravated assault.

## Incident Report Suspect List

*Detroit Police Department*

OCA: *230530-0223*

| 1 | Name (Last, First, Middle) | | | | | | Also Known As | | | | Home Address | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | *SMITH, KIMBERLY ELANE* | | | | | | *JACKSON,  KIMBERLY ELANE; SMITH,  KIMBERLY ELAINE* | | | | ████████ *DETROIT, MI 48227* ████████ | |

| Business Address | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|

| DOB | Age | Race | Sex | Eth | Hgt | Wgt | Hair | Eye | Skin | Driver's License / State. |
|---|---|---|---|---|---|---|---|---|---|---|
| | *50* | *B* | *F* | | *506* | *165* | *BRO* | *BRO* | *MED* | ████████ |

Scars, Marks, Tattoos, or other distinguishing features

| *Reported Suspect Detail* | Suspect Age | | Race | Sex | Eth | Height | | Weight | | SSN | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Weapon, Type | Feature | | Make | | Model | | Color | | Caliber | Dir of Travel | |
| | | | | | | | | | | Mode of Travel | |
| VehYr/Make/Model | | | Drs | Style | | Color | | Lic/St | | VIN | |

Notes

Physical Char

# Incident Report Related Property List

*Detroit Police Department*

OCA: *230530-0223*

| 1 | Property Description<br>**FIREARMS** | | | Make | | Model | | | Caliber |
|---|---|---|---|---|---|---|---|---|---|
| | Color | Serial No. | | Value<br>**$600.00** | Qty<br>**1.000** | | Unit | Jurisdiction<br>**Locally** | |
| | Status<br>**Evidence** | Date<br>**05/30/2023** | NIC #  | State # | | Local #<br>████ | | OAN | |
| | Name (Last, First, Middle)<br>**Smith, Kimberly Elane** | | | | DOB<br>████ | | Age<br>**50** | Race<br>**B** | Sex<br>**F** |

<u>Notes</u>

# REPORTING OFFICER NARRATIVE

| | | OCA |
|---|---|---|
| *Detroit Police Department* | | *230530-0223* |

| Victim | Offense | Date / Time Reported |
|---|---|---|
| *RHODMAN, MYA MYKEA* | *AGGRAVATED / FELONIOUS ASSAULT* | *Tue 05/30/2023 14:44* |

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

[05/30/2023 14:43, HAMPTONL█████ 27724]

Scout 2-10  Platoon 2  Shift: 7am-3pm

Officers:

PO Hampton, Lorenzo Badge# 1111

PO Dorsette, Bernard Badge# 636
******* NO FORCE USED*******

My partner and I was dispatched to ████████████████ for a shotspotter police run, upon our arrival to the location my partner and I was approached by Mya Rhodman B/F who stated her neighbor Kimberly Smith B/F across the street occupying ████████████████ came outside of her residence and got into a verbal altercation with Ms. Rhodman about being at the location.

Ms. Rhodman stated Ms. Smith came to the front door of the location pushing Ms. Rhodman away from the house telling her, " She does not belong here." after Ms. Smith pushed Ms. Rhodman she stated Ms. Smith was armed with her revolver  waved it at Ms. Rhodman before she discharged her firearm in the sky and returned to her location.

My partner and I made contact with Ms. Smith at her address and asked if she had a firearm she admitted to owning a pistol and it was a revolver, Ms. Smith was placed under arrest for felonious assault and I placed her in handcuffs with no forced used. Ms. Smith was transported to the Detroit Detention Center successfully, during the transport Ms. Smith admitted to firing her gun into the ground after previously stating she did not fire her firearm.

---