UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN

SOUTHERN DIVISION

| | |
|---|---|
| KIMBERLY SMITH., | Case No.24-cv-12213 |
| Plaintiff, | Honorable Laurie J. Michelson |
| vs. | Magistrate Kimberly G. Altman |
| DANIELLE ROBERTSON., | |
| Defendant, | |

## DEFENDANT'S MOTION TO ALTER OR AMEND JUDGMENT PURSUANT TO FED. R. CIV. P. 59(e)

Defendant Danielle Robertson, appearing specially and preserving all defenses, respectfully

moves this Honorable Court, pursuant to Federal Rule of Civil Procedure 59(e), to alter or amend

the Judgment entered April 15, 2026.

Pursuant to Local Rule 7.1(a), Defendant sought concurrence from Plaintiff on April 25, 2026.

Plaintiff responded: "Plaintiff does not concur in the relief requested."

## I. INTRODUCTION

With full respect for the Court's analysis and rulings, this motion is brought under Rule 59(e) to

address a narrow but material issue: whether the judgment, as entered, can be reconciled with the

Court's stated legal framework and the evidentiary record.

This motion does not relitigate prior rulings or introduce new arguments or evidence. It identifies

a structural inconsistency that became apparent upon entry of judgment—specifically, the

relationship between the Court's express limitation of the claim and the damages awarded.

1

The Court limited the case to a single communication (ECF No. 64, PageID.629–631), yet the record reflects unresolved issues regarding causation, damages, and the sufficiency of the claim (ECF No. 75, PageID.783). In a default posture, where the Court relies on untested representations, these issues bear directly on whether the judgment rests on a complete and reliable record.

This inconsistency arises from the Court's own findings when applied to the record. It becomes apparent when the limitation to a single communication is considered alongside a damages award that appears to rely on broader, preexisting, or third-party conduct.

Rule 59(e) permits amendment to correct clear error or prevent manifest injustice. In that context, the issue presented is not whether Plaintiff described harm in general terms, but whether the damages awarded are supported by well-pleaded allegations and non-speculative evidence causally tied to the specific conduct identified by the Court. Where the record reflects broader or independent sources of harm, the resulting judgment must remain confined to those limits to ensure that it rests on a legally sufficient and reliable foundation. This motion addresses that limited issue.

## II. STANDARD

Rule 59(e) permits alteration or amendment of a judgment to correct clear error or prevent manifest injustice. *GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804 (6th Cir. 1999). Relief is limited and not a vehicle to relitigate issues, but applies where the record does not support the outcome under the governing legal standards. See also *Howard v. United States*, 533 F.3d 472, 475 (6th Cir. 2008).

## III. Rule 59(e) Requires Amendment Where the Court's Findings Cannot Be Reconciled with the Record

In a default posture, only well-pleaded factual allegations are deemed admitted. *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105 (6th Cir. 1995). This limitation governs both liability and damages, requiring that any award be confined to the Complaint and supported by non-speculative proof tied to the conduct identified by the Court. This motion does not present new arguments but addresses a structural defect apparent upon entry of judgment: the disconnect between the Court's limitation to a single communication and the damages awarded.

Amendment is appropriate where the Court's findings cannot be reconciled with the record, where a required element is unsupported, or where damages rest on speculation, misattribution, or material outside the pleadings. This includes reliance on matters not pleaded, served, or subject to adversarial testing.

Defendant's prior filings (ECF Nos. 20, 56, 61) challenged the sufficiency of the claims and evidentiary support. This motion does not revisit those arguments, but addresses whether the damages award—given the Court's express limitation—can be sustained where the record shows the alleged harm predates the communication, arises from independent third-party conduct, and was not isolated or quantified as to that communication.

This defect arises only when the Court's limitation, the evidentiary record, and the final award are read together, including material introduced at the hearing that was not pleaded or served.

## V. NOTICE AND OPPORTUNITY TO RESPOND CONFIRM THE PROCEDURAL DEFECT

Defendant's prior filings confirm that the damages theory presented at the hearing was not part of the case as pleaded and was not subject to adversarial testing. Before judgment, Defendant challenged the Complaint through a Rule 12 motion (ECF No. 20) and subsequent filings addressing the evidentiary record (ECF Nos. 56, 61), all directed to the pleaded allegations—

agency-directed communications involving the Detroit Housing Commission. Plaintiff did not plead or serve allegations that the August 2024 communication resulted in: direct phone calls; publication of her personal address; or third-party harassment at her residence or through personal contact information. Because these theories were not pleaded, Defendant had no notice or opportunity to address the source of the alleged harassment, the timeline of events, or the role of independent third parties.

This bears directly on the reliability of the damages determination. The hearing theory relied on allegations that (1) predated the communication; (2) involved independent third parties; and (3) were not part of the Complaint. In a default posture, damages must be confined to well-pleaded allegations. New factual theories introduced at the damages stage—without notice or opportunity to respond—cannot support a judgment. Accordingly, the judgment rests in part on theories that were not pleaded, served, or tested through the adversarial process, warranting amendment under Rule 59(e).

## VI. ARGUMENT

The arguments below address only the damages award and whether it can be sustained under the Court's limitation to a single communication. They do not revisit liability, but whether amendment is warranted under Rule 59(e) where the damages are not causally attributable to that conduct.

### A. The Damages Award Lacks a Non-Speculative Evidentiary Basis

Under Rule 59(e), amendment is warranted where the record negates the existence of compensable damages. See *Vesligaj v. Peterson*, 331 F. App'x 351, 355 (6th Cir. 2009) (damages must be established with reasonable certainty). This is not a matter of valuation, but the absence of a legally sufficient evidentiary basis. The Clerk of Court denied default judgment

4

multiple times because the requested damages "cannot be verified," confirming that the record lacked a non-speculative basis. The final award does not resolve that deficiency.

The Court awarded $10,000 (ECF No. 64, PageID.666), but Plaintiff's sworn testimony repeatedly disclaimed any measurable or provable damages: "I didn't lose anything… I guess — I didn't lose anything." (PageID.633);

"In Claim 2? No… it was no money damages… I didn't… no, your Honor." (PageID.634);

"Nothing that I could prove today… no." (PageID.635);

"I can't prove the damages… monetarily… I can't prove that." (PageID.635–636);

"Basically I'm not able to prove right now… I can't prove any damages." (PageID.636).

These are repeated sworn disclaimers of compensable harm. Plaintiff also confirmed no loss from agency-related actions ("I didn't lose anything as far as the food stamps…," PageID.633) and no out-of-pocket medical expenses ("My insurance covered it…," PageID.637).

Her economic theory was likewise speculative: "That could have been potential investors… I can't put a cap on how much…" (PageID.634).

Where a plaintiff testifies under oath that no damages can be proven, no monetary loss occurred, and no quantifiable harm exists, the record does not support a compensatory award. These are not gaps in proof, but admissions negating the existence of damages, warranting amendment under Rule 59(e).

**B. The Award of Non-Economic Damages Is Inconsistent with the Absence of Actual Malice**

Under Rule 59(e), amendment is warranted where a required legal element is neither pleaded nor supported by the record. See also MCL 600.2911(7) (limiting recovery to economic damages absent actual malice). The Court recognized that non-economic damages require actual malice

5

and found that such malice was not adequately pleaded in the Complaint. (ECF No. 64, PageID.620, 624). The Court therefore limited the viable theory to negligence, which supports only economic damages. (Id., PageID.624). The Court nevertheless awarded $10,000 in non-economic damages for injury to feelings and reputation, which requires a finding of actual malice. In assessing this element, the Court relied on Plaintiff's Motion for Default Judgment (ECF No. 40). (ECF No. 64, PageID.619–620). This reliance is inconsistent with the Court's own limitation that default judgment is confined to the Complaint—"only dealing with the complaint… very focused… very narrow" (PageID.623)—and that damages must be based on "what is alleged in this particular complaint." (PageID.631).

A motion for default judgment is not a pleading and cannot supply a missing element. Nor may such an element be inferred from materials outside the pleadings where the Complaint does not allege the required facts. Conclusory assertions in ECF No. 40—such as an "absence of any verified factual basis" (ECF No. 40, PageID.296)—do not establish knowledge of falsity or reckless disregard.

Because actual malice was not pleaded and cannot be supplied through post-complaint filings, reliance on ECF No. 40 constitutes legal error. In a default posture, only well-pleaded allegations are deemed admitted. Accordingly, the award of non-economic damages rests on an element neither pleaded nor established, creating a direct inconsistency between the governing standard and the award. This inconsistency, and the reliance on post-complaint materials to supply an unpleaded element, warrants amendment under Rule 59(e). See also Fed. R. Civ. P. 54(c).

**C. The Damages Award Does Not Reflect the Limited Scope of the Claim Identified by the Court**

The Court expressly limited the case to a single communication, stating: "That's the only claim right now for which I can award you damages" and "[t]hat's all that I can award money damages on." (ECF No. 64, PageID.629–631).

Plaintiff's testimony, however, referenced broader events, including interactions with other agencies and conduct involving third parties, without isolating the effect of that communication. Where a claim is narrowed, damages must be tied to the specific conduct identified by the Court. The record does not establish that the damages awarded were based solely on that communication, creating a disconnect between the Court's limitation and the award. Amendment under Rule 59(e) is therefore warranted to align the judgment with the Court's stated limitation.

## D. Pleading Scope, Damages, and Improper Conflation

Plaintiff's damages presentation at the hearing impermissibly expanded beyond the scope of the Complaint and relied on theories not tied to the single communication identified by the Court. In a default posture, only well-pleaded factual allegations are deemed admitted; new theories, expanded narratives, or post-complaint assertions are not.

As the Court repeatedly emphasized: "A default judgment… is based on what is in the complaint." (ECF No. 64, PageID.622) "It's very focused. It's very narrow." (PageID.623) "That's all that I can award money damages on." (PageID.631)

The Court further limited damages to: "the letter… to the Detroit Housing Commission" (PageID.630)

## 1. Complaint Limited to Agency Communications

The Complaint alleges agency-directed communications, not personal harassment. Plaintiff initially described only administrative inconvenience: "I had the Department of Agriculture reaching out… it was just an inconvenience…" (PageID.632–633)

She then admitted: "I didn't lose anything…" (PageID.633) "No… no money damages."

(PageID.633) "I can't prove any damages… monetarily." (PageID.635)

## 2. Hearing Expansion Beyond the Complaint

At the hearing, Plaintiff introduced new theories: personal phone harassment; alleged address

exposure; and third-party threats.

"People was calling my phone… waking me up…" (PageID.640–641)

"It all is, your Honor. It all is." (PageID.647), This attribution is not supported by the record as

cited above.

## 3. The Housing Commission Letter Cannot Support These Harms

The August 2024 Housing Commission letter—the sole communication identified by the

Court—does not contain Plaintiff's personal phone number or residential address. The only

address referenced is that of the Detroit Housing Commission compliance office. (ECF No. 1,

PageID.14).

Accordingly, the letter could not have caused:

direct phone calls to Plaintiff; exposure of Plaintiff's residential address; and third-party contact

based on personal identifying information.

Any alleged phone harassment or contact necessarily arises from sources outside the pleaded

communication, breaking causation as a matter of law.

## 4. Improper Conflation of Theories

Plaintiff combined: agency communications, public records, and third-party conduct.

These are distinct categories and were not pleaded as a single causal chain.

## 5. Resulting Legal Defect

8

Because damages must be tied to the pleaded communication and Plaintiff introduced unpled harms without establishing causation, the damages award lacks a legally sufficient evidentiary basis. A damages award untethered to the claim identified by the Court constitutes clear error under Rule 59(e).

Under Rule 59(e), a damages award based on unpleaded and untested theories cannot be sustained.

**E. Timeline Misattribution Breaks Causation**

Respectfully, where the record affirmatively contradicts causation, Rule 59(e) requires amendment. These inconsistencies are not raised to challenge liability, but to demonstrate that the damages awarded cannot be causally attributed to Defendant as required under the Court's own limitation.

Plaintiff further acknowledged that individuals engaging in alleged harassment did not attribute their conduct to Defendant, stating that such individuals "won't say that directly." (ECF No. 64, PageID.3979). This absence of attribution suggests that causation is not established on this record.

The record demonstrates that the alleged harms predate the August 2024 communication. Plaintiff's own statements—including her January 24, 2024 interview with TJ (ECF No. 75, Exhibit AB)—attribute disclosure of her phone number and resulting exposure to prior third-party conduct:

"Bitch, you doxed me."

"Well, Kimmy, I doxed your phone number."

"Yes, you did… You're the one who [brought] me onto this internet."

"I had that phone number for over 20 years… If you Google that phone number, it'll tell you exactly where I live."

"if it wasn't for you I wouldn't be in these YouTube streets" (ECF No. 75, Exhibit AB, 23:37–23:49).

Separate statements confirm earlier 2023 events:

"I was doxxed… I had that number for over 20 years" (ECF No. 75, Exhibit AB, Clip 3, 7:04–7:22) (September 24, 2023);

references to events occurring "back in 2023" (ECF No. 75, Exhibit AB, 11:53–12:03).

These admissions establish that the alleged harms existed before the communication at issue and were caused by independent actors.

Plaintiff's attempt at the hearing to attribute those same harms to Defendant—"It all is, your Honor. It all is." (PageID.647)—is contradicted by the record.

Additional testimony confirms third-party origin:

"he call me 'Crimmy,' 'Crimmy the Raccoon'" (ECF No. 64, PageID.640);

"he was saying 'Crimmy'… he is calling me a criminal…" (PageID.640).

Plaintiff explained this came from another content creator whose content spread independently.

**Self-Publication and Public Amplification Further Break Causation**

The record reflects that Plaintiff publicly discussed this litigation, displayed filings, and directed viewers to court records, including PACER materials, thereby contributing to the dissemination of the same information she claims caused harm. (ECF No. 75, Exhibit AB). Plaintiff directed third parties to review her case filings, including instructing viewers to access the case through publicly available court records such as PACER. (ECF No. 75, Ex. 10). This is one documented

example within the record. Where a plaintiff independently republishes or amplifies the subject matter, any resulting exposure cannot be causally attributed to Defendant.

**Source-Material Reliability Further Undermines Any Claim of Falsity or New Harm**

The underlying subject matter referenced in the communication is supported by documented records, including a police narrative describing a "felonious assault" incident involving a firearm. Plaintiff's own statements—including references to discharging a firearm "into the ground"—further confirm that the subject matter was derived from existing information rather than newly created by Defendant. Where the underlying facts are drawn from documented or admitted events, the communication does not create a new injury.

**Felon vs. Felonious Arrest Distinction Further Undermines Causation and Falsity**

The record further reflects that the underlying communication referenced a "felonious arrest… involving a gun" (ECF No. 1, PageID.14), not a conviction or adjudication of guilt. This distinction is material to the falsity analysis. To the extent the statement was treated as an assertion of felony conviction, such treatment is not supported by the language of the exhibit itself. The existence of a documented arrest, as reflected in the record, further defeats any claim that the alleged statement created a new reputational harm at the time of the August 2024 communication.

**Prior Lawsuit Confirms Preexisting Harm Narrative**

The record further confirms that Plaintiff's allegations of reputational harm and online exposure predate the August 2024 communication. Plaintiff previously filed a substantially similar action before this Court asserting comparable allegations. See Smith v. Robertson, Case No. 2:24-cv-10009. That prior action was dismissed for failure to establish jurisdiction and legal sufficiency.

Plaintiff later acknowledged that dismissal publicly, stating that she "didn't care about that getting thrown out." (ECF No. 61, PageID.606)

This prior filing establishes that Plaintiff's claimed injuries—including reputational harm and online exposure—were already being asserted before the communication at issue in this case. The existence of a prior lawsuit based on the same underlying narrative defeats any causal link between the August 2024 letter and the damages awarded here.

Where the timeline shows that the alleged injury predates the conduct at issue and is attributable to third parties, causation fails as a matter of law. This is not a dispute over weight of the evidence; it is a circumstance where the record affirmatively contradicts the causal theory on which the damages award depends. The award therefore constitutes clear error under Rule 59(e).

**H. Emotional Distress Damages Are Legally Insufficient**

Under Rule 59(e), damages must be isolated, quantified, and causally tied to the conduct identified by the Court. The emotional distress award is not supported because the record does not isolate, attribute, or quantify distress caused by the single communication identified by the Court, and instead reflects preexisting conditions, third-party conduct, and post hoc assertions. The Court expressly limited recoverable damages to the Complaint:

"It's what are your economic damages from what is alleged in your complaint… not as a result of other things that she has done to you since or before." (ECF No. 64, PageID.625);

"A default judgment… is very focused. It's very narrow… based on what is in your complaint." (ECF No. 64, PageID.623).

The Complaint alleges only that Defendant urged viewers to contact agencies. (ECF No. 1, PageID.4). Plaintiff's emotional-distress testimony, however, relied on different conduct, including direct phone calls, third-party harassment, YouTube conduct, and broader disputes—

matters outside the pleaded claim. Plaintiff's sworn testimony further disclaimed any measurable or provable damages. (ECF No. 64, PageID.633–636). The record also shows that the alleged distress predates the August 2024 communication. Plaintiff acknowledged harassment and third-party conduct occurring in 2023, breaking any causal link between the communication and the claimed harm. The theory of emotional distress also shifted at the hearing. The Complaint does not identify third-party campaigns, phone harassment, or individualized distress tied to a specific act. These theories were introduced at the hearing and fall outside the scope of default.

Post hoc medical references do not establish causation or damages. Plaintiff referenced therapy but identified no out-of-pocket cost and provided no records tying treatment to the housing communication. These references reflect post hoc attribution, not proof.

The timing confirms this. Psychiatric and emotional distress claims were not contemporaneously documented or tied to the August 2024 communication, but instead were raised later in the proceedings, including into 2025, without supporting medical evidence establishing causation or onset. (ECF No. 75, PageID.801–803). Where medical or psychological claims arise only after the fact and lack contemporaneous documentation or a defined causal link, they do not provide a legally sufficient basis for damages.

Platform-related claims likewise do not establish causation. Plaintiff referenced alleged demonetization or loss of monetization, but the record reflects that any platform enforcement occurred well after the August 2024 communication and was attributed to Plaintiff's own content, not Defendant's conduct. The timing is dispositive: enforcement actions in 2025 cannot be attributed to a single communication in August 2024 without evidence of a direct connection. The platform itself attributed enforcement to Plaintiff's conduct, including harassment-related violations, not to any action by Defendant. (ECF No. 61, PageID.604). Where alleged harm

arises from independent platform decisions based on a plaintiff's own content, and occurs long after the conduct at issue, it cannot support damages tied to that conduct.

Accordingly, both the psychiatric assertions and platform-related claims reflect post hoc attribution rather than causation and do not provide a legally sufficient basis for a compensatory award. Plaintiff also failed to comply with the Court's Order by expanding the record beyond the pleaded claim.

The Court's March 17, 2026 Order imposed specific requirements governing the scope and evidentiary basis of Plaintiff's submission. Plaintiff was required to: (1) establish jurisdiction, (2) demonstrate that each element of the claims was supported by the Complaint, and (3) substantiate damages with a clear connection between the amount sought and the injury alleged. Plaintiff's submission did not conform to these requirements.

Instead of limiting her submission to the allegations in the Complaint, Plaintiff expanded the record by introducing new theories, generalized allegations of a "pattern of conduct," and additional materials not tethered to the specific claim identified by the Court. (ECF No. 53). For example, the Proposed Order seeks $50,000 in emotional distress damages based on broad claims of "repeated and public targeting, humiliation, and harassment across online platforms," without identifying a specific act, timeframe, or evidentiary basis tied to the housing communication. This contradicts the Court's directive requiring a clear connection between the damages sought and the injury at issue. Plaintiff also relied on exhibits spanning multiple dates—including 2023 and post-August 2024 content—to construct a narrative of ongoing harm. (ECF No. 53-1). These materials fall outside the limited claim identified by the Court and were not pleaded in the Complaint. Defendant's response (ECF No. 56) addressed the expanded submission presented, not a record confined to the Complaint.

14

By introducing new material, broadening the theory of liability, and failing to tie damages to the specific conduct at issue, Plaintiff's submission did not comply with the Court's Order. The resulting record is procedurally defective and cannot support a damages award.

Post hoc psychiatric assertions are unsupported, preexisting, and legally insufficient to establish causation. Plaintiff's references to psychiatric conditions do not establish compensable emotional distress because they are: (1) unsupported by contemporaneous evidence; (2) preexisting; and (3) not causally attributable to the August 2024 communication. First, the record contains no contemporaneous medical evidence linking any psychiatric condition to the communication at issue. Plaintiff presented no medical records, treatment notes, diagnosis dates, or evidence of out-of-pocket treatment costs. Instead, the record reflects only generalized assertions made during the hearing. (ECF No. 64, PageID.623–625) Second, the record reflects preexisting conditions. Plaintiff's own statements reference disability status and diagnoses, including bipolar disorder and PTSD, prior to the events at issue. (ECF No. 53-1, PageID.464–468; ECF No. 75, PageID.801–803). For example, Plaintiff stated: "I'm bipolar… I'm diagnosed with bipolar, PTSD, all kinds of [__]…" (ECF No. 75, Exhibit AB, 31:04–31:21; ECF No. 20, PageID.151) This admission confirms that the referenced conditions predate the events at issue and are not tied to the August 2024 communication. Where a plaintiff has preexisting conditions, the law requires proof of a distinct, identifiable aggravation caused by the defendant. The record contains no such showing. Third, Plaintiff failed to isolate causation. The Court expressly limited damages to harm caused by the conduct alleged in the Complaint—not events occurring "since or before." (ECF No. 64, PageID.625). Yet Plaintiff relied on a generalized narrative spanning: • 2023 doxxing events; • third-party conduct involving "thousands of people"; and; • ongoing disputes unrelated to the housing communication. (ECF No. 64, PageID.621, 625–627; ECF

15

No. 75, Exhibit AB) Fourth, the timing confirms post hoc attribution. Psychiatric claims were not pleaded, not supported prior to the hearing, and were introduced only after liability was assumed in a default posture. Finally, Plaintiff's sworn testimony disclaimed any measurable or provable damages. (ECF No. 64, PageID.633–636). Accordingly, the record reflects preexisting conditions and generalized distress attributable to multiple independent causes—not harm caused by the conduct at issue. Where emotional distress is not isolated, quantified, and causally tied to the conduct identified by the Court, any resulting award is speculative and not supported under Rule 59(e).

Where a plaintiff's own testimony and the record as a whole fail to isolate, attribute, or quantify distress caused by the specific communication at issue, the resulting award rests on speculation.

**Conclusion:** Because the judgment cannot be reconciled with the Court's findings or the evidentiary record, amendment is required under Rule 59(e). The emotional distress award is untethered to the Complaint, contradicted by the record, and unsupported by any non-speculative basis.

**J. The Privacy/Doxxing Theory Is Factually Contradicted by the Record and Reflects a Misidentification of the Underlying Documents**

Respectfully, to the extent the judgment relied on a disclosure or "doxxing" theory, Rule 59(e) permits amendment to correct a clearly erroneous factual premise. Plaintiff cannot attribute unrelated or earlier third-party conduct to the August 2024 communication to support damages. Rule 59(e) relief is warranted where a damages award rests on a factual error or misreading of the record.

16

Here, the Court's damages determination appears to rely, at least in part, on a theory that Defendant "doxxed" Plaintiff by disclosing private identifying information. The record does not support that conclusion. The Complaint identifies two distinct documents: a municipal property record (Quit Claim Deed) (ECF No. 1, PageID.13) and the August 2024 letter to the Detroit Housing Commission (ECF No. 1, PageID.14), which are materially different and do not support a privacy claim.

1. **The August 2024 Letter Does Not Disclose Private Contact Information:** The letter was directed to the Detroit Housing Commission and does not include a phone number, personal contact details, or Plaintiff's residential address; the only address referenced is that of the Commission. (ECF No. 1, PageID.14; ECF No. 75, PageID.789–790). To the extent it was publicly posted, it was redacted of personal identifying information.

2. **The Property Document Is a Public Record:** The Quit Claim Deed is a public municipal record involving the Detroit Housing Commission and does not constitute private or confidential information. (ECF No. 1, PageID.13).

3. **No Disclosure of Private Identifiers:** The record does not show disclosure of Plaintiff's phone number, private contact details, residential address, or other non-public identifying information.

4. **Conflation of Distinct Materials:** The record reflects a conflation of a public property record and an agency-directed letter; neither establishes "doxxing" or disclosure of private facts.

5. **Material Error:** At the hearing, the Court attributed Plaintiff's fear and "unwanted attention" to the August 2024 posting (ECF No. 64, PageID.620–621). The

communication, however, contains no private contact information, was directed to a governmental entity, and, if publicly posted, was redacted.

Absent disclosure of private identifying information in the communication itself, no privacy-based damages theory is supported by the record. A finding of disclosure cannot rest on inference where the documents do not contain the alleged information. Accordingly, any damages based on a "doxxing" theory rest on a clearly erroneous factual premise and warrant amendment under Rule 59(e).

## K. YouTube/Demonetization Damages Are Not Causally Connected to the August 2024 Letter

Under Rule 59(e), damages based on speculation or misattribution must be set aside. When unpleaded theories are excluded, nothing remains that can be causally attributed, as a matter of record, to the communication identified by the Court.

The record reflects that Plaintiff's platform-related enforcement and demonetization were attributed to Plaintiff's own content, not to Defendant or the August 2024 letter. In ECF No. 56, Defendant identified Plaintiff's public admission that, on November 17, 2025, her YouTube channel had been demonetized as a result of "harassment," and that she had taken corrective action by setting videos to private. (ECF No. 56, PageID.544). Defendant raised the same timing and causation issue in ECF No. 75, noting that enforcement occurred on November 17, 2025— over a year after the August 2024 communication—and was based on Plaintiff's own content. (ECF No. 75, PageID.798).

That timing weighs strongly against causation. A platform action occurring more than one year after the communication identified by the Court cannot be attributed to that communication

18

without non-speculative evidence of a direct causal link. The record instead reflects an independent platform decision based on Plaintiff's own content and conduct.

Accordingly, to the extent the damages award relies on alleged economic, reputational, or emotional harm arising from platform enforcement, suspension, demonetization, or audience response, such harm is attributable to independent platform review and Plaintiff's own content—not to the August 2024 letter.

The record further reflects that enforcement was based on the nature of Plaintiff's own publications. As reflected in ECF No. 56, PageID.544, Plaintiff acknowledged that enforcement was tied to "harassment" and that she modified her content in response. That determination reflects an evaluation of Plaintiff's content under platform policies, independent of any conduct by Defendant.

The same principle applies to any alleged third-party response. To the extent Plaintiff's content involves interaction with other individuals or creators, any resulting responses, engagement, or dispute are attributable to the nature of that content and the platform environment in which it was published. Such reactions constitute independent third-party conduct and cannot be attributed, as a matter of record, to the August 2024 letter.

Maintaining damages on that basis constitutes clear error under Rule 59(e).

**L. Failure to Segregate Preexisting Trauma and Alternative Causes of Emotional Distress**

Where a plaintiff has preexisting conditions or multiple independent sources of harm, recovery is limited to any distinct aggravation caused by the defendant, and the plaintiff bears the burden of segregating those damages. See *Shivers v. Schmiege*, 285 Mich. App. 636 (2009). Here, the record reflects preexisting trauma and third-party conduct, yet no effort was made to isolate emotional distress attributable to the communication identified by the Court; unsegregated

19

damages cannot support a compensatory award. Under Rule 59(e), amendment is warranted where the record does not permit segregation of damages attributable to the conduct at issue. The record demonstrates that Plaintiff attributed a broad range of emotional and reputational harms to the August 2024 communication, including harassment by third parties, platform-related consequences, and ongoing interpersonal disputes. (ECF No. 64, PageID.633–636; PageID.1346; PageID.1406; PageID.1445–1448). Plaintiff also acknowledged preexisting conditions and prior traumatic events, including significant trauma predating the communication. (ECF No. 64, PageID.1654).

Where multiple independent sources of distress exist—including prior trauma, ongoing third-party interactions, and platform-related consequences—damages must be segregated and causally tied to the specific conduct at issue. Here, no such segregation was attempted. Instead, all alleged harms were attributed in a generalized manner to the August 2024 letter, without differentiation, quantification, or evidentiary support. (ECF No. 64, PageID.1658–1660). The Court recognized a broader history between the parties and limited its analysis to the conduct alleged in the Complaint. (ECF No. 64, PageID.1076–1078). The record, however, does not reflect any effort to isolate distress caused by the letter from distress arising from preexisting conditions and independent sources.

Plaintiff attributed a wide range of emotional harms to the communication, including fear, paranoia, sleep disruption, and distress arising from third-party conduct. (ECF No. 64, PageID.633–636; PageID.1443–1448; PageID.1654–1660). Plaintiff also acknowledged a significant preexisting traumatic event—her son having been shot in the head—which contributed to her ongoing anxiety and heightened fear response. (ECF No. 64, PageID.1654).

This distinction is critical. The issue is not whether Plaintiff experienced distress, but whether the August 2024 letter caused the specific harms for which damages were awarded. The record does not establish that link. Instead, Plaintiff attributed generalized fear and paranoia—rooted in prior trauma—to the communication without isolating what, if any, incremental distress was caused by the letter. (ECF No. 64, PageID.1658–1660).

The Court emphasized that its analysis was limited to the conduct alleged in the Complaint, not broader history. (ECF No. 64, PageID.1076–1078). Yet Plaintiff did not distinguish between distress arising from preexisting conditions, third-party conduct, and the alleged effects of the August 2024 communication.

The record also reflects independent sources of exposure and distress. Plaintiff's online presence and audience engagement arose from ongoing public commentary and disputes on YouTube predating the August 2024 communication, including interactions with other creators. (ECF No. 75, Exhibit AB). These preexisting activities provide independent sources of reputational harm. Despite this, the Court did not isolate or segregate distress attributable to preexisting conditions, prior trauma, third-party conduct, or broader disputes. Instead, the award appears to rely on generalized testimony of emotional harm without distinguishing between these sources and the specific impact of the August 2024 communication.

The record contains no evidence of aggravation attributable to the communication. Plaintiff did not present medical testimony linking any worsening condition to the letter, treatment records identifying a change in condition, or any method to isolate distress caused by that single communication. The record reflects only generalized and post hoc assertions of emotional harm. (ECF No. 64, PageID.634–636). Without segregation, the Court could not determine what

21

portion—if any—of Plaintiff's emotional distress was caused by the August 2024 communication. The resulting award rests on an undifferentiated and legally insufficient record. Accordingly, because the record reflects substantial preexisting and independent sources of distress, and no effort was made to isolate harm attributable to the conduct alleged in the Complaint, the emotional distress award rests on a speculative and unsegregated basis. Amendment is warranted under Rule 59(e).

**M. The Record Reflects a Net Beneficial Outcome, Not Compensable Harm**

Respectfully, where the record affirmatively contradicts the existence of harm, Rule 59(e) permits amendment to prevent manifest injustice. The record does not merely fail to show harm—it reflects that the only identified outcome of the housing communication was beneficial to Plaintiff. Plaintiff admitted:

"they owed me money… they owed me so much back money… they offering to sell me the house… they sent me a check" (ECF No. 75, Exhibit AB, Clip 2, 0:30–2:28; ECF No. 75, PageID.793)

and: "it all turned around in my favor" (Id.)

These statements describe the outcome of the same housing matter arising from the August 2024 communication identified by the Court (ECF No. 64, PageID.629–631). Where the only demonstrated outcome of the alleged conduct is financial or practical benefit, the record does not support a compensatory damages award.

This is not a matter of valuation or limited proof; the record affirmatively contradicts the existence of compensable harm. While emotional distress may be alleged, the record must still establish harm caused by the conduct at issue. Here, it does not. Although the Court retains discretion in assessing damages, that discretion must operate within the bounds of the record.

Plaintiff's generalized testimony cannot overcome her specific admissions that the housing matter "turned around in [her] favor" and resulted in financial gain. Accordingly, maintaining a compensatory award on this record results in manifest injustice under Rule 59(e).

**O. Reliability Concerns Further Support Manifest Injustice**

These points are raised solely within the Rule 59(e) framework to assess whether the record provides a legally sufficient basis for the damages awarded. Rule 59(e) permits amendment where a judgment rests on a record whose reliability is materially undermined by undisputed statements and admissions. These points are not offered to challenge credibility in a general sense, but to assess whether the record provides a reliable basis for a damages award in a default posture. These considerations bear directly on whether the record provides a legally sufficient basis for damages, not on generalized character or credibility.

**Fee Waiver, Income Representations, and Financial Assertions Further Undermine Reliability**

The record reflects inconsistencies between Plaintiff's representations regarding financial status and other public statements, including references to monetization, audience engagement, and use of payment platforms such as Cash App. Where a plaintiff asserts inability to prove damages or lack of income while simultaneously referencing revenue streams or financial activity, the reliability of damages-related assertions is further undermined.

The record includes Plaintiff's June 19, 2025 statement:

"I will file criminal charges for harassment… cyberstalking… extortion… blackmail… fraud… cyber crimes… trademark… I will make up some [__]… girl everything." (ECF No. 75, Exhibit AB, Clip 9, 20:53–21:32).

23

This statement raises serious concerns regarding the evidentiary basis of the claims asserted and underscores the need for careful scrutiny of the record relied upon in a default posture.

**FINAL CONCLUSION**

Rule 59(e) requires amendment where a judgment rests on clear error of law, erroneous factual premises, or results in manifest injustice. The dispositive issue is whether the August 2024 communication—standing alone and as pleaded—can support the damages awarded. The record shows that it cannot.

The Court limited the claim to a single communication: the August 2024 letter to a governmental agency. That letter contains no personal phone number, contact information, or private identifiers; the only address is that of the governmental entity. Any reference to an "address" arises from a separate public record—the property deed—which is distinct from the letter. The record thus reflects a conflation of materials, neither of which supports a disclosure-based harm. A communication that does not contain personal identifiers cannot cause their disclosure, nor can a letter directed to a governmental entity generate unsolicited third-party contact. The alleged harms—phone calls, harassment, and exposure of private information—are therefore not traceable to the letter. The Complaint reflects this limitation, alleging at most agency-directed contact. It does not plead direct calls, dissemination of personal information, or third-party harassment. Those theories were introduced at the hearing and fall outside the pleadings; when set aside, no causal basis for damages remains.

The award of non-economic damages independently fails because actual malice was neither pleaded within the four corners of the Complaint nor established by the record. The Court expressly recognized this deficiency and limited the viable theory to negligence (ECF No. 64, PageID.620, 624), yet awarded damages that require actual malice under Michigan law. That

24

element cannot be supplied through post-complaint filings or inference. Nor does the August 2024 letter support such a finding. The communication relies on referenced documentation, including a police report, uses conditional and investigatory language, and contains no statement asserting that Plaintiff is a "felon" or that she was convicted of a crime. Where a required element is absent from both the pleadings and the record, the resulting non-economic damages award constitutes clear error under Rule 59(e).

The record further shows that the alleged harms predate the August 2024 communication, including a prior January 2024 action asserting similar claims, breaking any causal link. Accordingly, the record reflects: (1) a communication incapable of producing the alleged harms; (2) a Complaint that does not plead those harms; and (3) a damages theory based on preexisting conditions, third-party conduct, and post-hearing expansion. The resulting award is untethered to the record and constitutes clear error under Rule 59(e). Amendment is required.

**WHEREFORE**, Defendant respectfully requests that the Court:

(1) Alter or amend the Judgment under Rule 59(e) to vacate the damages award; (2) Alternatively, reduce the award to nominal damages, as the record shows no non-speculative harm attributable to the conduct at issue; (3) Alternatively, limit damages to those supported by the pleadings and record; and (4) Grant such other relief as the Court deems just.

Respectfully Submitted on April 27, 2026

**Danielle Robertson**
4539 N 22ND ST,
Phoenix, AZ 85016-4639
DaniRobertson@proton.me


**CERTIFICATE OF SERVICE:** I hereby certify that on April 27, 2026, a true and correct copy of this Motion was served upon Plaintiff Kimberly Smith via ECF