UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KIMBERLY SMITH.,

        Plaintiff,

vs.

DANIELLE ROBERTSON.,

        Defendant,

Case No.24-cv-12213
Honorable Laurie J. Michelson
Magistrate Kimberly G. Altman

**DEFENDANT'S LIMITED RULE 60(b) MOTION TO VACATE OR REDUCE DAMAGES BASED ON UNPLEADED ACTUAL MALICE, NEWLY DISCOVERED EVIDENCE, HEARING-STAGE SURPRISE, LACK OF NOTICE, AND LACK OF DAMAGES CAUSATION**

## I. INTRODUCTION

Defendant Danielle Robertson respectfully files this limited and non-repetitive motion for relief from the damages portion of the default judgment under Federal Rule of Civil Procedure 60(b)(1), Rule 60(b)(2), Rule 60(b)(3), Rule 60(b)(4), and, alternatively, Rule 60(b)(6). Pursuant to E.D. Mich. LR 7.1(a), Defendant sought Plaintiff's concurrence in the relief requested on May 4, 2026. Plaintiff responded: "I do not concur in the relief requested."

This motion is not a renewed challenge to service, jurisdiction, or liability generally. The Court has already denied Defendant's prior Rule 60(b) and Rule 59(e) motions. See ECF No. 81. This motion instead addresses a narrower issue that the Court's May 1, 2026 order expressly preserves: damages. The Court stated that while Defendant may not challenge well-pleaded liability facts admitted by default, Defendant "may challenge the amount of damages." (ECF No. 81, PageID.897).

1

To the extent Defendant invokes Rule 60(b)(4), she does so only as to the damages award: even assuming the Court had specific personal jurisdiction based on the August 2024 Housing Commission letter, the damages award exceeded the letter-based notice and damages foundation by relying on separate factual allegations and hearing-stage harms not tied to the letter.

This motion does exactly what the Court's May 1 order permits. It challenges the damages award because the specific emotional-distress damages used to support the $10,000 award were not pleaded in ECF No. 1, were introduced for the first time at the April 14, 2026 damages hearing, and are now materially undermined by newly discovered evidence received by Defendant on May 4, 2026.

Defendant also did not sit on her rights. The Clerk entered default on January 23, 2026 (ECF No. 39), Plaintiff moved for default judgment the same day (ECF No. 40), Defendant filed a motion to dismiss on January 27, 2026 (ECF No. 42), and Defendant filed a motion for sanctions on January 29, 2026 (ECF No. 44). Those filings show prompt participation and directly undermine any suggestion that Defendant was absent, inactive, or unwilling to defend.

At the damages hearing, Plaintiff introduced allegations of phone calls, being woken up in the middle of the night, sleep disruption, psychiatric treatment, fear, and third-party harassment. Those specific damages were not pleaded in Claim 2. The Complaint does not allege that Defendant posted Plaintiff's phone number, and the Housing Commission letter attached to ECF No. 1 contains no phone number. (ECF No. 1, PageID.4).

The Court narrowed the actionable damages inquiry to the August 2024 Housing Commission letter, stating that "the essence of that claim is the letter." (ECF No. 64, PageID.630). The Court also stated that it was focused on "what's in ECF Number 1" and that "[t]hat's all that I can

2

award money damages on." (ECF No. 64, PageID.631). Thus, damages must be tied to the well-pleaded facts in ECF No. 1 and to harm actually caused by that letter.

On May 4, 2026, Defendant received screenshots from Queen Tulsa showing that Plaintiff herself shared TJ's September 23, 2023 public YouTube post in a group chat. The post displayed Plaintiff's full phone number and encouraged people to call her. Defendant redacts the last four digits in Exhibits A and A-1 for privacy and can submit the unredacted version under seal or as the Court directs. See Exhibits A and A-1. Exhibit A-2 shows Plaintiff asking whether anyone had evidence of her number being doxxed, and another participant responded with TJ's post. Queen Tulsa also provided a declaration authenticating the screenshots as true and unaltered copies of the moderator group chat communications. See Exhibit F.

This newly discovered evidence shows that Plaintiff knew on September 23, 2023 that TJ, not Defendant, publicly posted her phone number, almost one year before the August 2024 Housing Commission letter. The Complaint does not allege that Defendant posted Plaintiff's phone number, and the letter contains no phone number. Because the Court limited damages to the letter, damages based on phone calls, phone-number exposure, fear, sleep disruption, and third-party harassment cannot be attributed to Defendant or the narrowed claim.

This motion could not have been brought earlier in this form. Plaintiff's phone-call and third-party harassment damages were not pleaded in the Complaint and were introduced for the first time at the damages hearing. Defendant received the Queen Tulsa screenshots only on May 4, 2026, after judgment and after the Court's May 1, 2026 order. This motion is therefore based on newly discovered evidence and a newly clarified damages-causation issue, not arguments previously rejected by the Court. Defendant respectfully requests that the Court vacate the

damages award, reopen damages, or reduce the award to nominal damages limited to harm pleaded in ECF No. 1 and caused by the redacted Housing Commission letter.

## II. LEGAL STANDARD

Rule 60(b)(1) permits relief for mistake, inadvertence, surprise, or excusable neglect. Rule 60(b)(2) permits relief for newly discovered evidence that could not have been discovered earlier with reasonable diligence. Rule 60(b)(3) permits relief where fraud, misrepresentation, or misconduct prevented the moving party from fully and fairly presenting her case. Rule 60(b)(4) permits relief only in the rare instance where a judgment, or an affected portion of a judgment, is void because it rests on a jurisdictional defect or a due-process violation depriving the party of notice or an opportunity to be heard. United Student Aid Funds, Inc. v. Espinosa, 559 U.S. 260, 271 (2010). Rule 60(b)(6) permits relief for any other reason justifying relief.

This motion is limited to damages. The Court's May 1, 2026 order states that Defendant "may challenge the amount of damages." (ECF No. 81, PageID.897). A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings. Fed. R. Civ. P. 54(c). In a default posture, only well-pleaded allegations are deemed admitted; damages allegations are not deemed true and must be established with reasonable certainty. Antoine v. Atlas Turner, Inc., 66 F.3d 105, 110–11 (6th Cir. 1995); Vesligaj v. Peterson, 331 F. App'x 351, 355 (6th Cir. 2009). Specific personal jurisdiction is claim-linked and must arise from the defendant's own forum-directed conduct. Walden v. Fiore, 571 U.S. 277, 284 (2014).

When evaluating the pleadings, the Court may consider the Complaint and exhibits attached to it because attached exhibits are part of the pleading record. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008); *Williams v. CitiMortgage, Inc.*, 498 F. App'x 532, 536 (6th Cir. 2012). Where a written instrument attached to the Complaint contradicts a conclusory

4

characterization, the exhibit controls. *Williams*, 498 F. App'x at 536–37; *Cates v. Crystal Clear Techs., LLC*, 874 F.3d 530, 536 (6th Cir. 2017). This matters here because Plaintiff's own attached Housing Commission letter and separate mugshot exhibit show what was actually attached, what was visible, and what was not stated.

Under *Williams*, the Court need not accept a characterization that is contradicted by the clear content of the attached exhibit. 498 F. App'x at 536–37. Here, the attached exhibits do not contain the "felony conviction" statement. The Housing Commission letter says "felonious arrest" with a police report, and the separate mugshot exhibit does not separately state "felony conviction," "convicted felon," or "has a felony." Like *Williams*, this issue turns on the actual language and visible content of the attached exhibits, not Plaintiff's broader characterization of what those exhibits supposedly conveyed.

### III. ARGUMENT

### A. Claim 2 Contains Separate Allegations, But the Court Narrowed Damages to the Housing Commission Letter

Claim 2 is not a single factual act. It contains multiple separate allegations: alleged disclosure of Plaintiff's home address and housing information, alleged encouragement of viewers to contact the IRS, Department of Agriculture, Detroit Housing Commission, and Inspector General, alleged accusation that Plaintiff had a felony by posting mugshots online, alleged statements about Plaintiff's criminal record, and alleged traffic-ticket inquiries. (ECF No. 1, PageID.4). Although Plaintiff placed invasion of privacy and defamation under one combined Claim 2 heading, Plaintiff did not plead one single factual event. Plaintiff assigned different conduct to different theories and supported those theories with different exhibits. The alleged invasion-of-privacy theory is tied primarily to alleged disclosure of Plaintiff's home address, housing situation, and property/deed materials. (ECF No. 1, PageID.4; PageID.13). The alleged

5

defamation theory is tied to different statements and different exhibits, including the Housing Commission letter and the separate mugshot/felon allegation. (ECF No. 1, PageID.4; PageID.14–15). Those exhibits are not interchangeable. The deed/property materials, Housing Commission letter, and mugshot materials are separate exhibits reflecting separate alleged postings or conduct, not one unified publication.

This distinction matters because the Court narrowed the actionable damages inquiry to the Housing Commission letter. The Court stated that "the essence of that claim is the letter," and described the damages inquiry as "what are your money damages from this claim, from the fact that she posted these statements about you, that she wrote to the Housing Commission." (ECF No. 64, PageID.630). The Court further stated that other entities were referenced but not pleaded with the same detail, explaining: "I see it with the statement with the Housing Commission." (ECF No. 64, PageID.631). Once the Court narrowed the claim to the letter, damages could not be based on separate deed/property allegations, separate mugshot/felon allegations, phone-number doxxing, or other posts that were not the letter itself. For purposes of this limited damages motion, Defendant accepts the Court's narrowing; if the letter is the essence of the claim, the letter is also the limit of the damages inquiry.

Plaintiff's own Complaint exhibits confirm that Claim 2 is a collection of separate factual allegations, not one merged event. The alleged property/address disclosure appears separately from the Housing Commission letter. The Housing Commission letter appears separately from the mugshot/felon materials. The Court should therefore compare each allegation to the exhibit Plaintiff attached for that allegation, rather than importing facts from one exhibit into another. Plaintiff's later default-judgment materials confirm the same separation, but only for that limited purpose. ECF No. 40 was not shown to have been served, was not an amended complaint, and

6

cannot supply pleading notice, actual malice, or damages allegations missing from ECF No. 1. Defendant cites ECF No. 40 only to show Plaintiff's later separation of the same factual theories into different exhibit categories: property records/deed materials, the Housing Commission letter, government-reporting allegations, and mugshot/felon allegations. Those later exhibit labels confirm separation; they do not amend the Complaint or expand default damages.

| Allegation / theory | Complaint location | Exhibit / PageID | What it shows | What it does not show |
|---|---|---|---|---|
| Address/property invasion of privacy | ECF No. 1, PageID.4 | ECF No. 1, PageID.13 | Property/deed or housing-related records | Not the Housing Commission letter; not the mugshot/felon allegation |
| Agency-reporting / Housing Commission letter | ECF No. 1, PageID.4 | ECF No. 1, PageID.14 | Letter to DHC Compliance Office; agency address; YouTube income/revenue-stream concern; "felonious arrest" with police report | No Plaintiff phone number; no Plaintiff residential address visible in the letter; no "felony conviction" statement |
| Mugshot / alleged "felon" accusation | ECF No. 1, PageID.4 | ECF No. 1, PageID.15 | Mugshot/profile material | Not the Housing Commission letter; no separate statement in the exhibit saying "felony conviction" |
| Phone calls / phone-number doxxing | Not pleaded in ECF No. 1 | New Exhibits A–A-2 | TJ's September 23, 2023 phone-number post, received May 4, 2026 | Not caused by the August 2024 Housing Commission letter |

The publication timeline further confirms that Plaintiff's theories cannot be merged for damages. The redacted Housing Commission letter was allegedly posted on August 6, 2024. The deed/property-record material was allegedly posted separately to YouTube on August 18, 2024. The mugshot/felon theory arose after Plaintiff posted mugshots herself in December 2023 and was already pleaded in Plaintiff's January 3, 2024 lawsuit, where she alleged Defendant "perpetuate[d] a lie that I am a felon while on YouTube live." These are separate alleged

7

publications and separate factual theories, not one August 12, 2024 damages event. Because the Court narrowed the operative claim to the Housing Commission letter and stated that "the essence of that claim is the letter," damages must be tied to that letter, not separate exhibits or later characterizations. (ECF No. 64, PageID.630–631).

The "felon" accusation also predates the August 2024 Housing Commission letter. In Plaintiff's first lawsuit, Case No. 2:24-cv-10009, filed January 3, 2024, Plaintiff alleged that Defendant "perpetuate[d] a lie that I am a felon while on YouTube live." (Case No. 2:24-cv-10009, ECF No. 1, PageID.5). That allegation was framed as a YouTube/live accusation, not as the Housing Commission letter, and it was pleaded without attached exhibits proving a "felony conviction" statement. The Court should therefore not import that preexisting January 2024 "felon" theory into damages from the later redacted Housing Commission letter.

The Housing Commission letter appears separately at ECF No. 1, PageID.14 and should be evaluated exactly as Plaintiff attached it. This is consistent with *Williams*, where the Sixth Circuit affirmed reliance on the clear language of an exhibit attached to the complaint when that exhibit contradicted the plaintiff's characterization of the claim. Plaintiff's exhibit reflects the public-facing version of the letter: a redacted letter directed to the Detroit Housing Commission Compliance Office at 1301 E. Jefferson Ave., Detroit, MI 48207. The letter contains no Plaintiff phone number, does not display Plaintiff's residential address, and does not state that Plaintiff is a convicted felon. Its criminal-record language says "felonious arrest" with an attached police report; it does not say "felony conviction," "convicted felon," or "has a felony." Any damages review tied to the letter should therefore exclude information not visible in the exhibit, should not import content from the deed/property exhibit, and should not merge the mugshot/felon theory into the letter.

8

The alleged address disclosure arises from separate property-record materials at ECF No. 1, PageID.13, and the alleged "felon" statement arises from mugshot-related content, not from the Housing Commission letter. The letter references a "felonious arrest" and identifies the basis for that statement by attaching a police report. The damages analysis should not treat the letter as containing or conveying separate deed/property or mugshot-based accusations when those characterizations do not appear in the exhibit itself.

**The Exhibits Do Not Show a "Felony Conviction" Statement.** The Court's May 1, 2026 order states that Plaintiff alleged sufficient admitted facts that Defendant accused her of "fraud and having a felony conviction." (ECF No. 81, PageID.899). But the Complaint exhibits do not support that characterization.

Claim 2 alleges that Defendant "falsely accused me of having a felony by posting my mugshots online." (ECF No. 1, PageID.4). That allegation is tied to mugshot-related publication, not the Housing Commission letter. But even the separate mugshot exhibit does not show a statement that Plaintiff has a felony conviction. The Housing Commission letter appears separately at ECF No. 1, PageID.14 and states only "felonious arrest" with an attached police report; it does not say "felony conviction," "convicted felon," or "has a felony." The mugshot exhibit at ECF No. 1, PageID.15 likewise appears to show mugshot/profile material, but it does not show a separate statement by Defendant saying "felony conviction," "convicted felon," or "has a felony." Thus, neither the Housing Commission letter nor the separate mugshot exhibit contains the "felony conviction" statement referenced in the Court's May 1 order.

The "felony conviction" premise is not a well-pleaded, exhibit-supported fact. It is an inference drawn from Plaintiff's characterization of separate mugshot allegations and should not be imported into the Housing Commission letter. Nor should damages rest on a blended theory

combining the letter's agency-reporting language with separate mugshot, property-record, phone-call, or third-party harassment allegations not contained in the letter itself. The Court should review the redacted Housing Commission letter as-is, without inferring unseen address information, phone-number publication, or a "felon" accusation that does not appear in the letter. The Housing Commission letter should also be evaluated in its agency-reporting context. The letter was directed to the Detroit Housing Commission Compliance Office at DHC's administrative address, 1301 E. Jefferson Ave., Detroit, MI 48207. DHC administers federally funded housing programs subject to HUD oversight, and DHC's public materials describe the Housing Choice Voucher Program as federally funded and use "program abuse or fraud" language in connection with housing-program integrity. See Exhibit E. Thus, the challenged wording appears in the context of HUD/DHC program integrity reporting, not as a freestanding public accusation divorced from that context.

That context matters to actual malice and damages. MCL 600.2911(3) permits a defendant to show mitigating circumstances, including sources of information and grounds for belief. The letter did not use "fraud" in isolation; it identified Plaintiff's YouTube channel, described alleged revenue streams including Cash App, PayPal, memberships, and other revenue streams, and directed DHC to information it could review for itself. The letter also referenced a "felonious arrest" and identified the basis for that statement by attaching a police report. Defendant raises this context only because it undermines any inference of actual malice from ECF No. 1 and because damages must still be tied to the letter itself, not alleged phone-number doxxing, residential-address disclosure, or mugshot-based "felon" allegations.

**B. Alternatively, the Damages Award Exceeds the Letter-Based Jurisdictional and Notice Anchor**

Defendant does not repeat a general challenge to personal jurisdiction. Instead, Defendant raises a narrower Rule 60(b)(4) issue directed only to the damages award. Even assuming the Court had specific personal jurisdiction based on the August 2024 Housing Commission letter, any damages award had to remain tied to that same forum-directed act.

Specific personal jurisdiction is claim-linked and must arise from the defendant's own forum-directed conduct. Walden, 571 U.S. at 284. Thus, for purposes of this limited damages motion, if the Court identified the Housing Commission letter as the forum-directed conduct supporting the narrowed claim, damages should not be expanded to separate harms untethered to that letter. Here, the Court identified the Housing Commission letter as the actionable communication for the narrowed claim. The Court stated that "the essence of that claim is the letter" and described the damages inquiry as concerning "the fact that she posted these statements about you, that she wrote to the Housing Commission." (ECF No. 64, PageID.630). The Court further stated that while Plaintiff referenced other entities, the Complaint gave sufficient detail only "with the statement with the Housing Commission." (ECF No. 64, PageID.631).

That limitation matters because the damages award incorporated harms from separate factual theories and exhibits. The Housing Commission letter does not contain Plaintiff's phone number, does not disclose Plaintiff's residential address, and does not state that Plaintiff is a convicted felon. Those points come from other theories: the residential-address issue is tied to the deed/property-record exhibit, while the "felon" allegation is tied to the mugshot-related exhibit. Neither is contained in the Housing Commission letter that the Court identified as the essence of the actionable claim.

The same is true even if the Court focuses on the letter's fraud-related language: the letter-based theory may support review of the letter, but it does not authorize damages based on injuries

caused by separate non-letter conduct, third-party doxxing, or hearing-stage harms not pleaded in ECF No. 1.

Because the Court's narrowed claim and forum-contact analysis centered on the Housing Commission letter, damages should not be expanded to separate harms untethered to that letter. To the extent the damages award rests on separate conduct outside the letter, the award exceeds the letter-based notice foundation for default damages under Rule 54(c). To the extent the Court views that expansion as a due-process limitation affecting the damages award, Defendant preserves relief under Rule 60(b)(4).

**C. Non-Economic Damages Exceed the Pleadings Because the Complaint Pleaded, at Most, Negligence**

The Court initially recognized that actual malice was not clearly pleaded in ECF No. 1. The Court stated it saw actual malice in Plaintiff's motion for default judgment but was "struggling to find a reference to that in your complaint." (ECF No. 64, PageID.620). The Court later repeated: "Emotional distress, injury to your reputation, that requires you to plead actual malice, and I don't know if you have adequately pled actual malice." (ECF No. 64, PageID.624). The Court then stated that the Complaint pleaded, at most, negligence, which entitled Plaintiff only to economic damages. (ECF No. 64, PageID.624–625).

Plaintiff filed the Complaint on August 23, 2024. (ECF No. 1). Plaintiff filed ECF No. 40, the Motion for Default Judgment, on January 23, 2026, the same day the Clerk entered default and 518 days after the Complaint. (ECF No. 40, PageID.292; ECF No. 64, PageID.649). ECF No. 40 was not an amended complaint. Plaintiff never amended ECF No. 1 to add actual malice. Although Rule 9(b) permits malice to be alleged generally, the Sixth Circuit still requires facts about the defendant's mental state that make the allegation plausible. Republic Bank & Trust

Co. v. Bear Stearns & Co., 683 F.3d 239, 247 (6th Cir. 2012). A bare label such as "maliciously," without facts showing knowledge of falsity or reckless disregard for truth, is insufficient to plead actual malice for non-economic defamation damages. See Ashcroft v. Iqbal, 556 U.S. 662, 686–87 (2009).

That approach is consistent with MCL 600.2911(7), which limits recovery for negligent publication involving a private individual to economic damages, including attorney fees.

Nor would treating the fraud-related wording as defamation per se cure the damages-notice defect. Even if the Court treats the Housing Commission letter's fraud-related wording as actionable per se, per se status does not supply an unpleaded actual-malice theory. At most, defamation per se may affect whether certain harm is presumed; it does not give Defendant notice that Plaintiff sought non-economic emotional-distress or reputation damages based on actual malice when actual malice was not adequately pleaded in ECF No. 1. The Court recognized this problem at the hearing when it stated that emotional distress and injury to reputation required actual malice and that it was "struggling to find" actual malice in the Complaint. Therefore, even if the fraud wording remains part of the narrowed claim, non-economic damages still exceeded the Complaint because Defendant had notice only of ECF No. 1, not later allegations in ECF No. 40 or hearing testimony.

Defendant also preserves, only as a damages and notice issue, that Plaintiff's status as a YouTube content creator who publicly participates in the online controversy may implicate limited-purpose public-figure principles. Under Michigan law, limited-purpose public-figure status turns on whether a person voluntarily injects herself into a particular public controversy and the nature and extent of her participation. Defendant does not ask the Court to resolve public-figure status in this limited damages motion. Defendant raises it only to show why actual

13

malice was a material notice and damages issue that had to be pleaded in ECF No. 1 before non-economic damages could be awarded.

But Plaintiff admitted she had no economic damages, stating "I didn't lose anything" and "No, it was no money damages." (ECF No. 64, PageID.633–634). The Court therefore could not later rely on ECF No. 40 or hearing testimony to infer actual malice and award non-economic damages.

The presence of agency-reporting language in the Housing Commission letter does not cure that defect. Even if the Court treats the fraud-related wording as actionable or defamatory per se, the word "fraud" does not plead actual malice, does not prove damages, and does not connect the letter to hearing-stage harms such as phone calls, sleep disruption, psychiatric care, third-party harassment, or phone-number exposure. The letter identified the basis for the concern: Plaintiff's public YouTube channel, alleged Cash App, PayPal, memberships, and other revenue streams, and the request for DHC to investigate. That disclosed basis cuts against any inference that actual malice was pleaded from the face of the Complaint.

Nor does the income-reporting portion of the letter show actual malice. Plaintiff's January 3, 2024 lawsuit, Case No. 2:24-cv-10009, shows that the dispute over Plaintiff's YouTube activity and income-related representations predated the August 2024 Housing Commission letter. In that case, Plaintiff alleged she was losing money from her partnership with YouTube and Google while asserting damages connected to Defendant's alleged YouTube activity. (Case No. 2:24-cv-10009, ECF No. 1, PageID.5). The Housing Commission letter was allegedly posted on August 6, 2024, before Plaintiff filed the current lawsuit and ECF No. 2 on August 23, 2024. Defendant therefore does not argue that the letter was based on ECF No. 2. Instead, ECF No. 2 confirms the same type of income discrepancy reflected in Plaintiff's court filings before and after the letter:

Plaintiff represented limited disability-related income while publicly operating a monetized YouTube channel. In this case, Plaintiff filed ECF No. 2 on August 23, 2024, reporting $850 monthly income, stating "I receive Disability from the State of MI," and marking "No" for business, profession, self-employment, gifts, and other income sources. (ECF No. 2, PageID.29). Reporting a perceived discrepancy between disability-only income representations and publicly visible YouTube monetization activity to a housing-program compliance office, while identifying Plaintiff's public YouTube channel and public monetization streams such as Cash App, PayPal, memberships, and other revenue sources for agency review, does not show knowledge of falsity or reckless disregard for truth. At most, it shows a report of a perceived discrepancy for agency investigation.

ECF No. 40 cannot cure the pleading defect. It does not clearly plead actual malice as to the narrowed Housing Commission letter and was not an amended complaint. ECF No. 40 requests $400,000 for emotional distress, reputational harm, invasion of privacy, and copyright infringement. (ECF No. 40, PageID.292). Its exhibit descriptions use phrases such as "absence of any verified factual basis," "bad-faith conduct," and "reckless disregard for the truth," but those phrases appear in post-default exhibit descriptions, not in ECF No. 1. (ECF No. 40, PageID.296–298). They also are not limited to the narrowed Housing Commission letter; ECF No. 40 sweeps in property records, government reporting, mugshots, police body-camera footage, altered images, animal comparisons, and other broad allegations. (ECF No. 40, PageID.295–299). The certificate of service attached to ECF No. 40 fails to identify a completed service method. (ECF No. 40, PageID.301). Thus, ECF No. 40 was not the operative pleading, did not amend ECF No. 1, and could not provide Rule 54(c) notice for non-economic damages.

**Liberal Construction Cannot Supply Unpleaded Actual Malice.** Liberal construction does not cure the pleading defect. The Court properly recognized that pro se filings are construed liberally, but liberal construction is not amendment. It permits a court to read an inartful complaint generously; it does not permit a court to import actual malice from a later motion for default judgment, add an unpleaded mental-state element, or expand default damages beyond what ECF No. 1 gave Defendant notice of.

The Court's own hearing statements confirm the limit. The Court explained that "a default judgment is only dealing with the complaint," that damages must be caused by what was alleged in the Complaint, and that the inquiry is "very focused" and "very narrow" because the Complaint is all Defendant had notice of in deciding whether to defend. (ECF No. 64, PageID.623–624). The Court also stated that if Plaintiff wanted to expand the Complaint, she would need to amend it so Defendant could defend. (ECF No. 64, PageID.631). Plaintiff did not amend.

The actual-malice defect was not technical. It was substantive. The Court stated that actual malice in defamation means knowledge of falsity or reckless disregard for the truth, saw a reference to actual malice in Plaintiff's motion for default judgment, but was "struggling to find a reference to that in your complaint." (ECF No. 64, PageID.620). The Court later repeated: "Emotional distress, injury to your reputation, that requires you to plead actual malice, and I don't know if you have adequately pled actual malice." (ECF No. 64, PageID.624).

That defect could not be fixed by liberal construction. Courts must construe pro se pleadings liberally, but they may not rewrite a complaint to include unpleaded allegations or legal elements. Brown v. Matauszak, 415 F. App'x 608, 613 (6th Cir. 2011); see also Bridge v. Ocwen Fed. Bank, FSB, 681 F.3d 355, 358 (6th Cir. 2012). And actual malice is not ill will, hostility, or

16

spite; it requires knowledge of falsity or reckless disregard for truth. Ogle v. Hocker, 430 F. App'x 373, 376–77 (6th Cir. 2011). The Court could not use liberal construction to convert generalized "malicious" conduct, ECF No. 40 exhibit descriptions, or hearing testimony into the actual-malice pleading required for non-economic damages.

Because default judgment is a notice-based procedure, Defendant's decision whether to defend was governed by ECF No. 1, not by later filings. Rule 54(c) therefore barred non-economic damages based on an actual-malice theory inferred from ECF No. 40 or the damages hearing rather than pleaded in the Complaint.

Rule 54(c) limits default judgment to what is demanded in the pleadings. Its purpose is notice: the defendant must be able to decide whether to defend based on the original pleading, not a later motion or hearing presentation. See, e.g., Silge v. Merz, 510 F.3d 157, 159–60 (2d Cir. 2007) (explaining Rule 54(c)'s notice function in default judgment). Due process likewise requires notice and an opportunity to respond before a party is subjected to a new or expanded basis for judgment. Nelson v. Adams USA, Inc., 529 U.S. 460, 466 (2000).

Default also does not make damages allegations true. In the Sixth Circuit, when damages are unliquidated, default admits liability only; the amount and basis of damages still must be proven. Antoine, 66 F.3d at 110–11; Vesligaj, 331 F. App'x at 355. The Court cannot first find that the Complaint supports only negligence and economic damages, then use a post-default motion to infer malice and award non-economic damages after Plaintiff admitted she had no economic loss.

**D. The Damages Award Is Unsupported Because the Hearing-Stage Harms Were Not Pleaded or Proven With Reasonable Certainty**

Plaintiff admitted she could not prove economic damages from Claim 2. When asked whether she could quantify monetary damages, she stated, "I didn't lose anything," and described the issue as "just an inconvenience." (ECF No. 64, PageID.633). When asked whether she suffered

17

money damages from the defamation alleged in Claim 2, Plaintiff responded: "No, it was no money damages. No, your Honor, it wasn't any money, financial." (ECF No. 64, PageID.634). At the hearing, Plaintiff introduced new damages claims including alleged phone calls, trouble sleeping, psychiatric care, high blood pressure, humiliation, missed work, harassment by others, being called in the middle of the night, and feeling overwhelmed. (ECF No. 64, PageID.636; PageID.641–642; PageID.645–647).

Those specific damages were not pleaded in ECF No. 1 as concrete damages caused by the Housing Commission letter. The Complaint contains generalized references to "emotional distress," "harm to my reputation," "safety," and "cost with safeguarding my personal information," but it does not plead phone calls in the middle of the night, inability to sleep, psychiatric treatment, blood pressure issues, missed work, harassment by third parties, or being overwhelmed. (ECF No. 1, PageID.4).

The Court then awarded damages based on those hearing-stage harms. In its ruling, the Court stated that Plaintiff had issues sleeping, was humiliated, missed work, was harassed and called in the middle of the night, felt overwhelmed, sought psychiatric care and treatment, and suffered emotional distress. The Court then awarded $10,000 in monetary damages for Count 2. (ECF No. 64, PageID.666).

Even in default, unliquidated damages must be established with reasonable certainty. Antoine, 66 F.3d at 110–11; Vesligaj, 331 F. App'x at 355. Speculative lost subscribers, potential investors, memberships, Cash App donations, and harms Plaintiff admitted she could not prove cannot support the award. Plaintiff described alleged losses in speculative terms, including lost subscribers, potential investors, memberships, Cash App donations, and harms she admitted she could not prove. (ECF No. 64, PageID.634–635).

Defendant does not dispute that emotional-distress damages can be difficult to quantify. But they still require causation, notice, and a permissible pleading basis. In any event, damages still require causation: the claimed harm must be tied to the challenged publication rather than unrelated third-party conduct. Emotional-distress damages cannot be based on phone calls, harassment, address exposure, or third-party conduct if those harms were not pleaded as damages caused by the narrowed Housing Commission letter.

The same remains true even if the Court focuses on the fraud-related wording in the letter. The issue is not whether the letter contains program integrity language. The issue is whether Plaintiff proved damages caused by that letter. The letter contains no phone number, no residential address, and no felony-conviction statement. The damages awarded were based on unpleaded phone calls, sleep disruption, psychiatric care, third-party harassment, and phone-number exposure. Those are not damages from the letter's wording; they are separate hearing-stage harms that were not pleaded in ECF No. 1 and are now undermined by newly discovered evidence tying the phone-number issue to TJ's September 23, 2023 post.

The same is true for the date discrepancies in Plaintiff's own materials. Defendant does not ask the Court to revisit liability. Defendant challenges damages because Plaintiff's own pleadings and exhibits do not establish one unified August 12, 2024 damages event. The Housing Commission letter, deed/property post, and mugshot/felon allegations were separated by date, exhibit, and factual theory. Even if those allegations were admitted for liability, damages still had to be proven with reasonable certainty and tied to the narrowed Housing Commission letter. The Court's own "essence of the claim" framing confirms the same limit. Because the Court identified the Housing Commission letter as the essence of the claim, damages should be limited to harms caused by the letter. A damages award based on deed/property disclosure, a preexisting

mugshot/felon dispute, later lawsuit posts, phone-number doxxing, or broad online harassment exceeds the letter-based theory the Court selected for the default damages inquiry.

A hearing does not cure lack of notice, lack of pleading basis, or lack of causation. Nor does liberal construction cure those defects. Liberal construction allows a court to understand an inartful pleading; it does not permit the Court to award damages based on new hearing-stage harms or an unpleaded actual-malice theory that Defendant had no notice of from ECF No. 1. The hearing developed damages theories that were not pleaded in ECF No. 1. Under Rule 54(c), default damages cannot differ in kind from what was pleaded, and under Vesligaj, the evidence must establish damages with reasonable certainty. Hearing testimony cannot supply damages causation where newly discovered evidence shows the phone-number exposure and related calls came from TJ's September 23, 2023 post, almost one year before the August 2024 Housing Commission letter.

The Court's own cited authority supports this limited damages challenge. Rule 60(b)(1) permits relief for judicial mistakes of law or fact. Kemp v. United States, 596 U.S. 528, 533–34 (2022). Rule 60(b)(3) permits relief where misrepresentation or misconduct prevented the moving party from fully and fairly presenting her case. Abrahamsen v. Trans-State Express, Inc., 92 F.3d 425, 428 (6th Cir. 1996). Rule 60(b)(4) is available in the rare instance where the judgment rests on a jurisdictional defect or a due-process violation depriving a party of notice or an opportunity to be heard. United Student Aid Funds, Inc. v. Espinosa, 559 U.S. 260, 271 (2010). Here, Defendant does not relitigate liability. Defendant challenges only damages, which the Court's May 1, 2026 order expressly permits. (ECF No. 81, PageID.897).

Vesligaj confirms that relief may be limited to the unsupported damages portion of a default judgment. There, the Sixth Circuit affirmed in part, reversed only the unsupported $36,000

damages component, and remanded for further damages determination because default does not deem damages allegations true and unliquidated damages must be determined with reasonable certainty. That is the same limited relief requested here.

Default does not admit damages, does not cure unpleaded damages theories, and does not allow damages to be based on conduct outside the Housing Commission letter that supplied the Court's narrowed claim and jurisdictional anchor. The Court may consider the letter's wording, but the damages award must be based on harms caused by the letter, not by unpleaded phone calls, third-party harassment, phone-number doxxing, or separate allegations outside the letter. Accordingly, even if the Court had discretion to assess damages after default, that discretion did not permit an award based on unpleaded, hearing-stage harms or harms caused by third-party conduct.

**E. Newly Discovered Evidence Shows Plaintiff Knew TJ Was the Source of the Phone-Number Doxxing Before This Lawsuit**

The newly discovered Queen Tulsa screenshots are consistent with evidence already preserved in the record and directly rebut damages causation.

**September 23, 2023:** TJ publicly posted Plaintiff's full phone number on YouTube and encouraged people to call Plaintiff. Plaintiff herself shared TJ's public YouTube community post showing the full number in a group chat that same day. For privacy, Defendant redacts the last four digits of the phone number in the filed exhibits, but Defendant can submit the unredacted version under seal or as the Court directs. See Exhibits A and A-1.

**September 24, 2023:** Plaintiff admitted prior doxxing, stating, "I was doxxed… yes I did… people are sending me messages." (ECF No. 75, PageID.830; see Exhibit B).

**September 24, 2023:** The preserved record also confirms that TJ posted Plaintiff's phone number and Defendant did not repost it. (ECF No. 75, PageID.830; see Exhibit B).

21

**April 14, 2026:** Plaintiff introduced phone calls, being woken up, fear, sleep disruption, psychiatric care, and third-party harassment for the first time at the damages hearing.

**April 19, 2026:** TJ admitted, "I did dox… yes I did," confirming that she posted Plaintiff's number in 2023. (ECF No. 75, PageID.830; see Exhibit B).

**May 2, 2026, post-judgment conduct:** Plaintiff publicly discussed a proposed "showdown" or "read-off" with Defendant, meaning a roast-style exchange where participants mock each other's personal issues, appearance, life problems, or characteristics. Plaintiff invited Defendant to engage in a public back-and-forth to address their disputes, suggested that the exchange could occur on a neutral platform, and stated that it would allow them to "move past the drama" and would be "good content." See Exhibit D.

**May 4, 2026:** Defendant received additional screenshots from Queen Tulsa showing Plaintiff herself shared TJ's September 23, 2023 public YouTube post in the group chat. That post displayed Plaintiff's full phone number and encouraged people to call her. Defendant redacts the last four digits in the filed exhibits for privacy and can provide the unredacted version under seal or as the Court directs.

The May 4, 2026 Queen Tulsa screenshots are material newly discovered evidence because they concern pre-judgment facts: Plaintiff's September 2023 awareness that TJ, not Defendant, publicly posted her phone number almost one year before the August 2024 Housing Commission letter. The Complaint does not allege that Defendant posted Plaintiff's phone number, and the Housing Commission letter contains no phone number.

The May 4 screenshots support Rule 60(b)(1), Rule 60(b)(2), and Rule 60(b)(3) as to damages causation. Defendant was surprised by unpleaded hearing-stage damages, and Plaintiff's hearing-stage testimony created or allowed a misleading attribution of phone calls, fear, sleep disruption,

22

and third-party harassment to Defendant or to the Housing Commission letter. The newly

discovered evidence shows Plaintiff knew since September 2023 that TJ publicly posted her

phone number, which prevented Defendant from fully and fairly contesting damages causation at

the hearing.

Plaintiff's May 2, 2026 post-judgment invitation to participate in a public "showdown" or "read-

off" is not offered as Rule 60(b)(2) evidence of a pre-judgment fact or to relitigate liability. It is

offered separately as damages-related context bearing on credibility, causation, Plaintiff's

claimed fear or desire to avoid public engagement, and Rule 60(b)(6) equitable relief.

Defendant submits declarations from Defendant and Ahnyah Kannancum/Queen Tulsa.

Defendant explains that she received the Queen Tulsa screenshots on May 4, 2026 and could not

have submitted them earlier because Plaintiff's phone-call and third-party harassment damages

were first introduced at the April 14, 2026 damages hearing. Queen Tulsa confirms that she

provided the screenshots from the moderator group chat and that they accurately reflect Plaintiff

sharing TJ's September 23, 2023 post showing Plaintiff's phone number. See Exhibit F.

For the foregoing reasons, Defendant respectfully requests that the Court:

1.  Vacate the $10,000 damages award under Rule 60(b)(1), Rule 60(b)(2), Rule 60(b)(3), Rule
    60(b)(4), and/or Rule 60(b)(6);

2.  Reconsider damages only as to the well-pleaded facts arising from the redacted Housing
    Commission letter, which the Court identified as the essence of the claim;

3.  Review the Housing Commission letter as shown in Plaintiff's own Complaint exhibit and
    evaluate only the contents visible in that exhibit, including that the letter displays the Detroit
    Housing Commission Compliance Office address, not Plaintiff's residential address, contains

23

no Plaintiff phone number, and says "felonious arrest" with an attached police report, not "felony conviction," "convicted felon," or "has a felony";

4.  Evaluate any fraud-related or income-reporting wording only as it appears in the Housing Commission letter itself and with consideration of the DHC/HUD program integrity reporting context, including the perceived discrepancy between Plaintiff's income filings and public YouTube monetization activity, without importing separate allegations involving mugshots, property records, phone-number doxxing, third-party harassment, later lawsuit-related posts, or other conduct not contained in the letter;

5.  Determine that ECF No. 1 did not plead actual malice sufficient to support non-economic defamation damages and that ECF No. 40 did not amend or cure that pleading defect;

6.  Determine that the redacted Housing Commission letter, deed/property-record post, mugshot/felon allegations, phone-number doxxing, and broader post-Complaint disputes are separate factual theories or alleged publications that may not be collapsed into one damages event;

7.  Exclude hearing-stage damages not pleaded in the Complaint or not tied to the letter, including alleged phone calls, lack of sleep, psychiatric care, missed work, generalized emotional distress, third-party harassment, and phone-number doxxing;

8.  Limit damages, if any, to harms proven from the redacted Housing Commission letter itself, or alternatively reduce the damages award to nominal damages; and

9.  Grant such other relief as the Court deems just and proper.

## IV. Conclusion

This motion is limited to damages and does not seek to relitigate liability, service, or jurisdiction generally. The Court expressly preserved Defendant's right to challenge the amount of damages.

(ECF No. 81, PageID.897). The damages award should be vacated or reduced because it rests on hearing-stage harms not pleaded in the Complaint, is not tethered to the narrowed Housing Commission letter, depends on an unpleaded actual-malice theory, and is materially undermined by newly discovered evidence showing that Plaintiff knew TJ, not Defendant, publicly posted Plaintiff's phone number in September 2023. Even if the Court treats the letter's fraud-related wording as part of the narrowed claim, damages must still be limited to harms actually pleaded and proven from that letter, not harms from separate exhibits, separate online allegations, or third-party conduct. And the income-reporting language still does not show actual malice where the letter identified Plaintiff's public YouTube channel and public monetization features for agency review against Plaintiff's own reported disability-only income. If the letter is the essence, the letter is also the limit. At minimum, damages should be limited to harms actually pleaded in ECF No. 1 and caused by the redacted Housing Commission letter.

Respectfully submitted,
Danielle Robertson Defendant, Pro Se
4539 N 22ND ST, Phoenix, AZ 85016-4639
United States
DaniRobertson@proton.me

**CERTIFICATE OF SERVICE**

I hereby certify that on May 5, 2026, I electronically filed the foregoing Defendant's Limited Rule 60(b) Motion to Vacate or Reduce Damages using the Court's Pro Se Portal system, which will send notification of such filing to Plaintiff Kimberly Smith.

**EXHIBITS**

**Exhibit 1**: Declaration

**Exhibit A**: Queen Tulsa screenshot showing Plaintiff shared TJ's September 23, 2023 post displaying Plaintiff's phone number, with the last four digits redacted for privacy. Cited in Section E.

**Exhibit A-1**: Enlarged TJ post showing Plaintiff's phone number with the last four digits redacted for privacy. Cited in the Introduction and Section E.

**Exhibit A-2**: Plaintiff asking for evidence of her number being doxxed and participant responding with TJ's post. Cited in the Introduction and Section E.

**Exhibit B**: ECF No. 75, PageID.830, Exhibit AB clip index showing Plaintiff admitted prior doxxing, TJ posted the number, Defendant did not repost it, and TJ later admitted she did it. Cited in Section E and the Declaration.

**Exhibit C:** Housing Commission letter at ECF No. 1, PageID.14 showing no phone number and no Plaintiff residential address. Cited in Section A.

**Exhibit D:** May 2, 2026 Summary of Plaintiff Inviting Defendant to Public "Showdown," "Read-Off," or Debate. Cited in Section E and the Declaration.

**Exhibit E**: DHC/HUD program integrity materials showing DHC's federally funded housing-program context and use of program-abuse/fraud reporting language. Cited in Section A.

**Exhibit F:** Declaration of Ahnyah Kannancum/Queen Tulsa authenticating the May 4, 2026 screenshots and confirming that Plaintiff shared TJ's September 23, 2023 post showing Plaintiff's phone number in the moderator group cha

**EXHIBIT 1**

**DECLARATION OF DANIELLE ROBERTSON**

I, Danielle Robertson, declare as follows:

1. I am the Defendant in this matter. I make this declaration based on my personal knowledge and the records described below.

2. In my April 24, 2026 Rule 60 filing, I referenced preserved clips showing that Plaintiff admitted she was doxxed in September 2023, that TJ was identified as the person who posted Plaintiff's phone number, that I did not repost the doxxed content, and that TJ later admitted on April 19, 2026 that she did dox Plaintiff. (ECF No. 75, PageID.830).

3. On May 4, 2026, I received additional screenshots from Queen Tulsa.

4. These screenshots show Plaintiff herself sharing TJ's September 23, 2023 public YouTube post in a group chat.

5. TJ's post displayed Plaintiff's full phone number and encouraged viewers to call Plaintiff. For privacy, I redacted the last four digits of the phone number in the filed exhibit. I can submit the unredacted version under seal or as the Court directs.

6. This evidence confirms that Plaintiff knew in September 2023 that TJ publicly posted her number, nearly one year before the August 2024 Housing Commission letter.

7. I could not have submitted the May 4, 2026 screenshots before the April 14, 2026 damages hearing because Plaintiff's specific damages claims about phone calls, being woken up, sleep disruption, psychiatric distress, and third-party harassment were not pleaded in ECF No. 1 and were first introduced at that hearing.

8. The Complaint does not allege that I posted Plaintiff's phone number, and the Housing Commission letter contains no phone number.

9.  On or about May 2, 2026, Plaintiff publicly discussed inviting me to participate in a "showdown" or "read-off." Based on the context of Plaintiff's statements and the common meaning of "read off" in this commentary sector, I understand a "read off" to mean a roast-style exchange where participants mock each other's personal issues, appearance, life problems, or characteristics. The video summary reflects timestamps from approximately 1:03:13 to 1:17:28, including Plaintiff suggesting a head-to-head discussion, proposing a neutral platform, and stating the exchange would be "good content." I did not participate in any such public exchange. I preserved the summary/screenshot as Exhibit D.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: 5/5/2026

Danielle Robertson

**EXHIBIT A**



**EXHIBIT A-1**



**EXHIBIT A-2**



**EXHIBIT C -HOUSING LETTER EXHIBIT FROM ECF 1**



**Whew Chile!**

**Detroit Housing Commission**
**Attention: Compliance Office**
**1 301 E Jefferson Ave**
**Detroit, MI 48207**

Dear Compliance Office,

I am writing to bring to your attention several serious concerns regarding a resident under y 48227. These concerns may represent violations of Detroit Housing Commission and HUD n

Ms. Smith operates a Youlube channel under the name "Real Talk with Kimme Luv," which I conducted for financial gain through CashApp, PayPal, memberships, and other revenue sta constituting fraud.

Furthermore, Ms. Smith has grown children and grandchildren residing in the home with hel that any individuals moving in or out of the residence be reported promptly, a requirement changes in household composition be reported within 10 business days, and failure to do sc

Additionally, Ms. Smith has a history of anger issues, as evidenced by her fellinious arrest an out a gun on a neighbor. Despite the seriousness of this incident, which directly violates the attached a copy of the police report related to this incident for your reference.

Given that the property's deed is under the Detroit Housing Commission anci the City of Del unreported activities, and failure to report household changes undermine the integrity of th

Thank you for your prompt attention to this matter. I trust that you will investigate these isst

**EXHIBIT C-1 -ADDRESS BELONGS TO DHC BUSINESS  ADDRESS**



EXHIBIT D

1:02:131 hour, 2 minutes, 13 secondsbut you know, hey, I just like to drop it again for real.

1:03:081 hour, 3 minutes, 8 secondsOh y'all, I'm just a talking.

1:03:131 hour, 3 minutes, 13 secondsWho would y'all have y'all money? Y'all panel look side by side. Let's talk.

1:03:221 hour, 3 minutes, 22 secondsWhat's up?

1:03:261 hour, 3 minutes, 26 secondsThat would be a good show cuz I promise you I would come. I would

1:03:341 hour, 3 minutes, 34 secondslook this sad every not say that after the judgment

1:03:411 hour, 3 minutes, 41 secondshoney look I will pay them to go just let me up when she on there

1:03:491 hour, 3 minutes, 49 secondsat all I will be there and my Michael Jackson Boys.

1:04:081 hour, 4 minutes, 8 secondsYes. Let's see who the better at their words.

1:04:141 hour, 4 minutes, 14 secondsAnd you can't keep saying Wendy's four for four. I ain't Magic.

1:04:211 hour, 4 minutes, 21 secondsYou can't keep saying that cuz Magic was like, "Is this [ __ ] crazy?" Yeah.

1:04:311 hour, 4 minutes, 31 secondsNow you try that Applebee's or that Wendy's four before. Try that [ __ ] with me. I'll be tearing your ass up.

1:04:421 hour, 4 minutes, 42 secondsOff the dome. Off the rip. Like you want Let's see. Let's have a read off. If it ain't wrote down,

1:04:531 hour, 4 minutes, 53 secondsshe gonna have to refer to [ __ ] Imagine if I wrote it down.

1:05:001 hour, 5 minutesKilling them with facts.

1:05:081 hour, 5 minutes, 8 secondsLet's get Let's get YouTube what they really want.

1:05:141 hour, 5 minutes, 14 secondsLet's give them what they really want. A showdown.

1:05:201 hour, 5 minutes, 20 secondsYeah, I bet you y'all can tell that it will be scripted in what she say. Look,

1:05:231 hour, 5 minutes, 23 secondsI give her time to go ahead on and script it and write it on up.

1:05:281 hour, 5 minutes, 28 secondsWrite down whatever you going to say cuz we know that that's what you going to do cuz you can't [ __ ] with me.

1:05:381 hour, 5 minutes, 38 secondsNow that's a call out. You the biggest. You the baddest.

1:05:451 hour, 5 minutes, 45 secondsLook, you big Wait, what? How short enough do it? You I'm big. I'm bad. I'm showing up. Go ahead. Hey 62

1:05:591 hour, 5 minutes, 59 secondscuz she know what it is. She know what it is.

1:06:051 hour, 6 minutes, 5 seconds62 D in the house.

1:06:181 hour, 6 minutes, 18 secondsPut money on that.

1:06:201 hour, 6 minutes, 20 secondsThey can have people betting in the back on who will win. You can write it down.

1:06:261 hour, 6 minutes, 26 secondsYou can even look. They could prepare your corner. Prepare

you. Say this. say that.

1:06:381 hour, 6 minutes, 38 secondsThat's what they can say. They let them let your corner prepare you.

1:06:441 hour, 6 minutes, 44 secondsThat's a slaughter for you. I mean, I'm sure you could take me out. Let's do it. Try.

1:06:541 hour, 6 minutes, 54 secondsYou could try. But I don't think you'll win.

1:07:011 hour, 7 minutes, 1 secondI don't even think you'll win against Kai.

1:07:051 hour, 7 minutes, 5 secondsThat's how to me. I don't I really really really believe that.

1:07:171 hour, 7 minutes, 17 secondsAnd that's facts cuz God funny.

1:07:231 hour, 7 minutes, 23 secondsI know. God, would you love that Kai or what? Would you love that?

1:07:331 hour, 7 minutes, 33 secondsLet's get it. And you can't mute people, right?

1:07:401 hour, 7 minutes, 40 secondsAnd you can't you can't mute people.

1:07:441 hour, 7 minutes, 44 secondsYou can't none of that. Let it be just fair and straight up.

1:07:541 hour, 7 minutes, 54 secondsLet's do it. You think you can win? Let the people [ __ ]

1:08:001 hour, 8 minutesuh prepare you. Do whatever it is that you got to do. And let's let's hit the [ __ ] panel.

1:08:091 hour, 8 minutes, 9 secondsYeah, it would. Let's really make this sector because this sector needs something.

1:08:151 hour, 8 minutes, 15 secondsIt does. Y'all need some excitement. We all share content sometimes. We know they do.

1:08:331 hour, 8 minutes, 33 secondsYeah.

1:08:361 hour, 8 minutes, 36 secondsGet prepared. Let's do it. Look, let's do it. Let's do it. Let's do it. Do it.

1:08:431 hour, 8 minutes, 43 secondsDo it. Let's have a showdown. Let the people pay to have a showdown.

1:08:531 hour, 8 minutes, 53 secondsLet's do that. Let's make it exciting. Let's look.

1:08:591 hour, 8 minutes, 59 secondsLet's help you raise the money. I'll come over there.

1:09:041 hour, 9 minutes, 4 secondsI would as long as my people allowed in the chat, too.

1:09:091 hour, 9 minutes, 9 secondsThat'll get Look, that'll help you make the money. Think about it. Think about it. You could do it on the members only.

1:09:171 hour, 9 minutes, 17 secondsThat'll help you make a couple of dollars. But it got to be fair.

1:09:261 hour, 9 minutes, 26 secondsI don't know how we could do that. I don't know how we could do that.

1:09:341 hour, 9 minutes, 34 secondsI'm just thinking like could we be like we I would have to have a letter to say that I can stream,

1:09:431 hour, 9 minutes, 43 secondsyou know, something something. I don't know. But let's get the people what they want. I'm sure your people want to see it. Question them.

1:09:591 hour, 9 minutes, 59 secondsLet's have a showdown.

1 hour, 10 minutes, 1 second I would prefer to do it be y'all. Believe it or not,

1 hour, 10 minutes, 9 seconds believe it or not, y'all know who could be the referee.

1 hour, 10 minutes, 14 seconds It could be a Shan Davey way without him interfering.

1 hour, 10 minutes, 22 seconds Without him interfering because it wouldn't be fair then I believe that he could. Yeah, I do. Who

1 hour, 10 minutes, 31 seconds else could would do it? Kai cuz she ain't going to go to nobody else but who she feels safe with.

1 hour, 10 minutes, 43 seconds That's the only person she'll feel safe with that I believe would do it fairly. I don't know if King Payne would. Yep.

1 hour, 10 minutes, 52 seconds Somebody unbiased.

1 hour, 10 minutes, 59 seconds Yeah. She got to feel safe. Look, I don't need no safe grounds. She got to feel safe.

1 hour, 11 minutes, 15 seconds And that's what would be exciting for real cuz I would show up.

1 hour, 11 minutes, 26 seconds I would she it had to be somewhere where she feel safe. But I really believe even though Sean don't like me,

1 hour, 11 minutes, 36 seconds even though he don't like me, even though he didn't have a reason not to like me, even though he don't like me,

1 hour, 11 minutes, 42 seconds something in me believe that he he would be fair with being the referee.

1 hour, 11 minutes, 52 seconds I don't know why I believe that. I don't know if it's the God in me.

1 hour, 11 minutes, 59 seconds I don't know why, but that's that's what's telling me that he would be fair.

1 hour, 12 minutes, 11 seconds Let's do it. But look, besides, he got more viewers.

1 hour, 12 minutes, 18 seconds Let's do it. I'm down.

1 hour, 12 minutes, 24 seconds I know he ain't gonna let nobody else up. It'll just be me and her and he can referee it

1 hour, 12 minutes, 32 seconds cuz I believe he will be fair. I know that's his girl. I know that.

1 hour, 12 minutes, 40 seconds But you know, she got to feel safe. Let's do it.

1 hour, 12 minutes, 47 seconds Let's talk about it. Let's see. Let's talk about the reads. It's a difference when you sitting behind a computer and you replaying people content and you

1 hour, 12 minutes, 56 seconds passing insults and [ __ ] like that. That ain't fair. It's not fair.

1 hour, 13 minutes, 4 seconds That's coward [ __ ] if you ask me.

1 hour, 13 minutes, 17 seconds For real. Have your issue with people.

1 hour, 13 minutes, 23 seconds Don't be a punk. Have your issue with the people that you do content about or with.

1 hour, 13 minutes, 31 seconds Instead of replaying other people's content and talking

about other [ __ ]

1:13:361 hour, 13 minutes, 36 secondswhy don't you everybody that you had beef with, won't you give them a chance to respond to you sitting next to you on a panel?

1:13:461 hour, 13 minutes, 46 secondsThat's fair.

1:13:501 hour, 13 minutes, 50 secondsOr if that's not fair to you. I wish I would step off my Yeah, that's punk talk.

1:13:591 hour, 13 minutes, 59 secondsThat's what that is. That's punk talk.

1:14:051 hour, 14 minutes, 5 secondsEverybody that she done got we the people. There's a lot of people I can name.

1:14:151 hour, 14 minutes, 15 secondsKai Goody, you definitely can't [ __ ] with Goody.

1:14:221 hour, 14 minutes, 22 secondsYou can't do that. Goody go [ __ ] with her mouth.

1:14:341 hour, 14 minutes, 34 secondsGoody will tear that ass up.

1:14:391 hour, 14 minutes, 39 secondsYou know it and I know it and the world knows it. The YouTube world

1:14:481 hour, 14 minutes, 48 secondsknow that Goody would tear your ass up.

1:14:531 hour, 14 minutes, 53 secondsTalked about her and then using her content. What's that about?

1:15:011 hour, 15 minutes, 1 secondI know somebody else that'll tear your ass up. Believe it or not, Evangelist Val,

1:15:091 hour, 15 minutes, 9 secondsshe'll tear your ass up.

1:15:291 hour, 15 minutes, 29 secondsDon't forget to look out for your girl.

1:15:321 hour, 15 minutes, 32 secondsY'all see what it is. Y'all see what it is. Y'all see what it is. Donate to the channel. Look out for your girl. Okay,

1:15:401 hour, 15 minutes, 40 secondslet me see how many cash apps I got today.

1:15:451 hour, 15 minutes, 45 secondsJust one. But it's all good. I got a membership today. It's all good.

1:15:531 hour, 15 minutes, 53 secondsBut yeah, give people the opportunity to respond.

1:16:001 hour, 16 minutesThat's what real [ __ ] do. Y'all know who else? That's what I was going to say. Trees. I was going to say trees.

1:16:101 hour, 16 minutes, 10 secondsI was gonna Oh, give trees a chance to respond.

1:16:181 hour, 16 minutes, 18 secondsIt's okay to have judgment when ain't nobody else over, you know.

1:16:261 hour, 16 minutes, 26 secondsYeah, that would be a good one. Get the people a show.

1:16:341 hour, 16 minutes, 34 seconds[ __ ] them singing contestes and and and literature and poet poetry and [ __ ] Get the people a chance to respond.

1:16:421 hour, 16 minutes, 42 secondsThat would be good content, girly. Hey, period. Let me ring it.

1:17:001 hour, 17 minutesYeah, thank you very much.

1:17:041 hour, 17 minutes, 4 secondsI would love that. The people would love that. Give them a real show.

1 hour, 17 minutes, 11 secondsTalk about it. Let's talk about it.

1 hour, 17 minutes, 20 secondsGive the people some real [ __ ]

1 hour, 17 minutes, 24 secondsnot fake [ __ ] Not you playing everybody's content and talking about them. That ain't real [ __ ] That's punk

1 hour, 17 minutes, 30 seconds[ __ ] [ __ ]

1 hour, 17 minutes, 32 secondsGive them a chance to respond or they going to respond like I maybe they wouldn't have went, you know, not going to be coming after your ass in court.

1 hour, 17 minutes, 45 secondsHey Kai,

1 hour, 17 minutes, 49 secondswelcome, welcome, welcome Kai. Cultivate with Kai in the house.

1 hour, 17 minutes, 56 secondsGive the people a chance to really respond. Well, I can't hear them. I can We can hear you now.

1 hour, 18 minutes, 3 secondsOh, okay. Can you hear me? Yeah,

1 hour, 18 minutes, 5 secondsthat's I was trying to figure I felt I was I

1 hour, 18 minutes, 13 secondswas telling I was showing my my um my spiritual age for a minute. My s my old your spiritual age.

1 hour, 18 minutes, 25 secondsListen, listen. You think the people would tear her ass up? The people or everybody that she doxed and talked about talked about their families? Who you think will win?

1 hour, 18 minutes, 36 secondsOh, we will absolutely win by default by you know what I'm saying. But I think a lot of people were making a good point

1 hour, 18 minutes, 45 secondsbecause they said cuz in response I know you don't rock with them so I'mma name I'mma keep them nameless but they said

1 hour, 18 minutes, 52 secondsyou know responding to your question why do you think that people are scared to respond back or to um you know bask in

1 hour, 18 minutes, 59 secondsthis joyous occasion you know her defeat Kimmy's loves win um people people are

1 hour, 19 minutes, 7 secondsreally scar it's either a mixture between they scared and they're co-conspirators. So, they have to be quiet, act like they don't

1 hour, 19 minutes, 15 secondsknow what they did and you know the part they they parttook in it and got to turn the blind eye. But y'all ain't got to be scared. What you mean? Stop being scared

1 hour, 19 minutes, 23 secondsof this robo. She's been popped. That's the whole point. You got to be scared no more. She's popped and she's manic and in a panic just like everybody else that been popped on this here YouTube.

1 hour, 19 minutes, 33 secondsFacts, Kai. Oh, that those are facts.

1 hour, 19 minutes, 38 secondsThey scared that they gonna get the repercussions.

1 hour, 19 minutes, 42 secondsUhhuh. Which is unfortunate. You shouldn't be scared. Don't do it.

1 hour, 19 minutes, 48 secondsExactly. You shouldn't have did it. You know what I'm

saying? Cuz uh you thought she was the uh you know the winning the the good girl around here that never get popped. Now she popped.

1:19:591 hour, 19 minutes, 59 secondsShe wasn't the top dog. That's my show. Top dog.

Case 2:24-cv-12213-LJM-KGA | ECF No. 82, PageID.944 | Filed 05/05/26 | Page 40 of 45

An official website of the United States government Here's how you know ⌄

## HOTLINE
### CRIME, FRAUD, WASTE, AND ABUSE



OFFICE *of*
**INSPECTOR GENERAL**
★ ★ ★ ★
UNITED STATES DEPARTMENT OF
HOUSING AND URBAN DEVELOPMENT

ABOUT HUD OIG ‹     LIBRARY ‹     COMBATING FRAUD ‹     NEWS & CONGRESSIONAL ‹     RESOURCES ‹

WHISTLEBLOWER ‹

HOME  /  REPORT FRAUD

# Report Fraud

HUD OIG Hotline number: **1-800-347-3735**

Toll-Free and Toll Access Number for Federal Relay:

**(800) 877-8339** TTY/ASCII (American Standard Code For Information Interchange) – Allows TTY Users to type their conversation

 ## FREQUENTLY ASKED QUESTIONS

### ⌄  What Should I Report to the Hotline?

- Violations of federal laws, rules, and regulations pertaining to the U.S. Department of Housing and Urban Development (HUD) programs and funding
- Substantial and specific danger to health or public safety at HUD Public and Multifamily Housing Developments
- Contract and procurement irregularities
- Theft and abuse of government property
- Employee misconduct

Case 2:24-cv-12213-LJM-KGA | ECF No. 82, PageID.945 | Filed 05/05/26 | Page 41 of 45

- Abuse of authority or conflict of interests
- Housing subsidy fraud
- Serious mismanagement
- Ethics violations by HUD officials
- Bribery
- Grantee and Subrecipient Mandatory Disclosures of Violations of Law – 2 C.F.R § 200.113
- Disclosure Pursuant to Trafficking Victims Protection Act of 2000 – 2 C.F.R. § 175.105

❯ What Information Do I Need to Provide?

❯ What Will Happen After Making a Report

❯ What Information Do I Need to Provide?

❯ Why is a website blocking me when I use iCloud Private Relay, and how can I fix it?

HUD OIG accepts three different types of complaints. General, Contractor, and Whistleblower. Complaint forms are located below each description.



## OIG HOTLINE CONTACT INFORMATION

HUD OIG Hotline number: **1-800-347-3735**



**FILE A COMPLAINT**

## MANDATORY DISCLOSURES

Case 2:24-cv-12213-LJM-KGA | ECF No. 82, PageID.946 | Filed 05/05/26 | Page 42 of 45

**Grantee and Subrecipient Mandatory Disclosures of Violations of Law – 2 C.F.R § 200.113**

Recipients and subrecipients of HUD financial assistance are required to promptly inform in writing the Office of Inspector General, HUD, and the state grantee, if applicable, when it has credible evidence of violations of federal criminal law involving fraud, bribery, or gratuities or a violation of the civil False Claims Act that could potentially affect the federal award. You are not required to use one of the following disclosure form options, but you should include the information requested by the form in whatever disclosure you submit.

*Information regarding how to make a mandatory disclosure may be accessed by clicking the "mandatory disclosures form" button below.*

**Disclosure Pursuant to Trafficking Victims Protection Act of 2000 – 2 C.F.R. § 175.105**

A private entity who receives an award of federal assistance funds may have their award terminated if they or a recipient, subrecipient, agent or contractor engages in in trafficking in persons, purchase of a commercial sex act, or forced labor. Recipients, subrecipients, contractors, and subcontractors of HUD financial assistance are required to promptly inform the Office of Inspector General and HUD when it has credible evidence that a recipient, subrecipient, contractor, or subcontractor has engaged in conduct that resulted in trafficking in persons, purchase of a commercial sex act, or forced labor which are prohibited by the Trafficking Victims Protection Act of 2000. You are not required to use our disclosure form, but you should include the information requested by the form in whatever disclosure you submit.

*Information regarding how to make a mandatory disclosure may be accessed by clicking the "mandatory disclosures form" button below.*

**MANDATORY DISCLOSURES FORM**



# ⏰ WHISTLEBLOWER PROTECTION

## FEDERAL EMPLOYEES

The Inspector General Act of 1978, as amended at Section 3, requires the OIG to designate a Whistleblower Protection Coordinator, who shall educate agency employees about prohibitions on retaliation for protected disclosures, and employees' rights and remedies against retaliation for protected disclosures.

The IG Act protects the confidentiality of HUD employees' disclosures by prohibiting the OIG from disclosing the employee's identity unless the OIG determines such disclosure is unavoidable during the course of the investigation. IG Act of 1978, Section 7(b).

Case 2:24-cv-12213-LJM-KGA ECF No. 82, PageID.947 Filed 05/05/26 Page 43 of 45

- For more information about what disclosures are protected, ways to make a disclosure, and protections and remedies available to HUD employees: **Click here**
- To make a complaint of fraud, waste, abuse or other wrongdoing in a HUD program: **Click here**
- To make a complaint of retaliation as a result of making disclosure: **Click here**

The Office of Special Counsel (OSC) is the independent federal entity that investigates disclosures and complaints by federal employees of whistleblower retaliation. The OIG works with the OSC to investigate these cases. Federal employees may file disclosures or complaints directly with the OSC.

- To file a Disclosure : **Click here**
- To contact the OSC directly: Call **(202) 804-7000** or **(800) 872-9855** to leave a confidential message. An OSC attorney will return the call.

## EMPLOYEES OF HUD GRANTEES, CONTRACTORS, SUBGRANTEES, OR SUBCONTRACTORS

In 2013, Congress passed a law protecting employees of federal grantees, contractors, and their subgrantees or subcontractors who disclose waste, fraud, abuse, or other violations in federal programs, from retaliation by their employer. Each OIG is tasked with reviewing and investigating retaliation complaints relating to the programs the OIG oversees.

- For more information about what is a covered disclosure, what is retaliation, and what are employee remedies: **Click here**

**MAKE A RETALIATION COMPLAINT**

## NOT A HUD EMPLOYEE OR EMPLOYEE OF A HUD GRANTEE OR CONTRACTOR?

If you do not fall into one of the two categories above, but wish to report fraud, waste, abuse, or other wrongdoing regarding a HUD Program, you may make a disclosure through the HUD OIG Hotline by **clicking here**.

## LIBRARY

## COMBATING FRAUD

- Audits & Evaluations
- Top Management Challenges
- Other Publications
- Investigation & Inquiry Reports
- Recommendation Dashboard
- Hearings & Correspondence
- Semiannual Reports
- FOIA
- Single Audit Guidance

- What You Can Do
- Publications for the Public and Program Participants
- Publicaciones para Administradores de Programas
- Publications for HUD Employees
- Common Fraud Schemes
- Federal Employee or Applicant Protections
- Federal Contractor Grantee Protections
- Rights of Federal Employees to Contact OIG

## NEWS & CONGRESSIONAL

- Press Releases
- Media Material
- Congressional Affairs
- Newsletter

## ABOUT HUD OIG

- Organization & Staff
- Mission & Vision
- Strategy & Performance
- What We Do
- Careers
- Contacts & Locations

## ADDITIONAL RESOURCES

- HUD.GOV
- OVERSIGHT.GOV
- IGNET.GOV
- OSC.GOV
- USA.GOV
- PANDEMIC.OVERSIGHT.GOV



WEB POLICIES   SITE MAP   PRIVACY   FOIA   CONTACTS

    

EXHIBIT F



Declaration of Ahmyah Kanniainen

I, Ahmyah Kanniainen, declare as follows: I have personal knowledge of the facts stated in this declaration and am competent to testify to them if called as a witness. I am a member of Mod Squad / moderator Chat (Content Creator Jaguar Wright).

On May 4, 2026, I provided Danielle Robertson with several screenshots taken directly from the moderator group chat. These screenshots accurately reflect messages sent within that Chat. Specifically, they show a post shared by Kimmie which included a screenshot of TJ doxxing her (Kimmie's) phone number on September 23 2023. I can confirm that I was present in the moderator Chat when these messages were sent and that the screenshots provided are true and unaltered copies of those communications. I state under penalty of perjury under the laws of Oklahoma that the foregoing is true and correct, Executed on this 5 day of May, 2026 at Tulsa Oklahoma. *Ahmyah Kanniainen*

PO Box 14352 Tulsa, OK 74104
405-437-~~████~~