UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KIMBERLY SMITH.,
          Plaintiff,

vs.

DANIELLE ROBERTSON.,
          Defendant,

Case No.24-cv-12213
Honorable Laurie J. Michelson
Magistrate Kimberly G. Altman

**DEFENDANT'S EMERGENCY MOTION
REGARDING NEWLY
DISCOVERED DISSEMINATION, FOR
PRESERVATION OF
REGISTRY FUNDS, AND TO
ESTABLISH A PROCEDURE
FOR COMPENSATORY RELIEF**

**DEFENDANT'S EMERGENCY MOTION REGARDING NEWLY
DISCOVERED DISSEMINATION, FOR PRESERVATION OF
REGISTRY FUNDS, AND TO ESTABLISH A PROCEDURE
FOR COMPENSATORY RELIEF**

Defendant Danielle Robertson, appearing pro se and preserving all appellate

rights, respectfully moves for an order concerning newly discovered dissemination.

Defendant Danielle Robertson, appearing pro se and preserving all appellate

of Plaintiff's Google-related disclosures, preservation of the $10,000 presently

held in the Court registry, and establishment of a procedure for determining

compensatory relief if the Court finds that Plaintiff violated ECF Nos. 93 or 97

or otherwise engaged in sanctionable misuse of compulsory process.

This motion does not repeat Defendant's previously submitted emergency motion

to enforce ECF Nos. 93 and 97 or Defendant's separately submitted motion for

temporary restraining and preliminary injunctive relief.

Those motions address Plaintiff's subpoena activity, portal access, downloading,

printing, review, public display, threatened further disclosure, compliance with

the Court's stays, and the need for immediate prospective protection.

1

This motion concerns different and later-developed matters:

1. Downstream republication of Plaintiff's Google-related statements;

2. Criminal accusations made by other creators after replaying Plaintiff's statements;

3. Plaintiff's public association with a creator who had previously directed threatening and sexually harassing content toward Defendant;

4. The original Google-related broadcast reaching approximately 3,500 views;

5. Defendant's resulting evidence-preservation, monitoring, transcription, storage, mitigation, and account-security burdens; and

6. The procedure for determining and applying any compensatory award.

Defendant's previously submitted motions had not yet been assigned ECF numbers when this motion was prepared. Defendant requests that the Court consider this new motion together with those motions once they appear on the docket.

I. THE NEW EVIDENCE SHOWS THAT PLAINTIFF'S GOOGLE DISCLOSURE WAS REPLAYED AND AMPLIFIED

A. The July 10 host replayed Plaintiff's statements and then added his own criminal accusations.

On July 10, 2026, a content creator published a YouTube broadcast titled:

"THUG-NOT ON DANI ROBERTSON REAL IDENTITY EXPOSED BY GOOGLE, LLC."

Exhibit A.

The recording alternates between the host's live commentary and portions of

Plaintiff's Google-related broadcast. The automated transcript does not always identify when the speaker changes. Defendant therefore reviewed the underlying recording to distinguish the host's statements from Plaintiff's statements in the embedded video.

During the replayed portions of Plaintiff's broadcast, Plaintiff represented that Google had responded to her subpoena, supplied information to her through a secure file-transfer process, and provided information concerning several identified YouTube accounts.

At approximately 6:31–8:28, the host replayed the portion of Plaintiff's broadcast in which Plaintiff discussed material Google sent to her and in which the Google production letter was read or discussed.

The host then added his own commentary. The host used Plaintiff's statements about Google and the identified account handles to speculate that Defendant had committed identity theft, fraud, felony conduct, money laundering, or other criminal activity.

Those accusations were the host's allegations and commentary. They were not statements contained in Google's letter, and Defendant does not submit them for their truth.

Defendant also does not allege that Plaintiff privately sent the complete Google production to the host. Exhibit A is offered to show that:

1. Plaintiff publicly stated that Google supplied account-related information;

2. Plaintiff publicly identified or discussed account handles involved in the production;

3

3. The host replayed Plaintiff's statements to another audience;

4. The host treated Plaintiff's representations as confirmation from Google;

5. The host used Plaintiff's statements to generate identity-theft, felony,

money-laundering, fraud, and other criminal accusations; and

6. Plaintiff's public disclosure was therefore repeated and amplified beyond

her own audience.

B. The same creator continued publishing Google-related accusations.

On July 11, 2026, the same creator published a follow-up broadcast titled:

"THUG-NOT APOLOGY TO AT2 | DANI ROBERTSON

MANIPULATIVE TACTIC EXPOSED + CHRISEAN ROCK."

Exhibit C.

The host stated that Plaintiff's receipt of documentation concerning Defendant

inspired the continued coverage. The host repeated identity-theft and fraud

allegations, discussed information allegedly verified through Google or YouTube,

and continued speculating about persons allegedly associated with the accounts.

The host also acknowledged that the stay could create legal consequences but

continued discussing Plaintiff's claimed Google information.

C. Another creator replayed Plaintiff's Google statements on July 12.

On July 12, 2026, another creator published a broadcast titled:

"DANI ROBERTSON YOU'RE A FELON and a LIAR!"

Exhibit B.

At approximately 17:22–18:39, that broadcast replayed or repeated Plaintiff's

statement:

4

"It was the Google subpoena that told me everything."

At approximately 22:09–24:48, the creator again replayed or discussed the Google production letter and Plaintiff's representation that Google provided "everything."

The creator then relied upon Plaintiff's representations to make identity-theft, fraud, felony, and other criminal accusations against Defendant.

Again, Defendant does not submit those accusations for their truth. They show that Plaintiff's statements were treated as authoritative, repeated to additional audiences, and used to support further targeting of Defendant.

D. A separate audio-platform page promoted the same subject.

A July 10, 2026 audio-platform page displayed the account name "ALLABOUTTHETREES," the title "GOOGLE TOLD ON HER?!," the notation "RECORDED Jul 10, 2026," and a duration of 1:51:32.

Exhibit D.

Defendant relies upon Exhibit D only for the visible display name, title, date, and duration unless a supporting audio excerpt or transcript is later submitted.

II. THE AMPLIFICATION OCCURRED IN A KNOWN HOSTILE ONLINE ENVIRONMENT

The host of Exhibit A was not a neutral person previously unknown to Defendant. Before July 10, Defendant had personally viewed and preserved content from the same host that Defendant understood as threatening violence, sexually harassing Defendant, degrading Defendant, or encouraging hostile targeting of Defendant. That prior hostility had been publicly expressed before Plaintiff's Google

5

disclosure.

Plaintiff thereafter brought the host onto Plaintiff's own platform or publicly associated and collaborated with him in discussions concerning Defendant. Defendant does not ask the Court to hold Plaintiff automatically responsible for every independent statement made by the host.

The relationship is relevant to foreseeability, mitigation, and the reasonableness of Defendant's response. Plaintiff disclosed account-related Google information in an online environment that included a creator who had already expressed hostility toward Defendant and who immediately used Plaintiff's statements to make additional criminal accusations.

## III. PLAINTIFF THREATENED ADDITIONAL DISCLOSURE IF DEFENDANT REPORTED THE MATTER TO THE COURT

During a separate public discussion, Plaintiff acknowledged the existence of the stay and responded to the possibility of Defendant seeking court intervention. Plaintiff stated in substance:

"You file that—I got that Google. You go right ahead and I'm going to attach all the Google documents to PACER and everybody can see what I see."

Plaintiff further stated that filing the material would allow the public to determine who Defendant was.

This was not merely a neutral statement that court filings may be public.

Plaintiff connected broader disclosure to Defendant filing a request for court protection.

The threat created a concrete risk that nonpublic subscriber, recovery, telephone,

device, login, IP-related, authentication, account-association, or nonparty

information would be placed on a publicly accessible docket.

That risk was heightened because hostile third parties were already replaying and

amplifying Plaintiff's Google statements.

IV. THE ORIGINAL DISCLOSURE CONTINUED TO REACH

ADDITIONAL VIEWERS

When Defendant checked Plaintiff's original Google-related broadcast on

July 14, 2026, it displayed approximately 3,500 views.

The publication was therefore not limited to the original live audience. It

continued reaching additional viewers while other creators published their own

Google-related broadcasts.

The spread of the information required Defendant to monitor additional content

because Plaintiff had described possessing nonpublic account and

security-sensitive information and had threatened broader publication.

V. DEFENDANT HAS INCURRED NEW MITIGATION AND

PRESERVATION BURDENS

The newly discovered dissemination required Defendant to:

1. Locate and monitor additional broadcasts and posts;

2. Preserve screenshots, titles, dates, view counts, recordings, transcripts,

   and other evidence;

3. Review lengthy broadcasts to distinguish Plaintiff's embedded statements

   from each host's live commentary;

4. Document identity-theft, felony, fraud, money-laundering, and other

7

criminal accusations based on Plaintiff's Google statements;

5. Monitor content from a creator with a history of hostility toward

Defendant;

6. Review account-recovery, login, authentication, and security settings;

7. Monitor for publication of telephone, email, recovery, device, IP-related,

account-association, or nonparty information;

8. Preserve evidence concerning further republication and possible

recipients;

9. Obtain or use digital-storage and evidence-preservation resources; and

10. Prepare additional sworn evidence for the Court.

Defendant is maintaining records of actual out-of-pocket expenses associated

with transcript preparation, copying, digital storage, evidence preservation,

technical assistance, account-security measures, and reasonable mitigation.

Defendant does not request compensation for her own pro se legal time.

Defendant also does not request a speculative lump-sum award. Defendant

requests a liability determination followed by an opportunity to submit an

itemized statement and supporting documentation of actual losses.

**Plaintiff also monetized the disclosure.** Use this tightened version:

**Plaintiff also monetized the disclosure.** The preserved July 10, 2026 broadcast displayed

approximately 3,606 views and included repeated prompts to "like, subscribe, and donate,"

visible Super Chats, and public acknowledgments of financial contributions. The displayed

Super Chats included payments of $99.99, $50.00, $49.99, $20.00, $19.99, $5.00, and $4.99. Ex.

F. Several paid messages congratulated Plaintiff during the Google-disclosure broadcast and,

viewed in context, appeared to celebrate Plaintiff's receipt and use of the Google information. Defendant also personally heard Plaintiff thank viewers for Cash App payments and other financial support during the broadcast. Defendant does not presently know the total advertising revenue, membership revenue, Super Chat or Super Sticker revenue, Cash App receipts, platform fees, refunds, chargebacks, gross receipts, or net profit attributable to the Google-related content. The visible monetization nevertheless supports preservation and a sworn accounting of revenue generated by the July 10 broadcast and any related broadcasts. If the Court finds that Plaintiff's monetized use of the Google production violated ECF Nos. 93 or 97 or constituted sanctionable misuse of compulsory process, Defendant requests disgorgement of net profits causally attributable to the proven violation, or other compensatory relief the Court determines legally available. Defendant further requests that any resulting award be applied against funds otherwise distributable to Plaintiff from the Court registry, if legally authorized.

This avoids overstating that every payment was expressly designated for the Google information while preserving the stronger contextual argument.

## VI. THE REGISTRY FUNDS SHOULD REMAIN PRESERVED

Defendant does not presently ask the Court to cancel or automatically reduce the judgment.

Defendant asks that the $10,000 presently held in the Court registry remain preserved while the Court determines:

1. Whether Plaintiff violated ECF Nos. 93 or 97;

2. Whether Plaintiff engaged in sanctionable misuse of compulsory process;

3. Whether the proven conduct caused compensable losses;

4. The amount of any compensatory award; and

5. Whether any resulting award may lawfully be applied against funds otherwise distributable to Plaintiff.

Premature distribution could require Defendant to begin separate collection proceedings to recover a later compensatory award.

Preservation would maintain the status quo while the Court decides the pending and newly presented issues.

## VII. RELIEF REQUESTED

Defendant respectfully requests that the Court:

1. Consider this motion together with Defendant's previously submitted emergency enforcement and temporary-restraining-order motions once those motions are assigned ECF numbers;

2. Treat this motion as addressing newly discovered dissemination, resulting injury, compensation, and registry-fund issues rather than as a duplicate request for the same relief;

3. Promptly consider Defendant's previously submitted emergency filings in light of the continuing dissemination;

4. Preserve the $10,000 presently held in the Court registry and prohibit distribution until the Court resolves the enforcement, protective-relief, and compensatory-relief issues;

5. If the Court finds that Plaintiff violated ECF No. 93, ECF No. 97, or another applicable order, permit Defendant to file an itemized declaration and supporting documentation of actual losses;

6. Permit Plaintiff to respond to the amount, reasonableness, and causation

of Defendant's claimed losses;

7. Determine an appropriate compensatory award for losses proven to have been caused by any violation;

8. Reserve further briefing on whether a final compensatory award may lawfully be credited against or applied to funds otherwise distributable to Plaintiff;

9. If legally authorized, apply any final compensatory award against funds otherwise payable to Plaintiff from the Court registry;

10. Alternatively, if the pending appeal prevents immediate application of an award against the registry funds, state under Federal Rule of Civil Procedure 62.1 whether the Court would grant the requested relief or whether the motion raises a substantial issue;

11. Require preservation of the July 10, July 11, and July 12 broadcasts, screenshots, chats, messages, transcripts, drafts, and available metadata;

12. Clarify that Defendant does not presently allege that Plaintiff privately sent the complete Google production to the host of Exhibit A;

13. Require Plaintiff to preserve and, following a liability finding, provide under oath and appropriate confidentiality protections a monetization accounting for the July 10, 2026 broadcast and related Google-disclosure broadcasts, including:

a. YouTube Studio revenue analytics;

b. advertising revenue;

c. Super Chat and Super Sticker payments;

d. channel memberships generated or renewed during the broadcasts;

11

e. YouTube's fees, refunds, and chargebacks;

f. Cash App or other direct payments expressly connected to the broadcasts; and

g. the resulting net revenue or profit attributable to the Google-related content.

14. Decide this motion on the papers or conduct an expedited telephone or video conference; and

15. Grant any other relief the Court determines just and appropriate.

**LOCAL RULE 7.1(a) CERTIFICATION**

The emergent nature of this motion made a prefiling conference impracticable. The dissemination is continuing, Plaintiff's original broadcast has reached approximately 3,600 views, additional creators have replayed and amplified the Google-related statements, and Defendant seeks immediate preservation of the registry funds and relevant evidence. This certification is made pursuant to E.D. Mich. LR 7.1(a)(2)(C).

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KIMBERLY SMITH.,

        Plaintiff,

vs.

DANIELLE ROBERTSON.,

        Defendant,

Case No.24-cv-12213
Honorable Laurie J. Michelson
Magistrate Kimberly G. Altman

**BRIEF IN SUPPORT OF DEFENDANT'S EMERGENCY MOTION REGARDING NEWLY DISCOVERED ISSEMINATION, FOR PRESERVATION OF REGISTRY FUNDS, AND TO ESTABLISH A PROCEDURE FOR COMPENSATORY RELIEF**

**BRIEF IN SUPPORT OF DEFENDANT'S EMERGENCY MOTION REGARDING NEWLY DISCOVERED DISSEMINATION, FOR PRESERVATION OF REGISTRY FUNDS, AND TO ESTABLISH A PROCEDURE FOR COMPENSATORY RELIEF ISSUES PRESENTED**

1. Whether this motion presents materially different issues from Defendant's  previously submitted emergency enforcement and temporary-restraining-order motions because it concerns newly discovered downstream dissemination, resulting expenses, and a procedure for compensatory relief.

2. Whether the July 10 host's replay of Plaintiff's Google-related statements, followed by the host's own identity-theft, felony, fraud, money-laundering, and other criminal accusations, demonstrates actual amplification without requiring a finding that Plaintiff privately transmitted the complete production to the host.

3. Whether the July 11 and July 12 follow-up broadcasts demonstrate that Plaintiff's Google-related statements were repeatedly treated as

authoritative and used to generate additional accusations and identification efforts.

4. Whether Plaintiff's public association with a creator who had previously directed threatening and sexually harassing content toward Defendant supports the foreseeability of further targeting and the reasonableness of Defendant's mitigation efforts.

5. Whether Plaintiff's original broadcast reaching approximately 3,500 views and the resulting monitoring, transcription, preservation, storage, and account-security burdens demonstrate more than speculative injury.

6. Whether compensation should be determined through a two-stage procedure consisting of a liability determination followed by an itemized submission of actual losses.

7. Whether the $10,000 presently held in the Court registry should remain preserved while liability and compensatory relief are determined.

8. Whether any final compensatory award may be applied against funds otherwise distributable to Plaintiff or, alternatively, whether an indicative ruling may be entered under Federal Rule of Civil Procedure 62.1.

**CONTROLLING OR MOST APPROPRIATE AUTHORITY**

Fed. R. Civ. P. 62.1 and 67;

28 U.S.C. §§ 2041 and 2042;

NLRB v. Bannum, Inc., 93 F.4th 973, 979–81

(6th Cir. 2024);

Rolex Watch U.S.A., Inc. v. Crowley, 74 F.3d 716, 720

14

(6th Cir. 1996);

International Union, United Mine Workers of America v. Bagwell,

512 U.S. 821, 827–30 (1994);

United States v. United Mine Workers of America,

330 U.S. 258, 303–04 (1947);

Goodyear Tire & Rubber Co. v. Haeger,

581 U.S. 101, 108–10 (2017);

Chambers v. NASCO, Inc.,

501 U.S. 32, 44–46 (1991); and

Cooter & Gell v. Hartmarx Corp.,

496 U.S. 384, 395–96 (1990).

## FACTUAL BACKGROUND

Defendant previously submitted an emergency motion to enforce ECF Nos. 93 and 97 and a separate motion for temporary restraining and preliminary injunctive relief.

Those motions had not been assigned ECF numbers when this brief was prepared. The enforcement motion concerns Plaintiff's subpoena activity, portal access, retrieval, downloading, printing, review, public use, compliance with the Court's stays, and the need for a sworn accounting.

The temporary-restraining-order motion concerns the risk of additional future access, disclosure, transmission, publication, or public filing of nonpublic Google-produced information.

This motion concerns evidence of downstream dissemination and injury that was

15

not fully addressed in those earlier submissions.

The July 10 recording attached as Exhibit A alternates between the host's commentary and replayed portions of Plaintiff's Google-related broadcast. During the embedded portions, Plaintiff stated that Google had responded and supplied information concerning identified YouTube accounts.

The host then relied upon Plaintiff's statements to accuse Defendant of identity theft, fraud, felony conduct, money laundering, and other crimes.

Defendant does not contend that Plaintiff privately sent the complete Google production to that host.

On July 11, the same host continued discussing Plaintiff's claimed Google information and repeated identity-related and criminal allegations. Ex. C.

On July 12, another creator replayed Plaintiff's statement that the Google subpoena "told me everything" and again used Plaintiff's representations to support identity-theft, felony, fraud, and other accusations. Ex. B.

A July 10 audio-platform page also promoted a recording titled "GOOGLE TOLD ON HER?!" Ex. D.

Plaintiff's original Google-related broadcast displayed approximately 3,500 views when Defendant checked it on July 14, 2026.

Defendant was consequently required to monitor additional broadcasts, preserve recordings and screenshots, review transcripts, distinguish embedded speakers, document accusations, monitor for further disclosure, review account security, and maintain additional electronic evidence.

16

**Additional dissemination continued after Plaintiff's July 10 broadcast.** Defendant located additional July 11 and July 12 broadcasts by channels whose hosts had previously appeared with or publicly collaborated with Plaintiff. In one broadcast, a host stated in substance that he and Plaintiff had private conversations and that he knew what information was expected to come out. Other participants repeated speculative identity-theft, perjury, felony, fraud, money-laundering, and related accusations, and discussed or threatened additional targeting once Defendant's identifying information became public. Defendant does not contend that these statements, standing alone, prove Plaintiff transmitted the complete Google production to any host. They do, however, support preservation of Plaintiff's communications with collaborating creators, demonstrate foreseeable amplification of Plaintiff's Google-related disclosures, and further explain Defendant's continuing monitoring, evidence-preservation, and account-security burdens. The corresponding screenshots are attached as Exhibit E.

**ARGUMENT**

## I. THIS MOTION IS NOT DUPLICATIVE OF DEFENDANT'S PREVIOUSLY SUBMITTED MOTIONS.

Defendant's enforcement motion presents the liability question: whether Plaintiff's conduct violated ECF Nos. 93 and 97 or otherwise warrants enforcement-related relief.

Defendant's temporary-restraining-order motion presents the prospective question: whether immediate protection is necessary to prevent additional access and disclosure.

This motion presents a different remedial question:

What procedure should govern compensation for actual losses if the Court finds a violation, and should the registry funds remain preserved while that

determination is made?

This motion also presents evidence of downstream republication that was not fully developed in Defendant's earlier submissions.

Liability, prospective protection, and compensation are related but distinct questions. Defendant does not ask the Court to make duplicate findings or award the same relief more than once.

## II. EXHIBIT A SHOWS REPUBLICATION AND AMPLIFICATION, NOT A PROVEN PRIVATE TRANSMISSION.

The automated transcript of Exhibit A combines the host's statements with audio from Plaintiff's embedded broadcast. The text cannot properly be read as though one person made every consecutive statement.

The underlying recording shows that the host replayed Plaintiff's public statements concerning Google.

During Plaintiff's embedded statements, Plaintiff represented that Google had responded to the subpoena, supplied information through a secure file-transfer process, and provided information concerning several identified YouTube accounts.

The host then added his own accusations. He treated Plaintiff's statements as confirmation from Google and used them to speculate that Defendant committed identity theft, fraud, felony conduct, money laundering, or other crimes.

Defendant does not contend that those accusations are true.

Defendant also does not presently contend that Plaintiff privately transmitted the complete Google production to the host.

The significance of Exhibit A does not depend upon a private transmission.

The exhibit demonstrates that:

1. Plaintiff publicly disclosed the existence and claimed contents of the Google production;

2. Plaintiff publicly identified or discussed the account handles involved;

3. Another creator replayed Plaintiff's statements to a separate audience;

4. That creator treated Plaintiff's representations as authoritative; and

5. Plaintiff's disclosure became the basis for additional accusations and targeting.

This is evidence of actual amplification rather than a merely hypothetical risk.

### III. THE JULY 11 AND JULY 12 PUBLICATIONS SHOW CONTINUING RELIANCE UPON PLAINTIFF'S DISCLOSURE.

The July 11 follow-up broadcast continued the same Google-related narrative.

The host stated that Plaintiff's receipt of documentation inspired the continued coverage and repeated identity-related and criminal allegations. Ex. C.

The July 12 broadcast replayed or repeated Plaintiff's statement:

"It was the Google subpoena that told me everything."

Ex. B at approximately 17:22–18:39.

The creator also replayed or discussed the Google production letter and Plaintiff's representation that Google provided "everything." Id. at approximately 22:09–24:48.

The creator then used Plaintiff's representations as support for identity-theft, fraud, felony, and other criminal accusations.

The Court need not determine the truth of those accusations. Their relevance is that Plaintiff's claimed Google information was treated by other creators as an

authoritative factual source and used to create further content concerning

Defendant's identity and alleged criminal activity.

## IV. THE HOST'S PRIOR HOSTILITY MADE FURTHER TARGETING FORESEEABLE AND DEFENDANT'S MITIGATION REASONABLE.

Defendant's sworn declaration states that, before July 10, she had personally

viewed and preserved content from the host of Exhibit A that she understood as

threatening violence, sexually harassing her, degrading her, or encouraging

hostile targeting.

Plaintiff later brought that host onto Plaintiff's platform or publicly collaborated

with him in discussions concerning Defendant.

Defendant does not ask the Court to treat Plaintiff as the automatic legal author

of every statement made by the host.

The prior hostility remains relevant to foreseeability and causation. Plaintiff

publicly disclosed account-related Google information in an environment that

included a creator who had previously expressed hostility toward Defendant.

The creator then immediately replayed Plaintiff's statements and added

identity-theft, felony, money-laundering, fraud, and other criminal allegations.

Plaintiff's separate threat to place all Google documents on PACER if Defendant

sought court intervention increased the risk that additional information would

reach the same hostile audience.

Under those circumstances, Defendant acted reasonably by monitoring the

creator's additional broadcasts, preserving evidence, reviewing account security,

and watching for further disclosure.

## V. COMPENSATORY CIVIL-CONTEMPT RELIEF MAY ADDRESS LOSSES CAUSED BY A PROVEN VIOLATION.

Civil contempt requires clear and convincing evidence that a person with knowledge of a definite and specific order violated that order. NLRB v. Bannum, Inc., 93 F.4th 973, 979–80 (6th Cir. 2024); Rolex Watch U.S.A., Inc. v. Crowley, 74 F.3d 716, 720 (6th Cir. 1996).

Civil-contempt remedies may coerce compliance or compensate a party for losses caused by noncompliance. Bannum, 93 F.4th at 980–81; International Union, United Mine Workers of America v. Bagwell, 512 U.S. 821, 827–30 (1994).

Compensatory relief must remain remedial rather than punitive. It must be tied to actual loss caused by the proven misconduct. Goodyear Tire & Rubber Co. v. Haeger, 581 U.S. 101, 108–10 (2017).

Defendant therefore does not request compensation merely because online creators criticized her or made offensive statements.

Defendant requests compensation only for actual losses the Court finds were caused by a violation, including qualifying expenses for:

1. Transcript preparation;

2. Evidence preservation;

3. Digital storage;

4. Copying;

5. Technical assistance;

6. Account-security measures;

7. Cybersecurity or authentication mitigation; and

21

8. Other documented out-of-pocket expenses that would not otherwise have

been incurred.

Defendant does not request compensation for her own pro se legal time.

## VI. COMPENSATION SHOULD BE DETERMINED THROUGH A TWO-STAGE PROCEDURE.

The Court need not determine a final dollar amount before deciding whether a

violation occurred.

The appropriate procedure is:

A. Liability stage

The Court determines whether Plaintiff violated ECF No. 93, ECF No. 97,

another applicable order, or otherwise engaged in sanctionable misuse of

compulsory process.

B. Compensation stage

If liability is established, Defendant submits an itemized declaration identifying:

1. The date of each expense;

2. The amount paid;

3. The provider or recipient of the payment;

4. The purpose of the expense;

5. The relationship between the expense and the proven violation; and

6. The receipt, invoice, payment record, or other supporting documentation.

Plaintiff may then respond to causation, reasonableness, and amount.

This procedure protects both parties. It prevents a speculative award while

preserving Defendant's ability to recover losses actually caused by a violation.

## VII. THE REGISTRY FUNDS SHOULD REMAIN PRESERVED.

Funds deposited with the Court remain subject to the Court's control and may be withdrawn only as directed by court order. Fed. R. Civ. P. 67; 28 U.S.C. §§ 2041–2042.

Defendant does not ask for an immediate automatic setoff or cancellation of the judgment.

Defendant asks the Court to preserve the funds while it determines liability, causation, amount, and the availability of a compensatory credit.

Preservation would maintain the status quo. Premature distribution could require Defendant to institute separate collection proceedings if the Court later enters a compensatory award in her favor.

## VIII. ANY APPLICATION OF AN AWARD AGAINST THE REGISTRY FUNDS SHOULD BE DECIDED AFTER LIABILITY AND AMOUNT ARE ESTABLISHED.

The Court should first determine:

1. Whether a violation occurred;

2. Whether the violation caused compensable loss;

3. The amount of proven loss; and

4. Whether applicable law authorizes the award to be applied against funds otherwise distributable to Plaintiff.

If legally authorized, applying the award against the registry funds would avoid unnecessary circular collection proceedings.

If the pending appeal deprives the Court of authority to grant immediate application of the award, Rule 62.1 permits the Court to defer consideration, deny the request, or state that it would grant the relief upon remand or that the motion raises a substantial issue.

Defendant requests an indicative ruling only as an alternative if the Court concludes it lacks present authority.

**CONCLUSION**

Defendant respectfully requests that the Court:

1. Consider the newly discovered dissemination evidence together with Defendant's previously submitted emergency motions;

2. Preserve the $10,000 registry funds;

3. Determine liability before determining compensation;

4. Permit an itemized compensatory-loss submission if liability is established;

5. Reserve determination of whether any resulting award may be applied against funds otherwise distributable to Plaintiff; and

6. Grant any other appropriate relief.

Respectfully submitted,

/s/ Danielle Robertson

Danielle Robertson, Pro Se

4539 N. 22nd Street

Phoenix, Arizona 85016-4639

DaniRobertson@proton.me

Dated: July 13, 2026

24

**Exhibit 1: DECLARATION OF DANIELLE ROBERTSON**

I, Danielle Robertson, declare under penalty of perjury pursuant to 28 U.S.C. § 1746:

1. I am Defendant in this action.

2. I submit this declaration in support of my Emergency Motion Regarding Newly Discovered Dissemination, for Preservation of Registry Funds, and to Establish a Procedure for Compensatory Relief.

3. On July 14, 2026, I submitted an emergency motion seeking enforcement of ECF Nos. 93 and 97.

4. I also submitted a separate motion seeking temporary restraining and preliminary injunctive relief.

5. When this declaration was prepared, those submissions had not yet been assigned ECF numbers.

6. This declaration concerns downstream publications, amplification, and resulting burdens not fully addressed in those earlier submissions.

7. I personally viewed and preserved the July 10, 2026 YouTube broadcast attached as Exhibit A.

8. Exhibit A displayed the title "THUG-NOT ON DANI ROBERTSON REAL IDENTITY EXPOSED BY GOOGLE, LLC."

9. The recording alternates between the host's live commentary and portions of Plaintiff's Google-related broadcast.

10. The written transcript does not always indicate when the speaker changes from the host to Plaintiff's embedded video.

11. I reviewed the underlying recording to distinguish Plaintiff's statements from the host's statements.

12. In the portions replaying Plaintiff's broadcast, I heard Plaintiff state that Google had responded to her subpoena and supplied information to her.

13. I heard Plaintiff state or represent that Google had supplied information concerning several identified YouTube accounts.

14. I heard Plaintiff identify, read, or discuss account handles associated with the Google response.

15. At approximately 6:31–8:28, the host replayed a portion of Plaintiff's broadcast in which Plaintiff discussed material Google sent to her and in which the Google production letter was read or discussed.

16. After replaying Plaintiff's statements, the host supplied his own commentary.

17. I heard the host use Plaintiff's Google-related statements to accuse or speculate that I committed identity theft, fraud, felony conduct, money laundering, or other criminal activity.

18. Those accusations were made by the host as commentary.

19. I did not hear those criminal accusations read from Google's production letter.

20. I do not submit those accusations for their truth.

21. I do not presently assert that Plaintiff privately sent the complete Google production to the host.

22. I submit Exhibit A to show that the host replayed Plaintiff's public Google-related statements, treated those statements as confirmation from Google, and amplified them with additional accusations.

23. Before July 10, I had personally viewed and preserved content from the same host that I understood as threatening violence toward me, sexually harassing me, degrading me, or encouraging hostile targeting of me.

24. That prior content had been publicly expressed before the Google-related broadcast attached as Exhibit A.

25. Plaintiff later brought the host onto Plaintiff's own platform or publicly collaborated and associated with him in discussions concerning me.

26. I do not contend that Plaintiff is automatically responsible for every independent statement made by that host.

27. Because of the host's prior hostility toward me, I believed his use of Plaintiff's claimed Google information created an increased risk of targeting, harassment, public identification, and additional disclosure.

28. I personally viewed and preserved the July 11, 2026 follow-up broadcast attached as Exhibit C.

29. Exhibit C displayed the title "THUG-NOT APOLOGY TO AT2 | DANI ROBERTSON MANIPULATIVE TACTIC EXPOSED + CHRISEAN ROCK."

30. I heard the host state that Plaintiff's receipt of documentation concerning me inspired the continued coverage.

31. I heard additional identity-theft, fraud, account-association, and criminal accusations tied to Plaintiff's claimed Google information.

32. I heard discussion acknowledging that the stay could create legal consequences.

33. I personally viewed and preserved the July 12, 2026 broadcast attached as Exhibit B.

34. Exhibit B displayed the defamatory title "DANI ROBERTSON YOU'RE A FELON and a LIAR!"

35. At approximately 17:22–18:39, I heard that broadcast replay or repeat Plaintiff's statement that the Google subpoena "told me everything."

36. At approximately 22:09–24:48, I heard the creator replay or discuss the Google production letter and Plaintiff's representation that Google provided "everything."

37. I heard the creator use Plaintiff's representations to accuse me of identity theft, fraud, felony conduct, concealment of identity, or other criminal activity.

38. I do not submit those accusations for their truth.

39. I personally viewed and preserved the audio-platform page attached as Exhibit D.

40. Exhibit D displayed the account name "ALLABOUTTHETREES," the title "GOOGLE TOLD ON HER?!," the notation "RECORDED Jul 10, 2026," and a duration of 1:51:32.

41. I rely upon Exhibit D only for the visible display name, title, date, and duration unless a supporting audio excerpt or transcript is later submitted.

42. I also viewed and preserved a separate public discussion in which Plaintiff acknowledged the stay and threatened to attach the Google documents to PACER if I filed concerning the disclosure.

43. I heard Plaintiff state in substance:

"You file that—I got that Google. You go right ahead and I'm going to attach all the Google documents to PACER and everybody can see what I see."

44. I understood that statement as a threat that seeking court protection would cause Plaintiff to release more of the Google material publicly.

45. I believed that threat created an immediate risk because other creators were already replaying and amplifying Plaintiff's Google-related statements.

46. When I checked Plaintiff's original Google-related broadcast on July 14, 2026, the page displayed approximately 3,500 views.

47. The broadcast therefore continued reaching additional viewers after the original livestream.

48. After discovering the downstream publications, I was required to locate and review additional broadcasts and posts.

49. I preserved screenshots, titles, dates, view counts, recordings, transcripts, and related evidence.

50. I reviewed lengthy recordings to distinguish Plaintiff's embedded statements from each host's live commentary.

51. I documented identity-theft, felony, fraud, money-laundering, and other criminal accusations connected to Plaintiff's claimed Google information.

52. I monitored additional content from the host of Exhibit A because of his prior threatening and sexually harassing content directed toward me.

53. I reviewed account-security, recovery, login, and authentication settings because Plaintiff publicly described possessing account-level and security-sensitive information.

54. I monitored for disclosure of telephone, email, recovery, device, IP-related, account-association, authentication, or nonparty information.

55. I preserved electronic evidence concerning additional republication and possible recipients.

56. I obtained or used digital-storage and evidence-preservation resources to maintain the relevant evidence.

57. I am maintaining records of actual out-of-pocket expenses associated with transcript preparation, copying, preservation, digital storage, technical assistance, account-security measures, and related mitigation.

58. I am not presently requesting compensation for my own pro se legal time.

59. I am not requesting a speculative lump-sum award.

60. If the Court finds a violation, I request permission to submit an itemized statement identifying each expense, its date, amount, purpose, supporting documentation, and relationship to the proven violation.

61. I do not contend that every third-party statement is automatically attributable to Plaintiff.

62. I submit the downstream evidence to establish that Plaintiff's Google-related representations were replayed, relied upon, amplified, and used as a basis for additional accusations and identification efforts.

63. I request that the registry funds remain preserved while the Court determines liability and any compensatory relief.

64. I personally observed monetization during Plaintiff's July 10, 2026 Google-related broadcast. The preserved screenshots show repeated "like, subscribe, and donate" messaging and visible Super Chats, including payments displayed in amounts of $99.99, $50.00, $49.99, $20.00, $19.99, $5.00, and $4.99. I also heard Plaintiff thank viewers for Cash App payments and other financial support. I do not know Plaintiff's total revenue or net profit from the broadcast. I submit this evidence to support preservation and a sworn accounting, not as proof of a specific final amount.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 13, 2026.
Danielle Robertson

**CERTIFICATE OF SERVICE**

I hereby certify that on July 14, 2026, a true and correct copy of this Motion was served upon Plaintiff Kimberly Smith via ECF

29